1
2
3
4
5
6
7

Matthew J. Preusch (CSB No. 298144)
KELLER ROHRBACK L.L.P.
801 Garden Street, Suite 301
Santa Barbara, CA 93101
(805) 456-1496
Fax (805) 456-1497
mpreusch@kellerrohrback.com

*Attorney for Plaintiffs*
[*Additional counsel listed on signature page*]

8
9

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

10
11
12
13
14
15
16
17
18

| | |
|---|---|
| ANSHUMAN SINGH, THERESA CLARK, JEREMY ERSKINE, MICHAEL LINDGREN, JEFFREY MONHEIT, MACKENZIE PIRIE, AMY SCHACHOW, and JOSHUA TAYLOR, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> STELLANTIS N.V. and FCA US LLC, <br><br> Defendants. | No. <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

19
20

**I.   INTRODUCTION**

21
22
23
24
25
26

1.      Plaintiffs Anshuman Singh, Theresa Clark, Jeremy Erskine, Michael Lindgren, Jeffrey Monheit, Mackenzie Pirie, Amy Schachow, and Joshua Taylor ("Plaintiffs"), by and through their counsel, bring this action on behalf of themselves and all others similarly situated against Defendants STELLANTIS N.V. (hereinafter "Stellantis"), and FCA US LLC (hereinafter "FCA") (collectively, "Defendants"). All allegations made in this complaint are based on investigation of counsel, except those allegations that pertain to Plaintiffs' vehicles, which are based on personal knowledge.

27
28

2.      The Jeep 4xe vehicles, which consist of the 2021–23 Wrangler 4xe and the 2022–23 Grand Cherokee 4xe (collectively, the "4xe Vehicles"), "pair[] a traditional gas engine with …

incredible electric motor performance,"[1] providing drivers with the option to operate their vehicles using only the electric motor, only the gasoline internal combustion engine, or as a hybrid. "Electric mode" is touted as allowing for "nearly zero tailpipe emissions up to highway speeds," and Defendants boast that the Wrangler 4xe "can run on this mode for a distance of up to 21 total miles on a full charge."[2]

3.     This putative class action arises out of Stellantis's and FCA's failure to disclose or adequately remedy a uniform and widespread design defect in the 4xe Vehicles. When the 4xe Vehicles enter "Fuel and Oil Refresh Mode" ("FORM"), electric-only driving mode is unavailable (hereinafter the "FORM Defect"). FORM is triggered frequently and for long periods, rendering it impossible for consumers to use the advertised electric-only driving mode. In colder weather, the problem is even worse and can render electric-only driving mode completely unavailable for the majority or entirety of the winter.

4.     Plaintiffs and class members paid a significant premium for the 4xe plug-in hybrid vehicles over the internal combustion-only versions of the same models, and therefore overpaid at the time of purchase for a feature that is not usable as represented. Plaintiffs bring this action individually and on behalf of all other current and former owners or lessees of the 4xe Vehicles. Plaintiffs seek monetary damages and injunctive and other equitable relief for Defendants' misconduct related to the design, manufacture, marketing, sale, and lease of the 4xe Vehicles, as alleged in this Complaint.

## II.  JURISDICTION AND VENUE

5.     **Subject Matter Jurisdiction.** This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because this is a class action in which the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and there are 100 or more class members who are citizens of different states from Defendants. This Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367.

6.     **Personal Jurisdiction.** This Court has general personal jurisdiction over Defendants because Defendants conducted substantial business in this judicial district and intentionally and purposefully placed Class Vehicles into the stream of commerce within the state of California and

---

[1] *4xe*, Jeep, https://www.jeep.com/ev/4xe-hybrid-suvs.html (last visited Jan. 20, 2023).
[2] *Id.*

throughout the United States

7.     There are more than 20 authorized Jeep dealerships in the San Francisco Bay Area and more than 130 Jeep dealerships in the state of California. Together, these authorized dealers sold a significant number of Jeep 4xe Vehicles. California leads the nation in hybrid vehicle sales, including almost 140,000 new hybrid vehicle registrations in 2022 alone.[3]

8.     This Court has personal jurisdiction over Defendant Stellantis because it carried on a continuous and systematic part of its general business within the state of California through its wholly-owned subsidiary, FCA.

9.     **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. Defendants have marketed, advertised, and sold the affected vehicles in this District, and otherwise conducted extensive business in this District.

10.    **Divisional Assignment.** Defendants have numerous dealerships in Santa Clara county, including in San Jose, where Plaintiff Singh purchased his vehicle. For this reason, a divisional assignment in the San Jose Division is proper under Civil L.R. 3-2(d).

## III. PARTIES

A.     **Plaintiffs**

1.     **Plaintiff Anshuman Singh**

11.    Plaintiff Anshuman Singh is a citizen and resident of San Jose, California.

12.    On or about April 16, 2021, Anshuman Singh purchased a new 2021 Wrangler 4xe (for purposes of this section, "the Vehicle") from Normandin Chrysler Jeep for approximately $76,981.

13.    Prior to his purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff Singh of the FORM defect. Plaintiff Singh reasonably expected that the Vehicle, including its electric-only range, would function normally and in accordance with Defendants' specifications and representations.

14.    Plaintiff Singh purchased the Vehicle for personal, family, or household use. Plaintiff

---

[3] California New Car Dealers Association, 18 California Auto Outlook 4 (Nov. 2022), https://www.cncda.org/wp-content/uploads/California-Covering-3Q-22_FINAL.pdf (last visited Jan. 30, 2023).

1  Singh has always attempted to use the Vehicle in the normal and expected manner.

2  15.    As a result, Plaintiff Singh has been left with a Vehicle with reduced electric-only

3  range. Plaintiff Singh has suffered an ascertainable loss resulting from Defendants' concealment,

4  fraud, omissions, and refusal to correct the FORM Defect and did not receive the benefit of his bargain

5  when he purchased the Vehicle.

6  **2.    Plaintiff Theresa Clark**

7  16.    Dr. Theresa Clark is a citizen and resident of Silverthorne, Colorado.

8  17.    On or about December 2021, Dr. Clark purchased a new 2021 Jeep Wrangler Unlimited

9  4xe from Larry H Miller Chrysler Dodge Jeep Ram (for purposes of this section, "the Vehicle") in

10  Thornton, CO for approximately $56,060. Due to her dissatisfaction with the Vehicle, she sold the

11  Vehicle back to the dealership approximately two weeks later.

12  18.    Prior to her purchase, neither Defendants nor any of their agents, dealers, or other

13  representatives informed Plaintiff Clark of the FORM defect, despite the dealership being informed

14  that Plaintiff Clark intended to use the Vehicle for her daily 20-mile commute throughout the winter

15  months. Plaintiff Clark reasonably expected that the Vehicle, including its electric-only range, would

16  function normally and in accordance with Defendants' specifications and representations.

17  19.    After discovering that the Vehicle was unable to be driven using electric-only mode due

18  to the FORM Defect, Plaintiff Clark called Jeep multiple times and brought the Vehicle back to the

19  dealership, where she was informed that the Vehicle was functioning as designed. Given that she had

20  purchased the Vehicle with the specific intent of using the electric-only mode, Plaintiff Clark then sold

21  the Vehicle back to the dealership at a loss.

22  20.    Plaintiff Clark purchased the Vehicle for personal, family, or household use. Plaintiff

23  Clark always attempted to use the Vehicle in the normal and expected manner.

24  21.    As a result, Plaintiff Clark was left with a Vehicle with reduced electric-only range.

25  Plaintiff Clark suffered an ascertainable loss resulting from Defendants' concealment, fraud,

26  omissions, and refusal to correct the FORM Defect. Plaintiff Clark did not receive the benefit of her

27  bargain when she purchased the Vehicle, nor when she sold the Vehicle.

28

**3.   Plaintiff Jeremy Erskine**

22.   Plaintiff Jeremy Erskine is a citizen and resident of Arkport, NY.

23.   On or about March, 2022, Jeremy Erskine purchased a new 2021 Jeep Wrangler Unlimited Sahara 4xe from Simmons-Rockwell Dodge Chrysler Jeep RAM (for purposes of this section, "the Vehicle") in Bath, New York for approximately $55,000. Due to his dissatisfaction with the vehicle, he traded in the Vehicle approximately 4 months later for approximately $52,000.

24.   Prior to his purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff Erskine of the FORM defect. Plaintiff Erskine reasonably expected that the Vehicle, including its electric-only range, would function normally and in accordance with Defendants' specifications and representations.

25.   After discovering that the Vehicle was unable to be driven using electric-only mode due to the FORM Defect, Plaintiff Erskine brought the Vehicle back to the dealership, where he was informed that the Vehicle was functioning as designed. Given that he had purchased the Vehicle with the specific intent of using the electric-only mode, Plaintiff Erskine traded in the Vehicle approximately 4 months later.

26.   Plaintiff Erskine purchased the Vehicle for personal, family, or household use. Plaintiff Erskine always attempted to use the Vehicle in the normal and expected manner.

27.   As a result, Plaintiff Erskine was left with a Vehicle with reduced electric-only range. Plaintiff Erskine suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the FORM Defect and did not receive the benefit of his bargain when he purchased the Vehicle, nor when he traded-in the vehicle.

**4.   Plaintiff Michael Lindgren**

28.   Plaintiff Michael Lindgren is a citizen and resident of Medford, Oregon

29.   On or about July 13, 2021, Michael Lindgren leased a new Jeep Wrangler Unlimited Sahara 4xe (for purposes of this section, "the Vehicle") from Lithia Chrysler Dodge Jeep Ram FIAT of Medford, Oregon with an MSRP of approximately $56,766.12.

30.   Prior to his lease, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff Lindgren of the FORM defect. Plaintiff Lindgren reasonably

expected that the Vehicle, including its electric-only range, would function normally and in accordance with Defendants' specifications and representations.

31.     Plaintiff Lindgren leased the Vehicle for personal, family, or household use. Plaintiff Lindgren has always attempted to use the Vehicle in the normal and expected manner.

32.     As a result, Plaintiff Lindgren has been left with a Vehicle with reduced electric-only range. Plaintiff Lindgren has suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the FORM Defect and did not receive the benefit of his bargain when he leased the Vehicle.

**5.     Plaintiff Jeffrey Monheit**

33.     Plaintiff Jeffrey Monheit is a citizen and resident of Bedford, New Hampshire.

34.     On or about December 28, 2022, Jeffrey Monheit leased a new 2022 Jeep Grand Cherokee 4XE (for purposes of this section, "the Vehicle") from Nucar Automall of Tilton, New Hampshire for approximately $63,890.

35.     Prior to his lease, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff Monheit of the FORM defect. Plaintiff Monheit reasonably expected that the Vehicle, including its electric-only range, would function normally and in accordance with Defendants' specifications and representations.

36.     Plaintiff Monheit leased the Vehicle for personal, family, or household use. Plaintiff Monheit has always attempted to use the Vehicle in the normal and expected manner.

37.     As a result, Plaintiff Monheit has been left with a Vehicle with reduced electric-only range. Plaintiff Monheit has suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the FORM Defect and did not receive the benefit of his bargain when he leased the Vehicle.

**6.     Plaintiff Mackenzie Pirie**

38.     Plaintiff Mackenzie Pirie is a citizen and resident of Midland, Michigan.

39.     On or about February 28, 2022, Mackenzie Pirie purchased a new 2021 Jeep Wrangler Sahara 4xe (for purposes of this section, "the Vehicle") from Feeny Chrysler/Jeep/Dodge of Midland in Midland, Michigan for approximately $55,499.

40.     Prior to her purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff Pirie of the FORM defect. Plaintiff Pirie reasonably expected that the Vehicle, including its electric-only range, would function normally and in accordance with Defendants' specifications and representations.

41.     Plaintiff Pirie purchased the Vehicle for personal, family, or household use. Plaintiff Pirie always attempted to use the Vehicle in the normal and expected manner.

42.     As a result, Plaintiff Pirie was left with a Vehicle with reduced electric-only range. Plaintiff Pirie suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the FORM Defect and did not receive the benefit of her bargain when she purchased the Vehicle.

**7.     Plaintiff Amy Schachow**

43.     Plaintiff Amy Schachow is a citizen and resident of Rockford, Michigan.

44.     On or about May 28, 2022, Amy Schachow purchased a new 2022 Jeep Wrangler 4xe (for purposes of this section, "the Vehicle") from Betten Baker Chrysler Dodge Jeep Ram in Lowell, Michigan for approximately $61,429.

45.     Prior to her purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff Schachow of the FORM defect. Plaintiff Schachow reasonably expected that the Vehicle, including its electric-only range, would function normally and in accordance with Defendants' specifications and representations.

46.     Plaintiff Schachow purchased the Vehicle for personal, family, or household use. Plaintiff Schachow always attempted to use the Vehicle in the normal and expected manner.

47.     As a result, Plaintiff Schachow was left with a Vehicle with reduced electric-only range. Plaintiff Schachow suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the FORM Defect and did not receive the benefit of her bargain when she purchased the Vehicle.

**8.     Plaintiff Joshua Taylor**

48.     Plaintiff Joshua Taylor is a citizen and resident of Imperial, Missouri.

49.     On or about October 17, 2022, Joshua Taylor purchased a new Jeep Grand Cherokee

Trailhawk 4xe (for purposes of this section, "the Vehicle") from South County Dodge Chrysler Jeep in St. Louis, Missouri for approximately $69,530.

50.     Prior to his purchase, neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff Taylor of the FORM defect. Plaintiff Taylor reasonably expected that the Vehicle, including its electric-only range, would function normally and in accordance with Defendants' specifications and representations.

51.     Plaintiff Taylor purchased the Vehicle for personal, family, or household use. Plaintiff Taylor has always attempted to use the Vehicle in the normal and expected manner.

52.     As a result, Plaintiff Taylor has been left with a Vehicle with reduced electric-only range. Plaintiff Taylor has suffered an ascertainable loss resulting from Defendants' concealment, fraud, omissions, and refusal to correct the FORM Defect and did not receive the benefit of his bargain when he purchased the Vehicle.

**B.     Defendants**

53.     Defendant **FCA US LLC ("FCA")** is a Delaware limited liability company. Defendant **Stellantis N.V. ("Stellantis")** is FCA's corporate parent. Stellantis is a multinational automotive manufacturing corporation formed in 2021 on the basis of a 50–50 merger between Fiat Chrysler Automobiles N.V. and Peugeot S.A., an Italian–American automotive manufacturing corporation and a French automotive manufacturing corporation, respectively. Prior to the 2021 merger, Fiat Chrysler Automobiles N.V. was FCA's corporate parent.

54.     FCA is headquartered at 1000 Chrysler Drive, Auburn Hills, Michigan. FCA is a motor vehicle manufacturer and a licensed distributor of new, previously untitled motor vehicles. FCA (like its predecessor, Chrysler) is one of the "Big Three" American automakers (with Ford and General Motors). FCA engages in commerce by distributing and selling new and unused passenger cars and motor vehicles under the Chrysler, Dodge, Jeep, Ram, and Fiat brands.

55.     FCA has designed, manufactured, imported, distributed, offered for sale, sold, and leased two models of vehicle under the plug-in hybrid 4xe line—the Jeep Wrangler 4xe and the Jeep Grand Cherokee 4xe[4] (the "4xe Vehicles")—with the knowledge and intent to market, sell, and lease

---

[4] *See 4xe*, Jeep, https://www.jeep.com/ev/4xe-hybrid-suvs.html (last visited Jan. 20, 2023).

1  them in all fifty states. Moreover, FCA designed, manufactured, marketed, distributed, and warranted

2  the 4xe Vehicles throughout the United States. Dealers sell and lease automobiles under the Jeep brand

3  and disseminate vehicle information provided by Defendants to customers.

4      56.    Stellantis, FCA's corporate parent, is a Dutch partnership headquartered in Amsterdam,

5  Netherlands. Stellantis owns numerous automotive brands in addition to FCA's American brands,

6  including Alfa Romeo, Fiat, Maserati, Peugeot, and Vauxhall. In 2021, Stellantis was the world's fifth-

7  largest automaker by global vehicle sales. Stellantis is a member of the Auburn Hills Chamber of

8  Commerce, and lists its address as 1000 Chrysler Drive, Auburn Hills, Michigan.

9      57.    Subject to a reasonable opportunity for further investigation or discovery, Plaintiffs

10  allege that Stellantis employees oversaw or were responsible for approving elements of design and/or

11  strategies related to the 4xe Vehicles.[5] Stellantis also imported into the United States, sold, offered for

12  sale, introduced into commerce, or delivered the Class Vehicles with the intent to market or sell them

13  in all fifty states.

14      58.    Defendants developed and disseminated the owners' manuals, warranty booklets,

15  product brochures, advertisements, and other promotional materials related to the 4xe Vehicles, with

16  the intent that such documents should be purposefully distributed throughout all fifty states.

17  Defendants are engaged in interstate commerce, selling vehicles through their network in every state of

18  the United States.

19  ## IV. FACTUAL ALLEGATIONS

20  **A.    Advertisements for the 4xe Vehicles Emphasized their Electric-Only Capabilities**

21      59.    As demand for low-emission commuting and government support for long-range, low-

22  emission vehicles through subsidies and tax cuts increases, automotive manufacturers rush to design,

23  manufacture, and sell electric and hybrid vehicles. In January 2020, Jeep introduced the all-new 2021

24  Jeep Wrangler 4xe, which FCA touts as America's best-selling plug-in hybrid vehicle.[6]

25  ___

[5] For example, Stellantis takes ownership of the Jeep line of vehicles on its website. *See, e.g.*, *Fully Year 2021 Results*, Stellantis (Feb. 23, 2022), https://www.stellantis.com/en/news/press-releases/2022/february/full-year-2021-results (last visited Jan. 23, 2023).

[6] Viknesh Vijayenthiran, *Jeep to present plug-in hybrid Wrangler, Compass and Relegade at 2020 CES*, Green Car Reports (Jan. 2, 2020), https://www.greencarreports.com/news/1126564_jeep-to-present-plug-in-hybrid-wrangler-compass-and-renegade-at-2020-ces (last visited Jan. 23, 2023); Kirk Bell, *Jeep to have an electric vehicle in every SUV segment by 2025*, Motor Authority (July 15,

60.      Defendants described the Wrangler 4xe as "the most capable, technically advanced and eco-friendly Wrangler ever.[7] The Wrangler 4xe boasted "375 horsepower, an EPA fuel economy of 49 MPGe with the battery charged, and 21 miles of guilt-free electric driving before the gas engine kicks on" and promised "to combine contradictory attributes—power and efficiency—into a single product that would have been unthinkable just 10 years ago."[8] After the success of the Wrangler, the Jeep Grand Cherokee 4xe was introduced in 2022.[9]

61.      From their introduction, marketing for the 4xe line of vehicles has emphasized their electric-only capabilities: the global president of the Jeep brand even said that "[o]ur Jeep 4xe vehicles will be the most efficient, responsible and capable that the brand has ever created."[10] He continued, "[w]e are committed to make Jeep the greenest SUV brand. The electrification of the Jeep lineup will allow commuters to travel solely on electric power, delivering an efficient and fun on-road experience and offering an ability to enjoy even more Jeep capability off-road in nearly complete silence."[11]

62.      Stellantis boasted that the Wrangler 4xe's "plug-in hybrid powertrain is capable of up to 21 miles of nearly silent, zero-emission, electric-only propulsion, making it commuter friendly as an all-electric daily driver without range anxiety and the most capable and eco-friendly Jeep vehicle off-road--combined with the open-air freedom that only Jeep Wrangler offers."[12]

2021), https://www.motorauthority.com/news/1132869_jeep-to-have-an-electric-vehicle-in-every-suv-segment-by-2025 (last visited Jan. 23, 2023); *see also Full Year 2021 Results*, Stellantis (Feb. 23, 2022), https://www.stellantis.com/en/news/press-releases/2022/february/full-year-2021-results (last visited Jan. 23, 2023) ("In North America, the Jeep Wrangler 4xe was the bestselling plug-in hybrid electric vehicle in U.S. retail for 2021.").

[7] *New Jeep Wrangler 4xe Joins Renegade and Compass 4xe Models in Brand's Global Electric Vehicle Lineup*, Stellantis (Sept. 3, 2020), https://media.stellantisnorthamerica.com/newsrelease.do?id=22016&mid=1368 (last visited Jan. 23, 2023).

[8] Eric Tingwall, *Tested: 2021 Jeep Wrangler 4xe Complicates a Simple Machine*, Car and Driver (July 1, 2021), https://www.caranddriver.com/reviews/a36906094/2021-jeep-wrangler-unlimited-rubicon-4xe-by-the-numbers/ (last visited Jan. 23, 2023).

[9] *Introducing the First-Ever Jeep Grand Cherokee 4xe*, Cunningham Chrysler Dodge Jeep Ram, https://www.cunninghamchryslerofedinboro.com/introducing-the-first-ever-jeep-grand-cherokee-4xe (last visited Jan. 23, 2023).

[10] *New Jeep Wrangler 4xe Joins Renegade and Compass 4xe Models in Brand's Global Electric Vehicle Lineup*, Stellantis (Sept. 3, 2020), https://media.stellantisnorthamerica.com/newsrelease.do?id=22016&mid=1368 (last visited Jan. 23, 2023) (emphasis added).

[11] *Id.*

[12] *Id.*

63.     As the 4xe line of vehicles grew with the introduction of the Grand Cherokee 4xe, Defendants continued to make the electric-only driving mode a key selling point for the vehicles. The landing page for the 4xe Vehicles prominently displays "freedom electrified" to emphasize the "incredible capability, performance, and efficiency" of the 4xe Vehicles[13]:



64.     The website proceeds to emphasize that the Wrangler 4xe can run on electric-only mode for up to 21 miles on a full charge, and that the Grand Cherokee 4xe can achieve up to 25 miles of "pure EV driving"[14]:



65.     Consumers who choose the 4xe Vehicles over their traditional gasoline internal

---

[13] *Jeep 4xe*, Jeep, https://www.jeep.com/ev/4xe-hybrid-suvs.html (last visited Jan. 23, 2023).
[14] *Id.*

1    combustion counterparts pay to do so: the Wrangler 4xe costs almost $24,000 more than the base gas

2    Wrangler.[15]

3        66.    The advertisements for the 4xe Vehicles go so far as to emphasize their durability in

4    winter conditions, with ads showing the Vehicles on snowy roads or carrying ski and snowboard

5    equipment[16]:



[15] Paulo Acoba, *Why doesn't EV mode work in the Jeep Wrangler 4xe when it gets cold outside?*, Alt Car News (Feb. 6, 2022), https://tiremeetsroad.com/2022/02/06/why-doesnt-ev-mode-work-in-the-jeep-wrangler-4xe-when-it-gets-cold-outside/ (last visited Jan. 20, 2023).

[16] Jeep, *Jeep 4xe Day: Freedom Is Electric*, YouTube (Sept. 8, 2022), https://www.youtube.com/watch?v=bQNxyMYXHmY (last visited Jan. 23, 2023); *Winter driving with the Jeep 4xe models*, Stellantis Media (Feb. 2, 2021), https://www.media.stellantis.com/me-en/jeep/video/winter-driving-with-the-jeep-4xe-models-videoclip (last visited Jan. 23, 2023).



**B.     The FORM Defect Significantly Impacts Drivers' Ability to Utilize the All-Electric Mode of the 4xe Vehicles**

67.     Despite Defendants' descriptions of the 4xe Vehicles as "engineered for any environment,"[17] lower temperatures have revealed a defect in the design of the 4xe Vehicles.

68.     "Fuel And Oil Refresh Mode" ("FORM") is designed to "prevent engine and/or fuel system damage due to stale fuel, as well as maintain[] internal engine lubrication."[18] FORM cycles are not unique to the 4xe Vehicles:

> FORM cycles are used in hybrid models to keep gaskets and seals warm and expanded, preventing gasoline from mixing with the oil. It does this by firing the internal combustion engine for short bursts while it reaches operating temperatures. It's normal for some gas and oil to mix in internal combustion engines, but the heat from regular operation evaporates the negligible amount of gas. That's not always the case in plug-in hybrids, which may run for extended periods of time without engaging the combustion

---

[17] *Jeep 4xe*, Jeep, https://www.jeep.com/ev/4xe-hybrid-suvs.html (last visited Jan. 23, 2023).

[18] Jeep, 2023 Wrangler Hybrid Supplement at 35, https://vehicleinfo.mopar.com/assets/publications/en-us/Jeep/2023/Wrangler_4xe/P139881_23_JL_H_SU_EN_USC_DIGITAL.pdf (last visited Jan. 23, 2023).

engine.[19]

69.     However, what is unique to the 4xe Vehicles is that the FORM cycle is initiated without any analysis of fuel contamination in the engine's oil, and drivers have no way to control the FORM cycle.[20]

70.     While the FORM cycle operates, the vehicle will only run using the gas engine—"electric only operation is inhibited" and the electric driving mode is unavailable to drivers.[21]

71.     The amount of time that the vehicle remains in the FORM cycle depends on why the cycle is initiated, and while the FORM cycle triggered by stale fuel can be stopped by refueling the vehicle, the FORM cycle triggered to maintain engine lubrication cannot be stopped by any action by the driver[22]:

> The vehicle will automatically exit the Fuel and Oil Refresh Mode when conditions have been satisfied. If the vehicle enters Fuel and Oil Refresh Mode, due to fuel which has been in the fuel tank for a long period of time (becoming stale fuel), the engine will run whenever the vehicle is operational (no electric only operation) until the low fuel level warning is activated. It is also possible to exit the Fuel and Oil Refresh Mode sooner by adding a minimum of four gallons of new fuel to the vehicle's fuel tank.
>
> If the vehicle enters Fuel and Oil Refresh Mode to maintain engine lubrication properties, the engine may run for a period of up to 20 minutes when fully warm whenever the vehicle is operational (no electric only operation).

72.     However, drivers quickly reported that FORM cycles would take significantly longer than 20 minutes, particularly in cold weather conditions—leaving drivers unable to use electric-only mode on their 4xe Vehicles at all, with the FORM cycle manifesting far more often and for longer than reasonable (the "FORM Defect").[23]

---

[19] Caleb Jacobs, *Jeep 4xe Owners Are Mad Over Electric Mode Not Working in the Cold*, TheDrive (Jan. 18, 2023), https://www.thedrive.com/news/jeep-wrangler-4xe-owners-are-mad-over-ev-mode-that-wont-work-in-the-cold (last visited Jan. 23, 2023).

[20] *FORM in Hybrid only....*, 4XE Forums, https://www.4xeforums.com/threads/form-in-hybrid-only.2426/page-2 (last visited Jan. 23, 2023).

[21] Jeep, 2023 Wrangler Hybrid Supplement at 35, https://vehicleinfo.mopar.com/assets/publications/en-us/Jeep/2023/Wrangler_4xe/P139881_23_JL_H_SU_EN_USC_DIGITAL.pdf (last visited Jan. 23, 2023).

[22] Jeep, 2021 Wrangler 4xe Hybrid Supplement at 37, https://msmownerassets.z13.web.core.windows.net/assets/publications/en-us/Jeep/2021/Wrangler_4xe/P125757_21_JL_H_SU_EN_USC_DIGITAL.pdf (last visited Jan. 24, 2023) (emphasis added).

[23] *See, e.g.*, Paulo Acoba, *Why doesn't EV mode work in the Jeep Wrangler 4xe when it gets cold outside?*, Alt Car News (Feb. 6, 2022), https://tiremeetsroad.com/2022/02/06/why-doesnt-ev-mode-

73.    Defendants acknowledged the issue, but instead of resolving the problem, simply revised the language in the owners' manual to reflect that FORM cycles would last longer:

> If the vehicle enters Fuel and Oil Refresh mode to maintain engine lubrication properties, the engine may run for a period of up to 2.5 hours when fully warm whenever the vehicle is operational (no electric only operation). If the vehicle is shut down before conditions to exit the refresh mode have been satisfied, the engine may run for additional time on subsequent trips. Oil refresh may take significantly longer in freezing temperatures.[24]

74.    In the new hybrid supplement to the vehicle manuals, FCA also notes that "[f]requent short trips at low ambient temperature conditions where the engine does not reach normal operating temperatures are more likely to trigger the lubrication based mode."[25]

75.    Defendants also issued a series of Technical Service Bulletins ("TSBs") related to the FORM Defect. One indicates that FORM cycles may be extended due to an issue with the PCM software, and provides for reprogramming that module, but the other indicates that the FORM cycles are operating as designed[26]:

---

work-in-the-jeep-wrangler-4xe-when-it-gets-cold-outside/ (last visited Jan. 20, 2023); *Fuel and Oil Refresh Mode*, 4xe Forums, https://www.4xeforums.com/threads/fuel-and-oil-refresh-mode.210/page-25#post-28928 (last visited Jan. 24, 2023).

[24] Jeep, 2023 Wrangler Hybrid Supplement at 36, https://vehicleinfo.mopar.com/assets/publications/en-us/Jeep/2023/Wrangler_4xe/P139881_23_JL_H_SU_EN_USC_DIGITAL.pdf (last visited Jan. 23, 2023); *see also id.* (JeepCares Customer Care Team comment #488).

[25] Jeep, 2023 Wrangler Hybrid Supplement at 36, https://vehicleinfo.mopar.com/assets/publications/en-us/Jeep/2023/Wrangler_4xe/P139881_23_JL_H_SU_EN_USC_DIGITAL.pdf (last visited Jan. 23, 2023).

[26] *FORM*, Wrangler Forums (Jan. 9, 2023), https://www.jlwranglerforums.com/forum/threads/form.106822/ (last visited Jan. 24, 2023); *Electric Mode Unavailable*, 4xe Forums (Feb. 4, 2022), https://www.4xeforums.com/threads/electric-mode-unavailable.1494/page-14 (last visited Jan. 24, 2023).



**STAR ONLINE PUBLICATION**

MOPAR.  Alfa Romeo  CHRYSLER  DODGE  FIAT  Jeep  RAM  SRT

**Case Number:** S2208000020

**Release Date:** January 2022

**Symptom/Vehicle Issue:** EV Mode Unavailable, Cluster Message Displayed Vehicle In Fuel And Oil Refresh Mode

**Customer Complaint/Technician Observation:** Owner complains the vehicle will not go into EV (Electric Vehicle) mode. Technician observed the message for refresh mode and the vehicle is not entering EV Mode.

**Discussion:**
FUEL AND OIL REFRESH MODE Since it is possible to operate this vehicle for extended periods of time without running the gas engine, the fuel within the vehicle's fuel tank can become stale or the engine oil's lubricating properties can be reduced without the normal engine operating temperatures.

To prevent engine and/or fuel system damage due to stale fuel, or lubrication, this vehicle is equipped with a Fuel and Oil Refresh Mode. The vehicle will automatically enter into the Fuel and Oil Refresh Mode to minimize these conditions. When operating in this mode, the gas engine will run to provide vehicle propulsion (electric only operation is inhibited). A message will be displayed in the instrument cluster whenever Fuel and Oil Refresh Mode is active.

The vehicle will automatically exit the Fuel and Oil Refresh Mode when conditions have been satisfied. If the vehicle enters Fuel and Oil Refresh Mode, due to fuel stale, the engine will run whenever the vehicle is operational (no electric only operation) until the low fuel level warning is activated. It is also possible to exit the Fuel and Oil Refresh Mode sooner by adding a minimum of four gallons of new fuel to the vehicle's fuel tank.

NOTE: If the vehicle enters Fuel and Oil Refresh Mode to maintain engine lubrication, adding fuel *will not exit* the mode sooner. If the vehicle enters Fuel and Oil Refresh Mode for lubrication properties, the engine may require accumulated engine run time from 20 minutes to 2 hours at max engine operating temperatures (best at speeds above 50 mph) whenever the vehicle is operational (no electric only operation). If the vehicle is shut down before conditions to exit the refresh mode have been satisfied, the engine may run for additional time on subsequent trips.

NOTE: Frequent short trips at low ambient temperature conditions are more likely to trigger the lubrication based mode. If the engine run time is not met in-between an oil change interval, changing the engine oil and resetting the service reminder is the recommended option.

**DO NOT RESET THE OIL INDICATOR WITHOUT CHANGING THE OIL FOR THIS CONDITION.**

This document does not authorize warranty repairs. This communication documents a record of past experiences. STAR Online does not provide any conclusions about what is wrong with the vehicle. Rather, it captures all previous cases known that appear to be similar or related to the vehicle symptom / condition. You are the expert, and you are responsible for deciding on the appropriate course of action.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| STELLANTIS PARTS & SERVICES | Technical Service Bulletin (TSB) Flash: Powertrain Control Module (PCM) Updates | | | |
|---|---|---|---|---|
| REFERENCE: | TSB: 18-162-22 GROUP 18 - Vehicle Performance | Date: | December 23, 2022 | REVISION: – |
| VEHICLES AFFECTED: | **2022 (JL) Jeep Wrangler This bulletin applies to vehicles equipped with a 2.0L I4 DOHC DI Turbo PHEV Engine (Sales Code ECX).** | | MARKET APPLICABILITY: ☒NA ☒MEA ☒SA ☒IAP ☒EE ☒CH | |
| CUSTOMER SYMPTOM: | Customers may experience one or more of the following: <ul><li>Vehicle may not be able to enter electric mode driving while Fuel Oil Refresh Mode (FORM) is active.</li><li>FORM staying on too long.</li></ul> | | | |
| CAUSE: | **PCM software** | | | |

REPAIR SUMMARY:
This bulletin involves reprogramming the PCM with the latest available software.

**NOTE:** Additional module flashes are required for this update to be effective, the following modules are all to be updated along with this PCM update:
- Hybrid Control Processor (HCP), Auxiliary Hybrid Control Processor (AHCP) also known as the Power Inverter Module (PIM).
- Transmission Control Module (TCM).

CLAIMS DATA:

| Labor Operation No: | Labor Description | Skill Category | Labor Time |
|---|---|---|---|
| 18-19-06-FX | Module, Powertrain Control (PCM) - Reprogram (0 - Introduction) | 1 - Engine Repair and Performance | 0.3 Hrs. |
| Failure code | CC | Customer Concern | |

*RELATED TIME ALLOWANCE:*

76.    Despite these TSBs, consumers continue to experience an inability to drive in the electric-only mode due to the FORM Defect.

77.    Defendants represented that the electric-only mode in the 4xe Vehicles would be available to owners and lessees without notifying them that during the winter months, they might find themselves wholly unable to utilize the electric-only mode and would be forced to operate their vehicles using only the gas engine. Defendants knew about the FORM Defect, even going so far as revising the owners' manual to describe it, and yet continued to sell the Vehicles without disclosing to consumers that the FORM Defect would render the electric battery wholly useless in cold

temperatures. Defendants were also aware of the effects of the FORM Defect because of previous experiences with similar issues with the Pacifica hybrid vehicles.[27] Had Defendants disclosed the FORM Defect to Plaintiffs and other owners and lessees, reasonable consumers would have been aware of it and would have paid less for the 4xe Vehicles, if they chose to buy them at all. Defendants' knowledge of the FORM Defect, and their subsequent inaction, has resulted in harm to Plaintiffs and other owners and lessees.

## V.  CLASS ACTION ALLEGATION

78.     Plaintiffs bring this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of a proposed nationwide class (the "Class"), defined as:

> Any person in the United States who purchased or leased, other than for resale, a Class Vehicle.

79.     Class Vehicles are defined as follows:

> The 2021, 2022, and 2023 Jeep Wrangler 4xe and 2022 and 2023 Jeep Grand Cherokee 4xe vehicles.

80.     In addition, state subclasses are defined as follows:

**California Subclass**: All persons in the state of California who bought or leased, other than for resale, a Class Vehicle.

**Colorado Subclass**: All persons in the state of Colorado who bought or leased, other than for resale, a Class Vehicle.

**Michigan Subclass**: All persons in the state of Michigan who bought or leased, other than for resale, a Class Vehicle.

**Missouri Subclass**: All persons in the state of Missouri who bought or leased, other than for resale, a Class Vehicle.

**New Hampshire Subclass**: All persons in the state of New Hampshire who bought or leased, other than for resale, a Class Vehicle.

**New York Subclass**: All persons in the state of New York who bought or leased, other than for resale, a Class Vehicle.

**Oregon Subclass**: All persons in the state of Oregon who bought or leased, other than for resale, a Class Vehicle.

81.     The Class and these Subclasses satisfy the prerequisites of Federal Rule of Civil

---

[27] *Oil Refresh Mode – Analysis and Solutions*, Pacifica Forums (Apr. 26, 2020), https://www.pacificaforums.com/threads/oil-refresh-mode-analysis-and-solutions.30330/page-9 (last visited Jan. 30, 2023).

Procedure 23(a) and the requirements of Rule 23(b)(3).

82.  **Numerosity:** Plaintiffs do not know the exact size of the Class or identity of the Class members, since such information is in the exclusive control of Defendant. Nevertheless, the Class encompasses tens of thousands of individuals dispersed throughout the United States. The number of Class members is so numerous that joinder of all Class members is impracticable. The names, addresses, and phone numbers of Class members are identifiable through documents maintained by Defendants.

83.  **Commonality and Predominance:** This action involves common questions of law and fact which predominate over any question solely affecting individual Class members. These common questions include:

i.   whether Defendants engaged in the conduct alleged herein;

ii.   whether Defendants had knowledge of the FORM Defect in the Class Vehicles when they placed Class Vehicles into the stream of commerce in the United States;

iii.   whether Defendants should have had knowledge of the FORM Defect in the Class Vehicles when they placed Class Vehicles into the stream of commerce in the United States;

iv.   when Defendants became aware of the FORM Defect in the Class Vehicles;

v.   whether Defendants failed to disclose the existence and cause of this defect in the Class Vehicles;

vi.   whether Defendants knowingly concealed the FORM Defect in the Class Vehicles;

vii.   whether the Defendants had a duty to disclose the FORM Defect in the Class Vehicles;

viii.   whether Defendants' conduct as alleged herein violates consumer protection laws;

ix.   whether Defendants' conduct as alleged herein violates other laws asserted herein;

x.   whether Plaintiff and Class members overpaid for their Class Vehicles as a result of the defect;

xi.   and whether Plaintiffs and Class members are entitled to damages and equitable relief.

84.   **Typicality:** Plaintiffs' claims are typical of the other Class members' claims because all Class members were comparably injured through Defendants' substantially uniform misconduct as described above. The Plaintiffs representing the Class are advancing the same claims and legal theories on behalf of themselves and all other members of the Class that they represent, and there are no defenses that are unique to Plaintiffs. The claims of Plaintiffs and Class members arise from the same operative facts and are based on the same legal theories.

85.   **Adequacy:** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Class they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. The Class's interest will be fairly and adequately protected by Plaintiffs and their counsel.

86.   **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be virtually impossible for the Class members to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system could not; individualized litigation creates a potential for inconsistent or contradictory judgments, increases the delay and expense to the parties, and increases the expense and burden to the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by this Court.

## ANY APPLICABLE STATUTES OF LIMITATION ARE TOLLED

**A.   Discovery Rule**

87.   Plaintiffs and Class members did not discover, and could not have discovered through the exercise of reasonable diligence, that the Class Vehicles had one or more design and/or manufacturing defects that caused the FORM system to block access to electric-only mode more often and for longer than was reasonable.

88.     Plaintiffs and Class members had no realistic ability to discover the extent of the design and/or manufacturing defects until the FORM Defect began to manifest in their vehicles, and would have had no reason to individually believe that the frequency and duration of the FORM cycle was the result of a widespread design and/or manufacturing defect. Any statutes of limitation otherwise-applicable to any claims asserted herein thus have been tolled by the discovery rule.

**B.     Equitable Estoppel**

89.     Even if Plaintiffs' claims accrued before January 31, 2023, Defendants are equitably estopped from asserting the statutes of limitations. Defendants misrepresented that the Class Vehicles were free from defects, including by representing that the vehicles were "engineered for any environment" and that drivers could utilize the electric-only driving mode at will. Defendants knew that the FORM Defect rendered the electric-only driving mode inaccessible in cold weather conditions.

90.     Plaintiffs and Class members were unaware of the fact or nature of Defendants' misrepresentations. Plaintiffs and Class members relied upon Defendants' false advertisements regarding the electric-only driving mode. Plaintiffs and Class members will be prejudiced if Defendants are not estopped.

## VI. CLAIMS FOR RELIEF

**A.     Claims Brought on Behalf of the Nationwide Class**

### COUNT ONE — COMMON LAW FRAUD –FRAUD BY OMISSION

91.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

92.     Plaintiffs assert this claim on behalf of themselves and the Nationwide Class or, in the alternative, on behalf of the State Subclasses, against Defendant FCA and Defendant Stellantis.

93.     The Class Vehicles that Plaintiffs and Class members purchased or leased were defective because the electric-only driving mode is unavailable to drivers for long periods and in cold temperatures.

94.     Defendants failed to disclose the FORM Defect and acted with reckless disregard for the truth when they failed to disclose that the FORM system would render the electric-only driving mode unavailable to drivers in cold conditions. Further, even after Defendants became aware of the

FORM Defect, Defendants continued representing to consumers that the electric-only driving mode would be available to them, with the intent that consumers rely on such representations.

95.     Defendants had a duty to disclose this material information to Plaintiffs and Class members because Defendants were in a superior position to know about the existence, nature, cause, and results of the Defect; Plaintiffs and Class members could not reasonably have been expected to learn or discover the Defect; and Defendants knew that Plaintiffs and Class members could not reasonably have been expected to learn about or discover the Defect.

96.     Plaintiffs and Class members did not know about the FORM Defect and could not have discovered it through reasonably diligent investigation.

97.     But for Defendants' fraudulent omissions of material information, Plaintiffs and Class members would not have purchased or leased the Class Vehicles, or would have paid less for them. Plaintiffs and Class members have sustained damage because they purchased or leased Vehicles that were not as represented. Accordingly, Defendants are liable to Plaintiffs and Class members for damages in an amount to be proven at trial for their lost benefit of the bargain and overpayment at the time of purchase or lease, and/or for the diminished value of the Class Vehicles.

98.     Defendants' acts were done wantonly, deliberately, with intent to defraud, in reckless disregard of the rights of Plaintiffs and Class members, and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### COUNT TWO — VIOLATIONS OF THE MAGNUSON–MOSS WARRANTY ACT
### (15 U.S.C. § 2301, *ET SEQ.*)

99.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

100.    Plaintiffs assert this claim on behalf of themselves and the Nationwide Class or, in the alternative, on behalf of the State Subclasses, against Defendant FCA.

101.    Plaintiffs and the Class members are "consumers" within the meaning of the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301(3).

102.    Defendant FCA is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5).

103.    The Class Vehicles, including Plaintiffs' Vehicles, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

104.    FCA's 3 year/36,000 mile "Basic Limited Warranty Coverage"[28] is a "written warranty" within the meaning of 15 U.S.C. § 2301(6).

105.    FCA's 5 year/60,000 mile "Powertrain Limited Warranty"[29] is a "written warranty" within the meaning of 15 U.S.C. § 2301(6).

106.    FCA breached its express warranties by:

        A.    Selling and leasing Class Vehicles with a FORM system that was defective in design, materials, and/or workmanship, requiring repair or replacement within the warranty period; and

        B.    Refusing and/or failing to honor the express warranties by repairing or replacing the FORM system without leaving the Class Vehicles with the same capability as advertised to the purchasers.

107.    Plaintiffs and the other Class members relied on the existence and length of the express warranties in deciding to purchase or lease the Class Vehicles.

108.    FCA's breach of its express warranties has deprived Plaintiffs and the other Class members of the benefit of their bargain.

109.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

110.    FCA has been given reasonable opportunity to cure its breach of the written warranties. Alternatively, Plaintiffs and the other Class members are not required to do so because affording FCA a reasonable opportunity to cure its breach of written warranties was, and is, futile.

111.    As a direct and proximate cause of FCA's breach of the written warranties, Plaintiffs and the other Class members sustained damages and other losses in an amount to be determined at

---

[28] *See* Jeep 2021 Wrangler Warranty Information – Hybrid, at 1, https://vehicleinfo.mopar.com/assets/publications/en-us/Jeep/2021/Wrangler_4xe/P140475_21_JL_H_GW_EN_US_DIGITAL.pdf (last visited Jan. 24, 2023).
[29] *Id.*

trial. FCA's conduct damaged Plaintiffs and the other Class members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, including statutory attorney fees and/or other relief as deemed appropriate.

**COUNT THREE — UNJUST ENRICHMENT**

112. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

113. Plaintiffs bring this claim on behalf of themselves and on behalf of the Nationwide Class or, alternatively, on behalf of the State Subclasses, against Defendant FCA and Defendant Stellantis.

114. Plaintiffs and Class members paid Defendants the value of non-defective, fully operational Class Vehicles with the ability to operate only using the electric engine for up to 21 miles. Plaintiffs and Class members paid a premium to be able to use the electric engine, as traditional, non-hybrid models of each of the Class Vehicles are available and significantly lower in cost. In exchange, Defendants provided Plaintiffs and Class members with defective Vehicles that cannot use the electric-only operation mode for significant periods of time while the FORM cycle is engaged.

115. Plaintiffs provided Defendants with the value of Vehicles not beset by the FORM Defect.

116. As such, Plaintiffs conferred value upon Defendants which would be unjust for Defendants to retain.

117. As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs and Class members have suffered and continue to suffer various injuries. As such, they are entitled to damages, including but not limited to restitution of all amounts by which Defendants were enriched through their misconduct.

**B.     Claims Brought on Behalf of the California Class**

**COUNT FOUR —  VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT ("CLRA")
(CAL. CIV. CODE § 1750, *ET SEQ.*)**

118. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

119. Plaintiff Singh (for the purpose of this section, "Plaintiff") brings this action on behalf

1    of himself and the California Subclass against Defendant FCA and Defendant Stellantis.

2        120.    Defendants are each a "person" as that term is defined in California Civil Code §

3    1761(c).

4        121.    Plaintiff and the California Subclass members are "consumers" as that term is defined

5    in California Civil Code §1761(d).

6        122.    Defendants engaged in unfair and deceptive acts in violation of the CLRA by the

7    practices described above, and by knowingly and failing to disclose from California Plaintiffs and

8    Class members that the Class Vehicles suffer from the FORM Defect (and the costs, risks, and

9    diminished value of the vehicles as a result of this problem).

10       123.    Defendants' acts and practices violated the CLRA by: (1) Representing that goods or

11   services have sponsorships, characteristics, uses, benefits, or quantities which they do not have, or that

12   a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;

13   (2) Representing that goods or services are of a particular standard, quality, or grade, or that goods are

14   of a particular style or model, if they are of another; (3) Advertising goods and services with the intent

15   not to sell them as advertised; and (4) Representing that the subject of a transaction has been supplied

16   in accordance with a previous representation when it has not.

17       124.    Defendants' unfair or deceptive acts or practices occurred repeatedly in its trade or

18   business and were capable of deceiving a substantial portion of the purchasing public.

19       125.    Defendants knew that the FORM Defect rendered the electric-only driving mode

20   unusable, making the Class Vehicles not suitable for their intended use as hybrid vehicles.

21       126.    Defendants had the duty to Plaintiff and the California Subclass members to disclose

22   the FORM Defect and the defective nature of the Class Vehicles because:

23           A.    Defendants were in a superior position to know the true state of the facts

24           about the FORM Defect and their associated costs;

25           B.    Plaintiff and the California Subclass members could not reasonably have

26           been expected to learn or discover that the Class Vehicles had defects until those defects

27           became manifest;

28           C.    Defendants knew that Plaintiff and the California Subclass members

could not reasonably have been expected to learn about or discover the FORM Defect and the effect it would have on the Class Vehicles' ability to be used in electric-only mode.

127.    In failing to disclose the FORM Defect, Defendants have knowingly failed to disclose material facts and breached their duty to disclose.

128.    The facts Defendants did not disclose to Plaintiff and the California Subclass members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the Class Vehicles or pay a lesser price. Plaintiff and the California Subclass members did, in fact, rely on Defendants' representations and disclosures regarding the Vehicles' ability to be driven in electric-only mode. Had Defendants disclosed the FORM Defect, Plaintiff and the California Subclass members would not have purchased the Class Vehicles or would have paid less for them.

129.    Plaintiff provided FCA and Stellantis with notice of its CLRA violations on January 31, 2023, and currently seek injunctive relief.  Plaintiff hereby reserves his right to amend this complaint to seek monetary damages under the CLRA after the 30-day notice period expires.

130.    Defendants' fraudulent and deceptive business practices proximately caused injuries to Plaintiff and the members of the California Subclass.

131.    Pursuant to Cal. Civ. Code § 1780, Plaintiff seeks injunctive and declaratory relief and reasonable attorneys' fees and costs against Defendants.

**COUNT FIVE —  VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200)**

132.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

133.    Plaintiff Singh (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the California Subclass against Defendant FCA and Defendant Stellantis.

134.    The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

135.    Defendants have engaged in unfair competition and unfair, unlawful, or fraudulent

business practices by the conduct, statements, and omissions described above, and by failing to disclose to California Plaintiffs and other California Subclass members that the Class Vehicles contain the FORM Defect (and thus suffer from the loss of the ability to be driven in electric-only mode, and have diminished value resulting from the defect). Defendants should have disclosed this information because they were in a superior position to know the true facts related to the defect, and Plaintiff and the California Subclass members could not have been reasonably expected to learn or discover these true facts.

136.     By its acts and practices, Defendants have deceived Plaintiff and the California Subclass and is likely to have deceived the public. In failing to disclose the FORM Defect and suppressing other material facts, Defendants breached their duty to disclose these facts, violated the UCL, and caused injuries to Plaintiff and the California Subclass members. Defendants' omissions pertained to information material to Plaintiff and other California Subclass members, as it would have been to all reasonable consumers.

137.     The injuries Plaintiff and the California Subclass members suffered greatly outweigh any potential countervailing benefit to consumers or to competition, and they are not injuries that Plaintiff and the California Subclass members could or should have reasonably avoided.

138.     Defendants' acts and practices are unlawful because they violate California Civil Code §§ 1668, 1709, 1710, and 1750 et seq., and California Commercial Code § 2313.

139.     Plaintiff seeks to enjoin Defendants from further unlawful, unfair, and/or fraudulent acts or practices, to obtain restitutionary disgorgement of all monies and revenues Defendants have generated as a result of such practices, and all other relief allowed under California Business & Professions Code § 17200.

## COUNT SIX — VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE § 17500, *ET SEQ.*)

140.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

141.     Plaintiff Singh (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the California Subclass against Defendant FCA and Defendant Stellantis.

142.     California Business & Professions Code § 17500 states: "It is unlawful for any . . .

corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

143.    Defendants caused to be made or disseminated through California and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care FCA and Stellantis should have known to be untrue and misleading to consumers, including Plaintiff and other California Subclass members.

144.    Defendants have violated Section 17500 because their misrepresentations and omissions regarding the reliability, functionality, and energy efficiencies of the Class Vehicles were material and likely to deceive a reasonable consumer.

145.    Plaintiff and the other California Subclass members have suffered injuries in fact, including the loss of money or property, resulting from Defendants' unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Class Vehicles, Plaintiff and the other California Subclass members relied on Defendants' misrepresentations and/or omissions with respect to the Class Vehicles' electric-only range. These representations were untrue because Defendants in fact distributed the Class Vehicles with the FORM Defect. Had Plaintiff and the other California Subclass members known this, they would not have purchased or leased the Class Vehicles or would not have paid as much for them. Accordingly, Plaintiff and the California Subclass members did not receive the benefit of their bargain.

146.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the state of California and nationwide.

147.    Plaintiff, individually and on behalf of the other California Subclass members, request that the Court enter such orders or judgments as may be necessary to enjoin Defendants from

continuing their unfair, unlawful, and/or deceptive practices, and restore to Plaintiff and the other California Subclass members any money Defendants acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

**COUNT SEVEN — BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
**(CAL. COM. CODE §§ 2314 AND 10212)**

148.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

149.   Plaintiff Singh (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the California Subclass against Defendant FCA.

150.   FCA is and was at all relevant times a "merchant" with respect to motor vehicles under California Commercial Code §§ 2104(1) and 10103(c), and a "seller" of motor vehicles under § 2103(1)(d).

151.   With respect to leases, FCA is and was at all relevant times relevant a "lessor" of motor vehicles under Cal. Com. Code § 10103(a)(16).

152.   The Class Vehicles are and were at all relevant times "goods" within the meaning of California Commercial Code §§ 2105(1) and 10103(a)(8).

153.   FCA was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. FCA knew or had reason to know of the specific use for which the Class Vehicles were purchased.

154.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to California Commercial Code §§ 2314 and 10212.

155.   FCA provided Plaintiff and the members of the California Subclass with an implied warranty that the Class Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. FCA impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles FCA manufactured, supplied, distributed, and/or sold were reliable for providing transportation, and were hybrid vehicles capable of being driven in electric-only mode; and (ii) a warranty that the Class Vehicles would be fit for their intended use while being operated.

156.    However, the Class Vehicles at the time of sale and thereafter were and are not vehicles are not fit for their ordinary purpose of providing reasonably reliable transportation at the time of sale or thereafter because the FORM Defect can manifest and result in loss of the Vehicles' ability to drive in electric-only mode, forcing owners and lessees to drive using the gas engine.

157.    Therefore, the Class Vehicles are not fit for their particular purpose of providing reliable transportation as a hybrid vehicle.

158.    Plaintiff notified FCA of its breach within a reasonable time, and/or were not required to do so because affording FCA a reasonable opportunity to cure its breaches would have been futile. In any event, FCA knows about the defect, as evidenced by its revision to the 2022 owners' manual, which was revised to acknowledge that the FORM cycle can last for up to hours.[30] Moreover, FCA was provided notice of these issues within a reasonable amount of time by the numerous complaints it received from various sources, including through online sources and directly from consumers.

159.    Plaintiff and the California Subclass members have had sufficient dealings with FCA or its agents to establish privity of contract. Privity is not required in this case, however, because Plaintiff and the California Subclass members are intended third-party beneficiaries of contracts between FCA and its authorized dealers and are intended beneficiaries of FCA's implied warranties. The dealers were not intended to be the ultimate consumers of Class Vehicles, and the warranties were designed for and intended to benefit the ultimate consumers only.

160.    As a direct and proximate result of the breach of said implied warranty, Plaintiff and the California Subclass sustained the damages herein set forth.

161.    Plaintiff and the California Subclass members are, therefore, entitled to damages in an amount to be proven at the time of trial.

**COUNT EIGHT — VIOLATIONS OF THE SONG-BEVERLY ACT – BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**

**(CAL. CIV. CODE §§ 1792, 1791.1, ET SEQ.)**

162.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

163.    Plaintiff Singh (for the purpose of this section, "Plaintiff") brings this action on behalf

---

[30] *See supra* ¶ 58.

of himself and the California Subclass against Defendant FCA.

164.    At all relevant times hereto, FCA was the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. FCA knew or should have known of the specific use for which the Class Vehicles were purchased.

165.    FCA provided Plaintiff and the California Subclass members with an implied warranty that the Class Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. The Class Vehicles, however, are not fit for their ordinary purpose because, inter alia, the Class Vehicles suffered from the FORM Defect at the time of sale.

166.    The Class Vehicles are not fit for the purpose of providing reliable transportation as a hybrid vehicle because of the defect.

167.    FCA impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles FCA manufactured, supplied, distributed, and/or sold were reliable for providing transportation, and were hybrid vehicles capable of being driven in electric-only mode; and (ii) a warranty that the Class Vehicles would be fit for their intended use while being operated

168.    Contrary to the applicable implied warranties, the Class Vehicles were not fit for their ordinary and intended purpose. Instead, the Class Vehicles are defective, including, but not limited to, the FORM Defect and inability to be driven in electric-only mode.

169.    FCA's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

### COUNT NINE — FRAUD BY OMISSION

170.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

171.    Plaintiff Singh (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the California Subclass against Defendant FCA and Defendant Stellantis.

172.    Defendants made material omissions concerning a presently existing or past fact in that, for example, Defendants did not fully and truthfully disclose to its customers the true nature of the

FORM defect, which in many cases could not be discovered until years after the Class Vehicles were purchased or leased. These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase.

173.   Defendants had a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

174.   In addition, Defendants had a duty to disclose these omitted material facts because they were known and/or accessible only to Defendants, who had superior knowledge and access to the facts and Defendants knew that those facts were not known to or reasonably discoverable by Plaintiff and the California Subclass members. These omitted facts were material because they directly impact the reliability of the Class Vehicles.

175.   Defendants were in exclusive control of the material facts and such facts were not known to the public or the California Subclass members. Defendants also possessed exclusive knowledge of the FORM defect rendering Class Vehicles inherently more unreliable than similar vehicles.

176.   Defendants failed to disclose these material facts, in whole or in part, with the intent to induce Plaintiff and the California Subclass members to purchase the Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

177.   Plaintiff and the California Subclass members were unaware of these omitted material facts and would not have acted as they did if they had known of the omitted facts. The actions of Plaintiff and the California Subclass members were justified.

178.   Plaintiff and the California Subclass members reasonably relied on these omissions and suffered damages as a result.

179.   As a result of these omissions, Plaintiff and the California Subclass members incurred damages including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished intrinsic value of their Class Vehicles.

180.   Defendants' acts were done maliciously, oppressively, deliberately, with intent to

defraud, and in reckless disregard of the rights of Plaintiff and the California Subclass members. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### COUNT TEN — UNJUST ENRICHMENT

181.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

182.    Plaintiff Singh (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the California Subclass against Defendant FCA and Defendant Stellantis.

183.    Plaintiff and the California Subclass members paid Defendants the value of non-defective, fully operational Class Vehicles with the ability to operate only using the electric engine for up to 21 miles. Plaintiff and the California Subclass members paid a premium to be able to use the electric engine, as traditional, non-hybrid models of each of the Class Vehicles are available and significantly lower in cost. In exchange, Defendants provided Plaintiffs and the California Subclass members with defective Vehicles that cannot use the electric-only operation mode for significant periods of time while the FORM cycle is engaged.

184.    Defendants enjoyed the benefit of increased financial gains, to the detriment of Plaintiff and the California Subclass members, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Defendants retain these wrongfully obtained profits.

185.    Plaintiff, therefore, seeks an order establishing Defendants as constructive trustees of the profits unjustly obtained, plus interest.

### C.    Claims Brought on Behalf of the Colorado Class

### COUNT ELEVEN — VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT (COLO. REV. STAT. § 6-1-101, *ET SEQ.*)

186.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

187.    Plaintiff Clark (for the purpose of this section, "Plaintiff") brings this action on behalf of herself and the Colorado Subclass against Defendant FCA and Defendant Stellantis.

188.    Defendants, Plaintiff, and the Colorado Subclass members are "persons" within the

1  meaning of § 6-1-102(6) of the Colorado Consumer Protection Act ("Colorado CPA"), Colo. Rev. Stat.

2  § 6-1-101, et seq.

3      189.   Plaintiff and the Colorado Subclass members are "consumers" within the meaning of

4  Col. Rev. Stat § 6-1-113(1)(a).

5      190.   The Colorado CPA makes unlawful deceptive trade practices in the course of a person's

6  business. Defendants engaged in deceptive trade practices prohibited by the Colorado CPA, including:

7  (1) knowingly making a false representation as to the characteristics, uses, and benefits of the Class

8  Vehicles that had the capacity or tendency to deceive Colorado Subclass members; (2) representing

9  that the Class Vehicles are of a particular standard, quality, and grade even though Defendants knew or

10  should have known they are not; (3) advertising the Class Vehicles with the intent not to sell them as

11  advertised; and (4) failing to disclose material information concerning the Class Vehicles that was

12  known to Defendants at the time of advertisement or sale with the intent to induce Colorado Subclass

13  members to purchase, lease or retain the Class Vehicles.

14      191.   In the course of their business, Defendants violated the Colorado CPA. As detailed

15  above, they willfully failed to disclose the FORM Defect with the intent that consumers rely on that

16  failure to disclose in deciding whether to purchase a Class Vehicle. By failing to disclose the FORM

17  Defect while advertising the Class Vehicles as hybrid vehicles capable of driving up to 21 miles using

18  only the electric engine, Defendants engaged in one or more of the following unfair or deceptive acts

19  or practices as defined in Colo. Rev. Stat. § 6-1-105:

20          A.   Representing that the Class Vehicles have approval, characteristics, uses,

21          or benefits that they do not have;

22          B.   Representing that the Class Vehicles are of a particular standard, quality

23          and grade when they are not;

24          C.   Advertising the Class Vehicles with the intent not to sell or lease them as

25          advertised; and/or

26          D.   Failing to disclose material information concerning the Class Vehicles

27          known to Defendants at the time of advertisement or sale, with the intention of inducing

28          Plaintiffs and Class members to purchase or lease the vehicles.

192.    Defendants' failure to disclose the true characteristics of the FORM Defect were material to Plaintiffs and the Colorado Subclass, as Defendants intended. Had they known the truth, Plaintiff and the Colorado Subclass would not have purchased or leased the Class Vehicles, or—if the Class Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell— would have paid significantly less for them.

193.    Plaintiff and the Colorado Subclass members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had failed to disclose, until the FORM Defect manifested in their Vehicles. Plaintiff and the Colorado Subclass members did not, and could not, unravel Defendants' deception on their own.

194.    Defendants had an ongoing duty to Plaintiff and the Colorado Subclass to refrain from unfair and deceptive practices under the Colorado CPA in the course of their business. Specifically, Defendants owed Plaintiff and Colorado Subclass members a duty to disclose all the material facts concerning the FORM Defect because they possessed exclusive knowledge and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

195.    Plaintiff and Colorado Subclass members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

196.    Defendants' violations present a continuing risk to Plaintiff and the Colorado Subclass, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

197.    Pursuant to Colo. Rev. Stat. § 6-1-113, Plaintiff and the Colorado Subclass seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, treble or punitive damages, and any other just and proper relief available under the Colorado CPA.

## COUNT TWELVE — BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (COLO. REV. STAT. § 4-2-314)

198.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

199.    Plaintiff Clark (for the purpose of this section, "Plaintiff") brings this action on behalf

of herself and the Colorado Subclass against Defendant FCA.

200.    FCA, Plaintiff, and the Colorado Subclass are all "persons" within the meaning of Colo. Rev. Stat. § 4-1-201(26).

201.    FCA is a "merchant" with respect to motor vehicles within the meaning of Colo. Rev. Stat. § 4-2-104(1).

202.    Pursuant to Colo. Rev. Stat. § 4-2-314, a warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.

203.    The Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that the FORM Defect causes the Vehicles to lose the ability to use the electric motor more frequently and for more significant periods of time than disclosed.

204.    Privity is not required in this case because Plaintiff and the Colorado Subclass are intended third-party beneficiaries of contracts between FCA and its dealers; specifically, they are the intended beneficiaries of FCA's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

205.    FCA was provided notice of the FORM Defect, as alleged herein, by the numerous complaints filed against it, and the instant Complaint, within a reasonable amount of time after the defect was discovered. FCA's knowledge of the FORM Defect is further supported by its revision to the 2022 owners' manual, which was revised to acknowledge that the FORM cycle can last for up to 2.5 hours.[31]

206.    As a direct and proximate result of FCA's breach of the warranties of merchantability, Plaintiff and the Colorado Subclass members have been damaged in an amount to be proven at trial.

### COUNT THIRTEEN — FRAUD BY OMISSION

207.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

---

[31] *See supra* ¶ 58.

208.   Plaintiff Clark (for the purpose of this section, "Plaintiff") brings this action on behalf of herself and the Colorado Subclass against Defendant FCA and Defendant Stellantis.

209.   Defendants made material omissions concerning a presently existing or past fact in that, for example, Defendants did not fully and truthfully disclose to its customers the true nature of the FORM defect, which in many cases could not be discovered until years after the Class Vehicles were purchased or leased. These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase.

210.   Defendants had a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

211.   In addition, Defendants had a duty to disclose these omitted material facts because they were known and/or accessible only to Defendants, who had superior knowledge and access to the facts and Defendants knew that those facts were not known to or reasonably discoverable by Plaintiff and the Colorado Subclass members. These omitted facts were material because they directly impact the reliability of the Class Vehicles.

212.   Defendants were in exclusive control of the material facts and such facts were not known to the public or the Colorado Subclass members. Defendants also possessed exclusive knowledge of the FORM defect rendering Class Vehicles inherently more unreliable than similar vehicles.

213.   Defendants failed to disclose these material facts, in whole or in part, with the intent to induce Plaintiff and the Colorado Subclass members to purchase the Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

214.   Plaintiff and the Colorado Subclass members were unaware of these omitted material facts and would not have acted as they did if they had known of the omitted facts. The actions of Plaintiff and the Colorado Subclass members were justified.

215.   Plaintiff and the Colorado Subclass members reasonably relied on these omissions and suffered damages as a result.

216.     As a result of these omissions, Plaintiff and the Colorado Subclass members incurred damages including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished intrinsic value of their Class Vehicles.

217.     Defendants' acts were done maliciously, oppressively, deliberately, and in reckless disregard of the rights of Plaintiff and the Colorado Subclass members. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

<b>COUNT FOURTEEN — UNJUST ENRICHMENT</b>

218.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

219.     Plaintiff Clark (for the purpose of this section, "Plaintiff") brings this action on behalf of herself and the Colorado Subclass against Defendant FCA and Defendant Stellantis.

220.     Plaintiff and the Colorado Subclass members paid Defendants the value of non-defective, fully operational Class Vehicles with the ability to operate only using the electric engine for up to 21 miles. Plaintiff and the Colorado Subclass members paid a premium to be able to use the electric engine, as traditional, non-hybrid models of each of the Class Vehicles are available and significantly lower in cost. In exchange, Defendants provided Plaintiffs and the Colorado Subclass members with defective Vehicles that cannot use the electric-only operation mode for significant periods of time while the FORM cycle is engaged.

221.     Defendants enjoyed the benefit of increased financial gains, to the detriment of Plaintiff and the Colorado Subclass members, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Defendants retain these wrongfully obtained profits.

222.     Plaintiff, therefore, seeks an order establishing Defendants as constructive trustees of the profits unjustly obtained, plus interest.

**D.     Claims Brought on Behalf of the Michigan Class**

<b>COUNT FIFTEEN — VIOLATIONS OF THE MICHIGAN<br>CONSUMER PROTECTION ACT<br>(MICH. COMP. LAWS § 445.903, <i>ET SEQ.</i>)</b>

223.     Plaintiffs and the Class incorporate by reference each preceding and succeeding

paragraph as though fully set forth at length herein.

224.   Plaintiffs Pirie and Schachow (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves and the Michigan Subclass against Defendant FCA and Defendant Stellantis.

225.   Plaintiffs and members of the Michigan Subclass are "persons" within the meaning of Mich. Comp. Laws § 445.902(1)(d).

226.   The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce . . . ." Mich. Comp. Laws § 445.903(1).

227.   Defendants' conduct as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Defendants' manufacture, sale, and use of Vehicles containing the FORM Defect, which Defendants failed to adequately investigate, disclose and remedy, and their misrepresentations and omissions regarding the reliability and range of the Class Vehicles.

228.   Defendants' conduct as alleged above and herein constitutes practices prohibited by the Michigan CPA, including: "(c) Representing that goods or services have … characteristics . . . that they do not have . . . .;" "(e) Representing that goods or services are of a particular standard . . . if they are of another;" "(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;" "(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is;" and "(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." Mich. Comp. Laws § 445.903(1).

229.   Defendants' actions as set forth above occurred in the conduct of trade or commerce.

230.   Defendants intended that Plaintiffs and the Michigan Subclass members rely on their failure to disclose, so that Plaintiffs and the Michigan Subclass members would purchase or lease Class Vehicles.

231.   Had Defendants disclosed the omitted material, Plaintiffs and the members of the Michigan Subclass would not have purchased or leased Class Vehicles or would have paid less for

1  them.

2  232.   Defendants' violations present a continuing risk to Plaintiffs and members of the

3  Michigan Subclass as well as to the general public. Defendants' unlawful acts and practices

4  complained of herein affect the public interest.

5  233.   Plaintiffs and the Michigan Subclass members were injured as a result of Defendants'

6  conduct. Plaintiffs and the Michigan Subclass overpaid for the Class Vehicles and did not receive the

7  benefit of their bargain, and thus the Class Vehicles have suffered a diminution in value.

8  234.   Defendants' conduct proximately caused the injuries to Plaintiffs and the Michigan

9  Subclass members.

10  235.   Defendants are liable to Plaintiffs and the Michigan Subclass for damages in amounts to

11  be proven at trial, including attorneys' fees, costs, and treble damages.

12  **COUNT SIXTEEN —  BREACH OF THE IMPLIED WARRANTY**
**OF MERCHANTABILITY**
13  **(MICH. COMP. LAWS § 440.314)**

14  236.   Plaintiffs and the Class incorporate by reference each preceding and succeeding

15  paragraph as though fully set forth at length herein.

16  237.   Plaintiffs Pirie and Schachow (for the purpose of this section, "Plaintiffs") bring this

17  action on behalf of themselves and the Michigan Subclass against Defendant FCA.

18  238.   FCA is and was at all relevant times a merchant with respect to motor vehicles within

19  the meaning of Mich. Comp. Laws § 440.2314(1).

20  239.   Pursuant to Mich. Comp. Laws § 440.2314, a warranty that the Class Vehicles were in

21  merchantable condition is implied by law in the instant transactions.

22  240.   The Class Vehicles, when sold and at all times thereafter, were not in merchantable

23  condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class

24  Vehicles are inherently defective in that the FORM Defect causes the Vehicles to lose the ability to use

25  the electric motor more frequently and for more significant periods of time than disclosed.

26  241.   Privity is not required in this case because Plaintiffs and the Michigan Subclass are

27  intended third-party beneficiaries of contracts between FCA and its dealers; specifically, they are the

28  intended beneficiaries of FCA's implied warranties. The dealers were not intended to be the ultimate

consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

242.   FCA was provided notice of the FORM Defect, as alleged herein, by the numerous complaints filed against it, and the instant Complaint, within a reasonable amount of time after the defect was discovered. FCA's knowledge of the FORM Defect is further supported by its revision to the 2022 owners' manual, which was revised to acknowledge that the FORM cycle can last for up to 2.5 hours.[32]

243.   As a direct and proximate result of FCA's breach of the warranties of merchantability, Plaintiffs and the Michigan Subclass members have been damaged in an amount to be proven at trial.

### COUNT SEVENTEEN — FRAUD BY OMISSION

244.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

245.   Plaintiffs Pirie and Schachow (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves and the Michigan Subclass against Defendant FCA and Defendant Stellantis.

246.   Defendants made material omissions concerning a presently existing or past fact in that, for example, Defendants did not fully and truthfully disclose to its customers the true nature of the FORM defect, which in many cases could not be discovered until years after the Class Vehicles were purchased or leased. These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase.

247.   Defendants had a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

248.   In addition, Defendants had a duty to disclose these omitted material facts because they were known and/or accessible only to Defendants, who had superior knowledge and access to the facts

---

[32] *See supra* ¶ 58.

and Defendants knew that those facts were not known to or reasonably discoverable by Plaintiffs and the Michigan Subclass members. These omitted facts were material because they directly impact the reliability of the Class Vehicles.

249.    Defendants were in exclusive control of the material facts and such facts were not known to the public or the Missouri Subclass members. Defendants also possessed exclusive knowledge of the FORM defect rendering Class Vehicles inherently more unreliable than similar vehicles.

250.    Defendants failed to disclose these material facts, in whole or in part, with the intent to induce Plaintiffs and the Michigan Subclass members to purchase the Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

251.    Plaintiffs and the Michigan Subclass members were unaware of these omitted material facts and would not have acted as they did if they had known of the omitted facts. The actions of Plaintiffs and the Michigan Subclass members were justified.

252.    Plaintiffs and the Michigan Subclass members reasonably relied on these omissions and suffered damages as a result.

253.    As a result of these omissions, Plaintiffs and the Michigan Subclass members incurred damages including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished intrinsic value of their Class Vehicles.

254.    Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiffs and the Michigan Subclass members. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### COUNT EIGHTEEN — UNJUST ENRICHMENT

255.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

256.    Plaintiffs Pirie and Schachow (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves and the Michigan Subclass against Defendant FCA and Defendant Stellantis.

257.     Plaintiffs and the Michigan Subclass members paid Defendants the value of non-defective, fully operational Class Vehicles with the ability to operate only using the electric engine for up to 21 miles. Plaintiffs and the Michigan Subclass members paid a premium to be able to use the electric engine, as traditional, non-hybrid models of each of the Class Vehicles are available and significantly lower in cost. In exchange, Defendants provided Plaintiffs and the Michigan Subclass members with defective Vehicles that cannot use the electric-only operation mode for significant periods of time while the FORM cycle is engaged.

258.     Defendants enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and the Michigan Subclass members, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Defendants retain these wrongfully obtained profits.

259.     Plaintiffs, therefore, seek an order establishing Defendants as constructive trustees of the profits unjustly obtained, plus interest.

**E.     Claims Brought on Behalf of the Missouri Class**

**COUNT NINETEEN —  VIOLATION OF MISSOURI
MERCHANDISING PRACTICES ACT
(MO. REV. STAT. § 407.010, *ET SEQ.*)**

260.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

261.     Plaintiff Taylor (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the Missouri Subclass against Defendant FCA and Defendant Stellantis.

262.     Plaintiff and Defendants are "persons" within the meaning of Mo. Rev. Stat. § 407.010(5).

263.     Defendants are engaged in "trade" or "commerce" within the meaning of Mo. Rev. Stat. § 407.010(7).

264.     The Missouri Merchandising Practices Act ("Missouri MPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise."  Mo. Rev. Stat. § 407.020.

265.     In the course of their business, Defendants violated the Missouri MPA. As detailed above, they willfully failed to disclose the FORM Defect with the intent that consumers rely on that failure to disclose in deciding whether to purchase a Class Vehicle. By failing to disclose the FORM Defect while advertising the Class Vehicles as hybrid vehicles capable of driving up to 21 miles using only the electric engine, Defendants engaged in the following unfair or deceptive acts or practices prohibited by Mo. Rev. Stat. § 407.020: using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Class Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

266.     Defendants' failure to disclose of the true characteristics of the FORM Defect and its effect on the electric-only driving mode were material to Plaintiff and the Missouri Subclass, as Defendants intended. Had they known the truth, Plaintiff and the Missouri Subclass would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

267.     Plaintiff and Missouri Subclass members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had failed to disclose. Plaintiff and Missouri Subclass members did not, and could not, unravel Defendants' deception on their own.

268.     Defendants had an ongoing duty to Plaintiff and the Missouri Subclass to refrain from unfair and deceptive practices under the Missouri MPA in the course of their business. Specifically, Defendants owed Plaintiff and Missouri Subclass members a duty to disclose all the material facts concerning the FORM system and Defect because they possessed exclusive knowledge, they failed to disclose it from Plaintiff and the Missouri State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

269.     Plaintiff and Missouri Subclass members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' failure to disclose material information.

270.     Defendants' violations present a continuing risk to Plaintiff and the Missouri Subclass, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect

1   the public interest.

2       271.    Pursuant to Mo. Rev. Stat. § 407.025, Plaintiff and the Missouri Subclass seek an order

3   enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive

4   damages, and any other just and proper relief available under the Missouri MPA.

5           **COUNT TWENTY — BREACH OF THE IMPLIED WARRANTY**
            **OF MERCHANTABILITY**
6           **(MO. REV. STAT. § 400.2-314)**

7       272.    Plaintiffs and the Class incorporate by reference each preceding and succeeding

8   paragraph as though fully set forth at length herein.

9       273.    Plaintiff Taylor (for the purpose of this section, "Plaintiff") brings this action on behalf

10  of himself and the Missouri Subclass against Defendant FCA.

11      274.    Plaintiff and the Missouri Subclass members were at all times "buyers" under Mo. Rev.

12  Stat. § 400.2-103(a).

13      275.    FCA is, and was, at all relevant times a "seller" of motor vehicles under Mo. Rev. Stat.

14  § 400.2-103(d) and a "merchant" with respect to motor vehicles under Mo. Rev. Stat. § 400.2-104(1).

15      276.    The Class Vehicles are and were at all relevant times "goods" within the meaning of

16  Mo. Rev. Stat. § 400.2-105(1).

17      277.    A warranty that the Class Vehicles were in merchantable condition and fit for the

18  ordinary purpose for which vehicles are used is implied by law pursuant to Mo. Rev. Stat. § 400.2-314.

19      278.    FCA impliedly warranted that the Class Vehicles were of merchantable quality and fit

20  for such use. This implied warranty included, inter alia, the following: (i) a warranty that the Class

21  Vehicles were manufactured, supplied, distributed, and/or sold by FCA were reliable for providing

22  transportation using the electric-only driving mode; and (ii) a warranty that the Class Vehicles would

23  be fit for their intended use—providing reliable transportation using the electric-only driving mode—

24  while the Class Vehicles were being operated.

25      279.    FCA breached the implied warranty of merchantability in that the Class Vehicles were

26  not in merchantable condition when they were sold to Plaintiff and the Missouri Subclass members and

27  said vehicles were and are unfit for the ordinary purposes for which such vehicles are used because the

28  electric-only driving mode is unreliable due to the FORM Defect.

280.    FCA has been provided notice of these issues by numerous complaints, as alleged herein.

281.    As a direct and proximate result of breaches of the implied warranty of merchantability, Plaintiff and the Missouri Subclass members have suffered damages, including but not limited to incidental and consequential damages.

## COUNT TWENTY-ONE — FRAUD BY OMISSION

282.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

283.    Plaintiff Taylor (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the Missouri Subclass against Defendant FCA and Defendant Stellantis.

284.    Defendants made material omissions concerning a presently existing or past fact in that, for example, Defendants did not fully and truthfully disclose to its customers the true nature of the FORM defect, which in many cases could not be discovered until years after the Class Vehicles were purchased or leased. These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase.

285.    Defendants had a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

286.    In addition, Defendants had a duty to disclose these omitted material facts because they were known and/or accessible only to Defendants, who had superior knowledge and access to the facts and Defendants knew that those facts were not known to or reasonably discoverable by Plaintiff and the Missouri Subclass members. These omitted facts were material because they directly impact the reliability of the Class Vehicles.

287.    Defendants were in exclusive control of the material facts and such facts were not known to the public or the Missouri Subclass members. Defendants also possessed exclusive knowledge of the FORM defect rendering Class Vehicles inherently more unreliable than similar vehicles.

288.    Defendants failed to disclose these material facts, in whole or in part, with the intent to induce Plaintiff and the Missouri Subclass members to purchase the Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

289.    Plaintiff and the Missouri Subclass members were unaware of these omitted material facts and would not have acted as they did if they had known of the omitted facts. The actions of Plaintiff and the Missouri Subclass members were justified.

290.    Plaintiff and the Missouri Subclass members reasonably relied on these omissions and suffered damages as a result.

291.    As a result of these omissions, Plaintiff and the Missouri Subclass members incurred damages including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished intrinsic value of their Class Vehicles.

292.    Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiff and the Missouri Subclass members. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT TWENTY-TWO — UNJUST ENRICHMENT**

293.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

294.    Plaintiff Taylor (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the Missouri Subclass against Defendant FCA and Defendant Stellantis.

295.    Plaintiff and the Missouri Subclass members paid Defendants the value of non-defective, fully operational Class Vehicles with the ability to operate only using the electric engine for up to 21 miles. Plaintiff and the Missouri Subclass members paid a premium to be able to use the electric engine, as traditional, non-hybrid models of each of the Class Vehicles are available and significantly lower in cost. In exchange, Defendants provided Plaintiffs and the Missouri Subclass members with defective Vehicles that cannot use the electric-only operation mode for significant periods of time while the FORM cycle is engaged.

296.    Defendants enjoyed the benefit of increased financial gains, to the detriment of Plaintiff

and the Missouri Subclass members, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Defendants retain these wrongfully obtained profits.

297. Plaintiff, therefore, seeks an order establishing Defendants as constructive trustees of the profits unjustly obtained, plus interest.

**F.    Claims Brought on Behalf of the New Hampshire Class**

**COUNT TWENTY-THREE —  VIOLATION OF N.H.
CONSUMER PROTECTION ACT
(N.H. REV. STAT. ANN. § 358-A:1, *ET SEQ.*)**

298. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

299. Plaintiff Monheit (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the New Hampshire Subclass against Defendant FCA and Defendant Stellantis.

300. Plaintiff and Defendants are "persons" within the meaning of N.H. Rev. Stat. § 358-A:1.

301. Defendants are engaged in "trade" or "commerce" within the meaning of N.H. Rev. Stat. § 358-A:1.

302. The New Hampshire Consumer Protection Act ("New Hampshire CPA") makes unfair or deceptive trade practices unlawful. N.H. Rev. Stat. Ann. § 358-A:2.

303. In the course of their business, Defendants violated the New Hampshire CPA. As detailed in the common law fraud allegations: As detailed above, they willfully failed to disclose the FORM Defect with the intent that consumers rely on that failure to disclose in deciding whether to purchase a Class Vehicle. By failing to disclose the FORM Defect while advertising the Class Vehicles as hybrid vehicles capable of driving up to 21 miles using only the electric engine, and by marketing, offering for sale, and selling the defective Class Vehicles, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in N.H. Rev. Stat. § 358-A:2:

      A.    Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Class Vehicles;

      B.    Representing that the Class Vehicles have approval, characteristics, uses, or benefits that they do not have;

1           C.   Representing that the Class Vehicles are of a particular standard, quality

2   and grade when they are not; and/or

3           D.   Advertising the Class Vehicles with the intent not to sell or lease them as

4   advertised.

5   304.   Defendants' failure to disclose of the true characteristics of the FORM Defect were

6   material to Plaintiff and the New Hampshire Subclass, as Defendants intended.  Had they known the

7   truth, Plaintiff and the New Hampshire Subclass would not have purchased or leased the Class

8   Vehicles, or would have paid significantly less for them.

9   305.   Plaintiff and the New Hampshire Subclass members had no way of discerning that

10  Defendants' representations were false and misleading, or otherwise learning the facts that Defendants

11  had failed to disclose. Plaintiff and the New Hampshire Subclass members did not, and could not,

12  unravel Defendants' deception on their own.

13  306.   Defendants had an ongoing duty to Plaintiff and the New Hampshire Subclass to refrain

14  from unfair and deceptive practices under the New Hampshire CPA in the course of their business.

15  Specifically, Defendants owed Plaintiff and the New Hampshire Subclass members a duty to disclose

16  all the material facts concerning the FORM Defect because they possessed exclusive knowledge, they

17  failed to disclose it from Plaintiff and the New Hampshire Subclass, and/or they made

18  misrepresentations that were rendered misleading because they were contradicted by withheld facts.

19  307.   Plaintiff and the New Hampshire Subclass members suffered ascertainable loss and

20  actual damages as a direct and proximate result of Defendants' concealment, misrepresentations,

21  and/or failure to disclose material information.

22  308.   Defendants' violations present a continuing risk to Plaintiff and the New Hampshire

23  Subclass, as well as to the general public.  Defendants' unlawful acts and practices complained of

24  herein affect the public interest.

25  309.   Pursuant to N.H. Rev. Stat. § 358-A:10, Plaintiff and the New Hampshire Subclass seek

26  an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages,

27  punitive damages, and any other just and proper relief available under the New Hampshire CPA.

28  **COUNT TWENTY-FOUR — BREACH OF THE IMPLIED WARRANTY**
    **OF MERCHANTABILITY**

1

**(N.H. REV. STAT. ANN. § 382-A:2-314)**

2

310. Plaintiffs and the Class incorporate by reference each preceding and succeeding

3

paragraph as though fully set forth at length herein.

4

311. Plaintiff Monheit (for the purpose of this section, "Plaintiff") brings this action on

5

behalf of himself and the New Hampshire Subclass against Defendant FCA.

6

312. FCA is, and was, at all relevant times a "merchant" with respect to motor vehicles under

7

N.H. Rev. Stat. Ann. § 382-A:2-104(1) and a "seller" of motor vehicles under N.H. Rev. Stat. Ann. §

8

382-A:2-103(1).

9

313. The Class Vehicles are and were at all relevant times "goods" within the meaning of

10

N.H. Rev. Stat. Ann. § 382-A:2-105.

11

314. A warranty that the Class Vehicles were in merchantable condition and fit for the

12

ordinary purpose for which vehicles are used is implied by law pursuant to N.H. Rev. Stat. Ann. § 382-

13

A:2-314.

14

315. FCA impliedly warranted that the Class Vehicles were of merchantable quality and fit

15

for such use. This implied warranty included, inter alia, the following: (i) a warranty that the Class

16

Vehicles were manufactured, supplied, distributed, and/or sold by FCA were reliable for providing

17

transportation using the electric-only driving mode; and (ii) a warranty that the Class Vehicles would

18

be fit for their intended use—providing reliable transportation using the electric-only driving mode—

19

while the Class Vehicles were being operated.

20

316. FCA breached the implied warranty of merchantability in that the Class Vehicles were

21

not in merchantable condition when they were sold to Plaintiff and New Hampshire Subclass members

22

and said vehicles were and are unfit for the ordinary purposes for which such vehicles are used because

23

the electric-only driving mode is unreliable due to the FORM Defect.

24

317. FCA has been provided notice of these issues by numerous complaints, as alleged

25

herein.

26

318. As a direct and proximate result of breaches of the implied warranty of merchantability,

27

Plaintiff and the New Hampshire Subclass members have suffered damages, including but not limited

28

to incidental and consequential damages.

**COUNT TWENTY-FIVE — FRAUD BY OMISSION**

319.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

320.     Plaintiff Monheit (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the New Hampshire Subclass against Defendant FCA and Defendant Stellantis.

321.     Defendants made material omissions concerning a presently existing or past fact in that, for example, Defendants did not fully and truthfully disclose to its customers the true nature of the FORM Defect, which in many cases could not be discovered until years after the Class Vehicles were purchased or leased. These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase.

322.     Defendants had a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

323.     In addition, Defendants had a duty to disclose these omitted material facts because they were known and/or accessible only to Defendants, who had superior knowledge and access to the facts and Defendants knew that those facts were not known to or reasonably discoverable by Plaintiff and the New Hampshire Subclass members. These omitted facts were material because they directly impact the reliability of the Class Vehicles.

324.     Defendants were in exclusive control of the material facts and such facts were not known to the public or the New Hampshire Subclass members. Defendants also possessed exclusive knowledge of the FORM defect rendering Class Vehicles inherently more unreliable than similar vehicles.

325.     Defendants failed to disclose these material facts, in whole or in part, with the intent to induce Plaintiff and the New Hampshire Subclass members to purchase the Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

326.     Plaintiff and the New Hampshire Subclass members were unaware of these omitted material facts and would not have acted as they did if they had known of the omitted facts. The actions

of Plaintiff and the New Hampshire Subclass members were justified.

327.    Plaintiff and the New Hampshire Subclass members reasonably relied on these omissions and suffered damages as a result.

328.    As a result of these omissions, Plaintiff and the New Hampshire Subclass members incurred damages including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished intrinsic value of their Class Vehicles.

329.    Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiff and the New Hampshire Subclass members. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT TWENTY-SIX —  UNJUST ENRICHMENT

330.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

331.    Plaintiff Monheit (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the New Hampshire Subclass against Defendant FCA and Defendant Stellantis.

332.    Plaintiff and the New Hampshire Subclass members paid Defendants the value of non-defective, fully operational Class Vehicles with the ability to operate only using the electric engine for up to 21 miles. Plaintiff and the New Hampshire Subclass members paid a premium to be able to use the electric engine, as traditional, non-hybrid models of each of the Class Vehicles are available and significantly lower in cost. In exchange, Defendants provided Plaintiffs and the New Hampshire Subclass members with defective Vehicles that cannot use the electric-only operation mode for significant periods of time while the FORM cycle is engaged.

333.    Defendants enjoyed the benefit of increased financial gains, to the detriment of Plaintiff and the New Hampshire Subclass members, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Defendants retain these wrongfully obtained profits.

334.    Plaintiff, therefore, seeks an order establishing Defendants as constructive trustees of the profits unjustly obtained, plus interest.

**G.      Claims Brought on Behalf of the New York Class**

**COUNT TWENTY-SEVEN — VIOLATIONS OF NEW YORK
GENERAL BUSINESS LAW § 349
(N.Y. GEN. BUS. LAW § 349)**

335.      Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

336.      Plaintiff Erskine (for purposes of this section, "Plaintiff") brings this claim on behalf of himself and on behalf of the New York Subclass against Defendant FCA and Defendant Stellantis.

337.      Plaintiff and Defendants are "persons" within the meaning of the New York General Business Law ("GBL"). N.Y. Gen. Bus. Law § 349(h).

338.      Under GBL section 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce" are unlawful. N.Y. Gen. Bus. Law § 349.

339.      In the course of Defendants' business, they willfully failed to disclose the FORM Defect with the intent that consumers rely on that failure to disclose in deciding whether to purchase a Class Vehicle.

340.      By failing to disclose the FORM Defect while advertising the Class Vehicles as hybrid vehicles capable of driving up to 21 miles using only the electric engine, Defendants engaged in deceptive acts or practices in violation of GBL section 349.

341.      Defendants' deceptive acts or practices were materially misleading. Defendants' conduct was likely to and did deceive reasonable consumers, including Plaintiff and members of the New York Subclass, about the Class Vehicles' true performance and value.

342.      Plaintiff and members of the New York Subclass were unaware of, and lacked a reasonable means of discovering, the material facts Defendants omitted.

343.      Defendants' misleading conduct concerns the reliability of widely purchased consumer products and affects the public interest.

344.      Defendants' actions set forth above occurred in the conduct of its business, trade, or commerce.

345.      Plaintiff and members of the New York Subclass suffered ascertainable loss as a direct and proximate result of Defendants' GBL violations. Plaintiff and members of the New York Subclass

overpaid for their Class Vehicles, and their Class Vehicles suffered a diminution in value resulting from the FORM Defect. These injuries are the direct and natural consequence of Defendants' material misrepresentations and omissions.

346.    Plaintiff and members of the New York Subclass request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair and deceptive practices. Under the GBL, Plaintiff and members of the New York Subclass are entitled to recover their actual damages or $50, whichever is greater. Additionally, because Defendants acted willfully or knowingly, Plaintiff and members of the New York Subclass are entitled to recover three times their actual damages. Plaintiff and is also entitled to reasonable attorneys' fees. N.Y. Gen. Bus. Law § 349(h).

### COUNT TWENTY-EIGHT —  VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350 (N.Y. GEN. BUS. LAW § 350)

347.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

348.    Plaintiff Erskine (for purposes of this section, "Plaintiff") brings this claim on behalf of himself and on behalf of the New York Subclass against Defendant FCA and Defendant Stellantis.

349.    GBL section 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce…." N.Y. Gen. Bus. Law § 350. False advertising includes "advertising, including labeling, of a commodity…if such advertising is misleading in a material respect," taking into account "not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity…to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual." N.Y. Gen. Bus. Law § 350-a.

350.    Defendants caused or made to be disseminated through New York, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendants, to be untrue and misleading to consumers, including Plaintiff and other members of the New York Subclass.

351.     Defendants violated GBL Section 350 because the omissions regarding the FORM Defect were material and deceived reasonable consumers, including Plaintiff and members of the New York Subclass, about the true performance and value of the Class Vehicles.

352.     Plaintiff and members of the New York Subclass suffered ascertainable loss as a direct and proximate result of Defendants' violations. In purchasing or leasing their Class Vehicles, Plaintiff and members of the New York Subclass relied on Defendants' representations and omissions with respect to electric-only performance, reliability, and value of the Class Vehicles. Defendants' representations turned out to be untrue because the Class Vehicles are unable to utilize the electric-only driving mode for significant periods of time due to the FORM Defect. Had Plaintiff or members of the New York Subclass known this, they would not have purchased or leased their Class Vehicles or would have paid less money for them.

353.     Plaintiff and members of the New York Subclass overpaid for their Class Vehicles and their Class Vehicles suffered a diminution in value resulting from the FORM defect. These injuries are the direct and natural consequence of Defendants' material misrepresentations and omissions.

354.     Plaintiff and members of the New York Subclass request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and deceptive practices of false advertising. Under the GBL, Plaintiff and members of the New York Subclass are entitled to recover their actual damages or $500, whichever is greater. Additionally, because Defendants acted willfully or knowingly, Plaintiff and members of the New York Subclass are entitled to recover three times their actual damages, up to $10,000. Plaintiff is also entitled to reasonable attorneys' fees. N.Y. Gen. Bus. Law § 350-e.

## COUNT TWENTY-NINE — BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (N.Y. U.C.C. LAW §§ 2-314 AND 2A-212)

355.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

356.     Plaintiff Erskine (for purposes of this section, "Plaintiff") brings this claim on behalf of himself and on behalf of the members of the New York Subclass against Defendant FCA.

357.     FCA is, and was, at all relevant times a "merchant" with respect to motor vehicles under

N.Y. UCC Law § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

358.    The Class Vehicles are and were at all relevant times "goods" within the meaning of N.Y. UCC Law §§ 2-105(1) and 2A-103(1)(h).

359.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.Y. UCC Law §§ 2-314 and 2A-212.

360.    FCA impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, inter alia, the following: (i) a warranty that the Class Vehicles were manufactured, supplied, distributed, and/or sold by FCA were reliable for providing transportation using the electric-only driving mode; and (ii) a warranty that the Class Vehicles would be fit for their intended use—providing reliable transportation using the electric-only driving mode—while the Class Vehicles were being operated.

361.    FCA breached the implied warranty of merchantability in that the Class Vehicles were not in merchantable condition when they were sold to Plaintiff and New York Subclass members and said vehicles were and are unfit for the ordinary purposes for which such vehicles are used because the electric-only driving mode is unreliable due to the FORM Defect.

362.    FCA has been provided notice of these issues by numerous complaints, as alleged herein.

363.    As a direct and proximate result of breaches of the implied warranty of merchantability, Plaintiff and the New York Subclass members have suffered damages, including but not limited to incidental and consequential damages.

**COUNT THIRTY — FRAUD BY OMISSION**

364.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

365.    Plaintiff Erskine (for purposes of this section, "Plaintiff") brings this claim on behalf of himself and on behalf of the members of the New York Subclass against Defendant FCA and Defendant Stellantis.

366.    Defendants made material omissions concerning a presently existing or past fact in that,

for example, Defendants did not fully and truthfully disclose to its customers the true nature of the FORM defect, which in many cases could not be discovered until years after the Class Vehicles were purchased or leased. These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase.

367.   Defendants had a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

368.   In addition, Defendants had a duty to disclose these omitted material facts because they were known and/or accessible only to Defendants, who had superior knowledge and access to the facts and Defendants knew that those facts were not known to or reasonably discoverable by Plaintiff and the New York Subclass members. These omitted facts were material because they directly impact the reliability of the Class Vehicles.

369.   Defendants were in exclusive control of the material facts and such facts were not known to the public or the New York Subclass members. Defendants also possessed exclusive knowledge of the FORM defect rendering Class Vehicles inherently more unreliable than similar vehicles.

370.   Defendants failed to disclose these material facts, in whole or in part, with the intent to induce Plaintiff and the New York Subclass members to purchase the Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

371.   Plaintiff and the New York Subclass members were unaware of these omitted material facts and would not have acted as they did if they had known of the omitted facts. The actions of Plaintiff and the New York Subclass members were justified.

372.   Plaintiff and the New York Subclass members reasonably relied on these omissions and suffered damages as a result.

373.   As a result of these omissions, Plaintiff and the New York Subclass members incurred damages including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished intrinsic value of their Class Vehicles.

374.    Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiff and the New York Subclass members. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### COUNT THIRTY-ONE — UNJUST ENRICHMENT

375.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

376.    Plaintiff brings this cause of action on behalf of himself and the New York Subclass against Defendant FCA and Defendant Stellantis.

377.    Plaintiff and the New York Subclass members paid Defendants the value of non-defective, fully operational Class Vehicles with the ability to operate only using the electric engine for up to 21 miles. Plaintiff and the New York Subclass members paid a premium to be able to use the electric engine, as traditional, non-hybrid models of each of the Class Vehicles are available and significantly lower in cost. In exchange, Defendants provided Plaintiffs and the New York Subclass members with defective Vehicles that cannot use the electric-only operation mode for significant periods of time while the FORM cycle is engaged.

378.    Defendants enjoyed the benefit of increased financial gains, to the detriment of Plaintiff and the New York Subclass members, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Defendants retain these wrongfully obtained profits.

379.    Plaintiff, therefore, seeks an order establishing Defendants as constructive trustees of the profits unjustly obtained, plus interest.

**H.      Claims Brought on Behalf of the Oregon Class**

### COUNT THIRTY-TWO — VIOLATIONS OF THE OREGON UNLAWFUL TRADE PRACTICES ACT (OR. REV. STAT. § 646.605 THROUGH 646.656)

380.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

381.    Plaintiff Lindgren (for purposes of this section, "Plaintiff") brings this claim on behalf of himself and on behalf of the Oregon Subclass against Defendant FCA and Defendant Stellantis.

382.     Plaintiff and Defendants are "persons" under the Oregon Unlawful Trade Practices Act, ORS § 646.605(4).

383.     Plaintiff purchased his Class Vehicles primarily for personal, family or household purposes and thus his Class Vehicle is a "good" under ORS § 646.605(6)(a).

384.     Defendants are and were engaged in "trade" and "commerce" as defined by ORS § 646.605(8).

385.     ORS § 646.607 provides, in relevant part, that a "person engages in an unlawful trade practice if in the course of the person's business, vocation or occupation the person . . . [e]mploys any unconscionable tactic in connection with selling . . . goods or services."

386.     Defendants knew or should have known that the Class Vehicles' electric-only driving mode would be rendered unusable by the FORM Defect, and that the Class Vehicles were thus not suitable for their intended use.

387.     Defendants employed unconscionable tactics in selling the Class Vehicles by not giving Plaintiff and the Oregon Subclass members sufficient notice or warning regarding the FORM defect, intending that Plaintiff and the Class rely upon Defendants' omissions when purchasing the Class Vehicles. Plaintiff and the Oregon Subclass members were deceived by Defendants failing to disclose the FORM Defect.

388.     Defendants also engaged in unlawful and deceptive practices in violation of ORS § 646.608 by representing that the Class Vehicles have characteristics, uses, benefits, quantities and qualities that they do not have (ORS § 646.608(e)); representing that the Class Vehicles are of a particular standard, quality or grade when they are of another (ORS § 646.608(g)); concurrently with tender or delivery of the Class Vehicles, failing to disclose known material defects or material nonconformities (ORS § 646.608(t)); and engaging in other unfair or deceptive conduct (ORS § 646.608(u)).

389.     Defendants also engaged in unlawful and deceptive practices in violation of ORS §§ 646.607 and 646.608 by failing to provide Plaintiffs and Oregon Subclass members the full cost to repair the Class Vehicles and cure the FORM Defect.

390.     Defendants knew or should have known that their conduct was a violation of the

Oregon Unfair Trade Practices Act, ORS § 646.605–.656, and therefore their conduct was willful. ORS § 646.605(10).

391.    Plaintiff and the Oregon Subclass members have suffered an ascertainable loss of money or property as a direct and proximate result of Defendants' willful use or employment of unlawful methods, acts or practices.

392.    Pursuant to ORS § 646.638, Plaintiff and the Oregon Subclass members seek an order enjoining Defendants' unfair and/or deceptive practices, actual damages, punitive damages, attorney's fees and costs, and any other just and proper relief available under the Oregon UTPA.

393.    Pursuant to ORS § 646.638(2), Plaintiff will serve the Oregon Attorney General with a copy of this Complaint.

### COUNT THIRTY-THREE — BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (OR. REV. STAT. § 72.8020 *ET. SEQ.*)

394.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

395.    Plaintiff Lindgren (for purposes of this section, "Plaintiff") brings this claim on behalf of himself and on behalf of the Oregon Subclass against Defendant FCA.

396.    The Class Vehicles are "consumer goods" as defined in ORS § 72.8010(1).

397.    Plaintiff and the Oregon Subclass members are "buyers" and "retail buyers" as defined in ORS § 72.8010(2).

398.    FCA is and was at all relevant times a "manufacturer" as defined in ORS § 72.8010(3) with respect to the Class Vehicles.

399.    Pursuant to ORS § 72.8020, FCA impliedly warranted that the Class Vehicles are fit for the ordinary purposes for which they are used: providing reliable transportation using the electric-only driving mode and hybrid driving mode.

400.    By marketing, advertising, distributing, and selling Class Vehicles with the FORM Defect, FCA breached the implied warranty that the Class Vehicles were merchantable and safe for use as personal transportation.

401.    The FORM Defect was installed in the Class Vehicles at the time they left FCA's

1    manufacturing facilities and at the time they were sold or leased to Plaintiff and the Oregon Subclass.

2        402.   Plaintiff and the Oregon Subclass members have performed the duties required of them

3    under the terms of the warranties, except as may have been excused or prevented by FCA's conduct or

4    by operation of law in light of FCA's unconscionable conduct.

5        403.   FCA received timely notice about the FORM Defect but has failed to rectify the

6    problem and refused to offer an effective remedy.

7        404.   Plaintiff and the Oregon Subclass members have had sufficient dealings with FCA or its

8    agents to establish privity of contract. Privity is not required in this case, however, because Plaintiff

9    and the Oregon Subclass Members are intended third-party beneficiaries of contracts between FCA

10   and its authorized dealers and are intended beneficiaries of FCA's implied warranties. The dealers

11   were not intended to be the ultimate consumers of Class Vehicles, and the warranties were designed

12   for and intended to benefit the ultimate consumers only.

13       405.   As a direct and proximate result of FCA's breach of the implied warranty of

14   merchantability, Plaintiff and the Oregon Subclass members suffered economic damage, including loss

15   attributable to the diminished value of the Class Vehicles.

16                   **COUNT THIRTY-FOUR — FRAUD BY OMISSION**

17       406.   Plaintiffs and the Class incorporate by reference each preceding and succeeding

18   paragraph as though fully set forth at length herein.

19       407.   Plaintiff Lindgren (for purposes of this section, "Plaintiff") brings this claim on behalf

20   of himself and on behalf of the Oregon Subclass against Defendant FCA and Defendant Stellantis.

21       408.   As set forth above, Defendants failed to disclose material facts concerning the Class

22   Vehicles' electric-only and hybrid capabilities.

23       409.   Defendants failed to disclose these material facts, in whole or in part, with the intent to

24   induce Plaintiff and the Oregon Subclass members to purchase the Class Vehicles at a higher price

25   than their true value.

26       410.   Defendants still have not made full and adequate disclosure and continues to defraud

27   Plaintiff and the Oregon Subclass members.

28       411.   Plaintiff and the Oregon Subclass members were unaware of these omitted material

facts and would not have acted as they did if they had known of the omitted facts. Plaintiff and the Oregon Subclass's actions were justified. Defendants had exclusive control of the material facts and such facts were not known to the public, Plaintiff, or the Oregon Subclass.

412.    As a result of the failure to disclose material facts, Plaintiff and the Oregon Subclass members sustained damage. For those of the Oregon Subclass who elect to affirm the sale, these damages include the difference between the actual value of that which Plaintiff and the Oregon Subclass members paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits. For any Plaintiff or member of the Oregon Subclass who wants to rescind their purchases, then such Oregon Subclass members are entitled to restitution and consequential damages.

413.    Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Oregon Subclass's rights and well-being. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT THIRTY-FIVE — UNJUST ENRICHMENT**

414.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

415.    Plaintiff Lindgren (for purposes of this section, "Plaintiff") brings this claim on behalf of himself and on behalf of the Oregon Subclass against Defendant FCA and Defendant Stellantis.

416.    Plaintiff and the Oregon Subclass members paid Defendants the value of non-defective, fully operational Class Vehicles with the ability to operate only using the electric engine for up to 21 miles. Plaintiffs and the Oregon Subclass members paid a premium to be able to use the electric engine, as traditional, non-hybrid models of each of the Class Vehicles are available and significantly lower in cost. In exchange, Defendants provided Plaintiff and the Oregon Subclass members with defective Vehicles that cannot use the electric-only operation mode for significant periods of time while the FORM cycle is engaged.

417.    Defendants enjoyed the benefit of increased financial gains, to the detriment of Plaintiff

and the Oregon Subclass members, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Defendants retain these wrongfully obtained profits.

418.    Plaintiff, therefore, seeks an order establishing Defendants as constructive trustees of the profits unjustly obtained, plus interest.

### VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, pray that this Court:

A.    Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Nationwide Class and State Subclasses as defined above;

B.    Appoint Plaintiffs as representatives of the Nationwide Class and applicable State Classes and their counsel as Class Counsel;

C.    Award all actual, general, special, incidental, consequential, punitive, and exemplary damages and restitution to which Plaintiff and Class members are entitled;

D.    Award pre- and post-judgment interest on any monetary relief;

E.    Grant appropriate injunctive relief against all Defendants, including an order requiring Stellantis and FCA to buy back or permanently and completely repair the Class Vehicles pursuant to its obligations under the terms of the Warranty;

F.    Determine that Defendants are financially responsible for all Class notice and administration of Class relief;

G.    Award reasonable attorney fees and costs;

H.    Grant any such equitable relief as the Court deems appropriate, including but not limited to restitution and/or disgorgement; and

I.    Grant such further relief that this Court deems appropriate.

DATED this 31st day of January, 2023.

KELLER ROHRBACK L.L.P.


By */s/ Matthew J. Preusch*
     Matthew J. Preusch (CSB No. 298144)
     KELLER ROHRBACK L.L.P.
     801 Garden Street, Suite 301
     Santa Barbara, CA 93101
     (805) 456-1496
     Fax (805) 456-1497
     mpreusch@kellerrohrback.com

     Gretchen Freeman Cappio (pro hac vice forthcoming)
     Ryan McDevitt (pro hac vice forthcoming)
     Emma Wright (pro hac vice forthcoming)
     KELLER ROHRBACK L.L.P.
     1201 Third Avenue, Suite 3200
     Seattle, WA 98101-3052
     (206) 623-1900
     Fax (206) 623-3384
     gcappio@kellerrohrback.com
     rmcdevitt@kellerrohrback.com
     ewright@kellerrohrback.com

     E. Powell Miller (pro hac vice forthcoming)
     Sharon S. Almonrode (pro hac vice forthcoming)
     THE MILLER LAW FIRM, P.C.
     Miller Building
     950 West University Drive, Suite 300
     Rochester, MI 48307
     Telephone: (248) 841-2200
     Fax: (248) 652-2852
     epm@millerlawpc.com
     ssa@millerlawpc.com

     *Attorneys for Plaintiffs*