Matthew J. Preusch (CSB No. 298144)
KELLER ROHRBACK L.L.P.
801 Garden Street, Suite 301
Santa Barbara, CA 93101
(805) 456-1496
Fax (805) 456-1497
mpreusch@kellerrohrback.com

*Attorney for Plaintiffs*
[*Additional counsel listed on signature page*]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| PLAINTIFFS ANSHUMAN SINGH, CHAD ALTSCHAFL, MIKE BENNETT, JENNIFER BERNER, MIKE CHAVEZ, THERESA CLARK, JEREMY ERSKINE, JILLIAN KAVANAGH, FRANK KOSS, MICHAEL LINDGREN, MICHAEL MCGOWAN, RENEE MILLER, JOSHUA MILLER, JEFFREY MONHEIT, GABRIEL MORRISON, FR. WILLIAM NEVITT, MACKENZIE PIRIE, MATTHEW RAQUE, AMY SCHACHOW, GEORGE SOUDERS, and JOSHUA TAYLOR, Individually and on Behalf of All Others Similarly Situated,<br><br>                                        Plaintiffs,<br><br>     v.<br><br>FCA US LLC,<br><br>                                        Defendant. | No. 4:23-cv-00452-HSG<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## I.     INTRODUCTION

1.     Plaintiffs Anshuman Singh, Chad Altschafl, Mike Bennett, Jennifer Berner, Mike Chavez, Theresa Clark, Jeremy Erskine, Jillian Kavanagh, Frank Koss, Michael Lindgren, Michael McGowan, Renee Miller, Joshua Miller, Jeffrey Monheit, Gabriel Morrison, Fr. William Nevitt, Mackenzie Pirie, Matthew Raque, Amy Schachow, George Souders, and Joshua Taylor ("Plaintiffs"),

by and through their counsel, bring this action on behalf of themselves and all others similarly situated against Defendant FCA US LLC (hereinafter "FCA" or "Defendant"). All allegations made in this complaint are based on investigation of counsel, except those allegations that pertain to Plaintiffs' vehicles, which are based on personal knowledge.

2. The Jeep 4xe vehicles, which consist of the 2021–23 Wrangler 4xe and the 2022–23 Grand Cherokee 4xe (collectively, the "4xe Vehicles"), "pair[] a traditional gas engine with … incredible electric motor performance,"[1] providing drivers with the option to operate their vehicles using only the electric motor, only the gasoline internal combustion engine, or as a hybrid. "Electric mode" is touted as allowing for "nearly zero tailpipe emissions up to highway speeds," and Defendant boasts that the Wrangler 4xe "can run on this mode for a distance of up to 21 total miles on a full charge."[2]

3. This putative class action arises out of FCA's failure to disclose or adequately remedy a uniform and widespread design defect in the 4xe Vehicles. When the 4xe Vehicles enter "Fuel and Oil Refresh Mode" ("FORM"), electric-only driving mode is unavailable (hereinafter the "FORM Defect"). FORM is triggered frequently and for long periods, rendering it impossible for consumers to use the advertised electric-only driving mode. In colder weather, the problem is even worse and can render electric-only driving mode completely unavailable for the majority or entirety of the winter.

4. Plaintiffs and class members paid a significant premium for the 4xe plug-in hybrid vehicles over the internal combustion-only versions of the same models, and therefore overpaid at the time of purchase for a feature that is not usable as represented. Plaintiffs bring this action individually and on behalf of all other current and former owners or lessees of the 4xe Vehicles. Plaintiffs seek monetary damages and injunctive and other equitable relief for Defendant's misconduct related to the design, manufacture, marketing, sale, and lease of the 4xe Vehicles, as alleged in this Complaint.

## II.       JURISDICTION AND VENUE

5. **Subject Matter Jurisdiction.** This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because this is a class action

---

[1] *4xe*, Jeep, https://www.jeep.com/ev/4xe-hybrid-suvs.html (last visited Jan. 20, 2023).
[2] *Id.*

in which the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and there are 100 or more class members who are citizens of different states from Defendant. This Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367.

6. **Personal Jurisdiction.** This Court has general personal jurisdiction over Defendant because FCA has conducted substantial business in this judicial district and intentionally and purposefully placed Class Vehicles into the stream of commerce within the state of California and throughout the United States

7. There are more than 20 authorized Jeep dealerships in the San Francisco Bay Area and more than 130 Jeep dealerships in the state of California. Together, these authorized dealers sold a significant number of Jeep 4xe Vehicles. California leads the nation in hybrid vehicle sales, including almost 140,000 new hybrid vehicle registrations in 2022 alone.[3]

8. **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. Defendant has marketed, advertised, and sold the affected vehicles in this District, and otherwise conducted extensive business in this District.

9. **Divisional Assignment.** Defendant has numerous dealerships in Santa Clara county, including in San Jose, where Plaintiff Singh purchased his vehicle. For this reason, a divisional assignment in the San Jose Division is proper under Civil L.R. 3-2(d). Pursuant to the Northern District of California's Caseload Rebalancing Pilot Program, this case's divisional reassignment to the Oakland Division is proper. *See* Dkt. 11.

### III.   PARTIES

A. **Plaintiffs**

1. **Plaintiff Anshuman Singh**

10. Plaintiff Anshuman Singh is a citizen and resident of San Jose, California.

11. On or about April 16, 2021, Anshuman Singh purchased a new 2021 Wrangler 4xe (for

---

[3] California New Car Dealers Association, 18 California Auto Outlook 4 (Nov. 2022), https://www.cncda.org/wp-content/uploads/California-Covering-3Q-22_FINAL.pdf (last visited Jan. 30, 2023).

purposes of this section, "the Vehicle") from Normandin Chrysler Jeep for approximately $76,981.

12.     Since his purchase, Plaintiff Singh's Vehicle has been largely unable to operate in electric-only mode due to the FORM defect—as a result, he has not been able to benefit from the "21 miles of guilt-free electric driving before the gas engine kicks on" that the Vehicle was advertised to achieve.

13.     Prior to his purchase, neither Defendant nor any of its agents, dealers, or other representatives informed Plaintiff Singh of the FORM defect. Plaintiff Singh reasonably expected that the Vehicle, including its electric-only range, would function normally and in accordance with Defendant's specifications and representations.

14.     Plaintiff Singh purchased the Vehicle for personal, family, or household use. Plaintiff Singh has always attempted to use the Vehicle in the normal and expected manner.

15.     As a result, Plaintiff Singh has been left with a Vehicle with reduced electric-only range. Plaintiff Singh has suffered an ascertainable loss resulting from Defendant's concealment, fraud, omissions, and refusal to correct the FORM Defect and did not receive the benefit of his bargain when he purchased the Vehicle.

### 2.     Plaintiff Chad Altschafl

16.     Plaintiff Chad Altschafl is a citizen and resident of Cedarburg, Wisconsin.

17.     On or about May 10, 2021, Plaintiff Altschafl purchased a new 2021 Wrangler Sahara 4xe (for purposes of this section, "the Vehicle") from 5 Corners Dodge Chrysler Jeep & Ram Truck in Cedarburg, Wisconsin for approximately $57,150.

18.     Plaintiff Altschafl's Vehicle enters the FORM mode when the weather is cold and he has thus been unable to use the electric only driving mode anytime the temperature is below forty degrees—as a result, he has not been able to benefit from the "21 miles of guilt-free electric driving before the gas engine kicks on" that the Vehicle was advertised to achieve.

19.     Prior to his purchase, neither Defendant nor any of its agents, dealers, or other representatives informed Plaintiff Altschafl of the FORM defect. Plaintiff Altschafl reasonably expected that the Vehicle, including its electric-only range, would function normally and in accordance

with Defendant's specifications and representations.

20.     Plaintiff Altschafl purchased the Vehicle for personal, family, or household use. Plaintiff Altschafl has always attempted to use the Vehicle in the normal and expected manner.

21.     As a result, Plaintiff Altschafl has been left with a Vehicle with reduced electric-only range. Plaintiff Altschafl has suffered an ascertainable loss resulting from Defendant's concealment, fraud, omissions, and refusal to correct the FORM Defect and did not receive the benefit of his bargain when he purchased the Vehicle.

### 3.     Plaintiff Mike Bennett

22.     Plaintiff Mike Bennett is a citizen and resident of Westminster, Colorado.

23.     On or about June 15, 2022, Plaintiff Bennett leased a new 2022 4XE Rubicon Wrangler (for purposes of this section, "the Vehicle") from Larry Miller Jeep in Denver, Colorado for approximately $65,000.

24.     Plaintiff Bennett leased his Vehicle with the expectation that he would be able to use electric-only mode to drive to and from his workplace, where he can charge his Vehicle, in order to save money on gas. However, once temperatures dropped in Colorado, Plaintiff Bennett has been unable to use the electric driving mode, despite letting his Vehicle warm up before driving—as a result, he has not been able to benefit from the "21 miles of guilt-free electric driving before the gas engine kicks on" that the Vehicle was advertised to achieve.

25.     Prior to his lease, neither Defendant nor any of its agents, dealers, or other representatives informed Plaintiff Bennett of the FORM defect. Plaintiff Bennett reasonably expected that the Vehicle, including its electric-only range, would function normally and in accordance with Defendant's specifications and representations.

26.     Plaintiff Bennett leased the Vehicle for personal, family, or household use. Plaintiff Bennett has always attempted to use the Vehicle in the normal and expected manner.

27.     As a result, Plaintiff Bennett has been left with a Vehicle with reduced electric-only range. Plaintiff Bennett has suffered an ascertainable loss resulting from Defendant's concealment, fraud, omissions, and refusal to correct the FORM Defect and did not receive the benefit of his bargain

when he leased the Vehicle.

**4.    Plaintiff Jennifer Berner**

28.    Plaintiff Jennifer Berner is a citizen and resident of Lincoln, Nebraska.

29.    On or about September 2022, Plaintiff Berner purchased a new 2022 Wrangler Unlimited High Altitude 4xe (for purposes of this section, "the Vehicle") from Jim Glover Jeep in Tulsa, Oklahoma for approximately $66,695.

30.    Since her purchase, Plaintiff Berner's Vehicle has been largely unable to operate in electric-only mode due to the FORM defect—as a result, she has not been able to benefit from the "21 miles of guilt-free electric driving before the gas engine kicks on" that the Vehicle was advertised to achieve. Due to her dissatisfaction with the Vehicle, in November 2022, Plaintiff Berner attempted to trade the car in, but was offered $13,000 less than she had paid for the Vehicle just two months prior.

31.    Prior to her purchase, neither Defendant nor any of its agents, dealers, or other representatives informed Plaintiff Berner of the FORM defect. Plaintiff Berner reasonably expected that the Vehicle, including its electric-only range, would function normally and in accordance with Defendant's specifications and representations.

32.    Plaintiff Berner purchased the Vehicle for personal, family, or household use. Plaintiff Berner has always attempted to use the Vehicle in the normal and expected manner.

33.    As a result, Plaintiff Berner has been left with a Vehicle with reduced electric-only range. Plaintiff Berner has suffered an ascertainable loss resulting from Defendant's concealment, fraud, omissions, and refusal to correct the FORM Defect and did not receive the benefit of her bargain when she purchased the Vehicle.

**5.    Plaintiff Mike Chavez**

34.    Plaintiff Mike Chavez is a citizen and resident of Thornton, Colorado.

35.    On or about September 2021, Plaintiff Chavez purchased a new 2021 Wrangler Unlimited 4xe Rubicon (for purposes of this section, "the Vehicle") from AutoNation Chrysler Jeep Arapahoe in Englewood, Colorado for approximately $62,000.

36.    Plaintiff Chavez's Vehicle enters the FORM mode when the weather is cold, and often

stays in FORM mode for a week at a time, leaving him unable to use the electric driving mode—as a result, he has not been able to benefit from the "21 miles of guilt-free electric driving before the gas engine kicks on" that the Vehicle was advertised to achieve. The Vehicle's FORM system also instructs Plaintiff Chavez to get unscheduled and unnecessary oil changes on a regular basis.

37.     Prior to his purchase, neither Defendant nor any of its agents, dealers, or other representatives informed Plaintiff Chavez of the FORM defect. Plaintiff Chavez reasonably expected that the Vehicle, including its electric-only range, would function normally and in accordance with Defendant's specifications and representations.

38.     Plaintiff Chavez purchased the Vehicle for personal, family, or household use. Plaintiff Chavez has always attempted to use the Vehicle in the normal and expected manner.

39.     As a result, Plaintiff Chavez has been left with a Vehicle with reduced electric-only range. Plaintiff Chavez has suffered an ascertainable loss resulting from Defendant's concealment, fraud, omissions, and refusal to correct the FORM Defect and did not receive the benefit of his bargain when he purchased the Vehicle.

### 6.     Plaintiff Theresa Clark

40.     Dr. Theresa Clark is a citizen and resident of Silverthorne, Colorado.

41.     On or about December 2021, Dr. Clark purchased a new 2021 Jeep Wrangler Unlimited 4xe from Larry H Miller Chrysler Dodge Jeep Ram (for purposes of this section, "the Vehicle") in Thornton, Colorado for approximately $56,060.

42.     After her purchase, Plaintiff Clark's Vehicle was largely unable to operate in electric-only mode due to the FORM defect—as a result, she was not able to benefit from the "21 miles of guilt-free electric driving before the gas engine kicks on" that the Vehicle was advertised to achieve. Due to her dissatisfaction with the Vehicle, she sold the Vehicle back to the dealership approximately two weeks after her purchase.

43.     Prior to her purchase, neither Defendant nor any of its agents, dealers, or other representatives informed Plaintiff Clark of the FORM defect, despite the dealership being informed that Plaintiff Clark intended to use the Vehicle for her daily 20-mile commute throughout the winter

months. Plaintiff Clark reasonably expected that the Vehicle, including its electric-only range, would function normally and in accordance with Defendant's specifications and representations.

44.     After discovering that the Vehicle was unable to be driven using electric-only mode due to the FORM Defect, Plaintiff Clark called Jeep multiple times and brought the Vehicle back to the dealership, where she was informed that the Vehicle was functioning as designed. Given that she had purchased the Vehicle with the specific intent of using the electric-only mode, Plaintiff Clark then sold the Vehicle back to the dealership at a loss.

45.     Plaintiff Clark purchased the Vehicle for personal, family, or household use. Plaintiff Clark always attempted to use the Vehicle in the normal and expected manner.

46.     As a result, Plaintiff Clark was left with a Vehicle with reduced electric-only range. Plaintiff Clark suffered an ascertainable loss resulting from Defendant's concealment, fraud, omissions, and refusal to correct the FORM Defect. Plaintiff Clark did not receive the benefit of her bargain when she purchased the Vehicle, nor when she sold the Vehicle.

**7.     Plaintiff Jeremy Erskine**

47.     Plaintiff Jeremy Erskine is a citizen and resident of Arkport, New York.

48.     On or about March, 2022, Jeremy Erskine purchased a new 2021 Jeep Wrangler Unlimited Sahara 4xe from Simmons-Rockwell Dodge Chrysler Jeep RAM (for purposes of this section, "the Vehicle") in Bath, New York for approximately $55,000. Due to his dissatisfaction with the vehicle, he traded in the Vehicle approximately 4 months later for approximately $52,000.

49.     After his purchase, Plaintiff Erskine's Vehicle was largely unable to operate in electric-only mode due to the FORM defect—as a result, he was not able to benefit from the "21 miles of guilt-free electric driving before the gas engine kicks on" that the Vehicle was advertised to achieve.

50.     Prior to his purchase, neither Defendant nor any of its agents, dealers, or other representatives informed Plaintiff Erskine of the FORM defect. Plaintiff Erskine reasonably expected that the Vehicle, including its electric-only range, would function normally and in accordance with Defendant's specifications and representations.

51.     After discovering that the Vehicle was unable to be driven using electric-only mode due

to the FORM Defect, Plaintiff Erskine brought the Vehicle back to the dealership, where he was informed that the Vehicle was functioning as designed. Given that he had purchased the Vehicle with the specific intent of using the electric-only mode, Plaintiff Erskine traded in the Vehicle approximately 4 months later.

52.     Plaintiff Erskine purchased the Vehicle for personal, family, or household use. Plaintiff Erskine always attempted to use the Vehicle in the normal and expected manner.

53.     As a result, Plaintiff Erskine was left with a Vehicle with reduced electric-only range. Plaintiff Erskine suffered an ascertainable loss resulting from Defendant's concealment, fraud, omissions, and refusal to correct the FORM Defect and did not receive the benefit of his bargain when he purchased the Vehicle, nor when he traded-in the vehicle.

**8.     Plaintiff Jillian Kavanagh**

54.     Plaintiff Jillian Kavanagh is a citizen and resident of Hamilton, Massachusetts.

55.     On or about August 11, 2022, Plaintiff Kavanagh leased a new 2022 Wrangler Sahara 4XE (for purposes of this section, "the Vehicle") from Kelly Jeep in Lynnfield, Massachusetts for approximately $62,000.

56.     Plaintiff Kavanagh purchased her Vehicle with the expectation that she would be able to use the electric-only driving mode; however, despite her attempts to work with Jeep to resolve the issue, her Vehicle's electric-only mode fails to work during cold weather conditions and she has experienced sudden shutdowns while driving due to the FORM defect—as a result, she has not been able to benefit from the "21 miles of guilt-free electric driving before the gas engine kicks on" that the Vehicle was advertised to achieve.

57.     Prior to her purchase, neither Defendant nor any of its agents, dealers, or other representatives informed Plaintiff Kavanagh of the FORM defect. Plaintiff Kavanagh reasonably expected that the Vehicle, including its electric-only range, would function normally and in accordance with Defendant's specifications and representations.

58.     Plaintiff Kavanagh purchased the Vehicle for personal, family, or household use. Plaintiff Kavanagh has always attempted to use the Vehicle in the normal and expected manner.

59.     As a result, Plaintiff Kavanagh has been left with a Vehicle with reduced electric-only range. Plaintiff Kavanagh has suffered an ascertainable loss resulting from Defendant's concealment, fraud, omissions, and refusal to correct the FORM Defect and did not receive the benefit of her bargain when she purchased the Vehicle.

### 9.     Plaintiff Frank Koss

60.     Plaintiff Frank Koss is a citizen and resident of Hinesburg, Vermont.

61.     On or about January 5, 2023, Plaintiff Koss purchased a new 2022 Grand Cherokee 4xe (for purposes of this section, "the Vehicle") from Armory Jeep in Albany, New York for approximately $62,155.

62.     Plaintiff Koss's Vehicle performed as he expected for the first month of ownership, but began to unexpectedly switch to the FORM mode, rendering the Vehicle's electric driving mode unable to be used—as a result, he has not been able to benefit from the "21 miles of guilt-free electric driving before the gas engine kicks on" that the Vehicle was advertised to achieve. Plaintiff Koss purchased his Vehicle with the expectation that he would save money on gas costs by using the electric driving mode, and has been unable to do so.

63.     Prior to his purchase, neither Defendant nor any of its agents, dealers, or other representatives informed Plaintiff Koss of the FORM defect. Plaintiff Koss reasonably expected that the Vehicle, including its electric-only range, would function normally and in accordance with Defendant's specifications and representations.

64.     Plaintiff Koss purchased the Vehicle for personal, family, or household use. Plaintiff Koss has always attempted to use the Vehicle in the normal and expected manner.

65.     As a result, Plaintiff Koss has been left with a Vehicle with reduced electric-only range. Plaintiff Koss has suffered an ascertainable loss resulting from Defendant's concealment, fraud, omissions, and refusal to correct the FORM Defect and did not receive the benefit of his bargain when he purchased the Vehicle.

### 10.     Plaintiff Michael Lindgren

66.     Plaintiff Michael Lindgren is a citizen and resident of Medford, Oregon

67. On or about July 13, 2021, Michael Lindgren leased a new Jeep Wrangler Unlimited Sahara 4xe (for purposes of this section, "the Vehicle") from Lithia Chrysler Dodge Jeep Ram FIAT of Medford, Oregon with an MSRP of approximately $56,766.12.

68. Since his lease began, Plaintiff Lindgren's Vehicle has been largely unable to operate in electric-only mode due to the FORM defect—as a result, he has not been able to benefit from the "21 miles of guilt-free electric driving before the gas engine kicks on" that the Vehicle was advertised to achieve. Beginning in early April 2023, Plaintiff Lindgren has been unable to access the electric driving mode in his Vehicle at all due to the FORM defect.

69. Prior to his lease, neither Defendant nor any of its agents, dealers, or other representatives informed Plaintiff Lindgren of the FORM defect. Plaintiff Lindgren reasonably expected that the Vehicle, including its electric-only range, would function normally and in accordance with Defendant's specifications and representations.

70. Plaintiff Lindgren leased the Vehicle for personal, family, or household use. Plaintiff Lindgren has always attempted to use the Vehicle in the normal and expected manner.

71. As a result, Plaintiff Lindgren has been left with a Vehicle with reduced electric-only range. Plaintiff Lindgren has suffered an ascertainable loss resulting from Defendant's concealment, fraud, omissions, and refusal to correct the FORM Defect and did not receive the benefit of his bargain when he leased the Vehicle.

**11.   Plaintiff Michael McGowan**

72. Plaintiff Michael McGowan is a citizen and resident of Downers Grove, Illinois.

73. On or about April 29, 2021, Plaintiff McGowan purchased a new 2021 Wrangler Rubicon 4xe (for purposes of this section, "the Vehicle") from DuPage Chrysler Dodge Jeep Ram in Glendale Heights, Illinois for approximately $60,969.

74. Plaintiff McGowan has been wholly unable to use the Vehicle's electric driving mode due to the FORM defect when temperatures consistently drop below forty degrees—a significant part of the year in the Chicago area. As a result, he has not been able to benefit from the "21 miles of guilt-free electric driving before the gas engine kicks on" that the Vehicle was advertised to achieve.

Plaintiff McGowan purchased his Vehicle with the expectation that he would save money on gas costs by using the electric driving mode, and has been unable to do so.

75. Prior to his purchase, neither Defendant nor any of its agents, dealers, or other representatives informed Plaintiff McGowan of the FORM defect. Plaintiff McGowan reasonably expected that the Vehicle, including its electric-only range, would function normally and in accordance with Defendant's specifications and representations.

76. Plaintiff McGowan purchased the Vehicle for personal, family, or household use. Plaintiff McGowan has always attempted to use the Vehicle in the normal and expected manner.

77. As a result, Plaintiff McGowan has been left with a Vehicle with reduced electric-only range. Plaintiff McGowan has suffered an ascertainable loss resulting from Defendant's concealment, fraud, omissions, and refusal to correct the FORM Defect and did not receive the benefit of his bargain when he purchased the Vehicle.

**12.    Plaintiffs Renee and Joshua Miller**

78. Plaintiffs Renee and Joshua Miller are citizens and residents of Cannonsburg, Pennsylvania.

79. On or about December 30, 2022, the Miller Plaintiffs leased a new 2022 Grand Cherokee 4xe (for purposes of this section, "the Vehicle") from C Harper Chrysler Dodge Jeep Ram for approximately $63,364.

80. The Miller Plaintiffs leased their Vehicle with the expectation that Renee Miller would be able to commute each day to work—a 24 mile round trip—under full electric power. The Miller Plaintiffs have been almost wholly unable to use the electric driving mode since temperatures in Cannonsburg have dropped below freezing—nearly the entire time they have possessed the Vehicle— despite keeping the Vehicle in their garage. As a result, the Miller Plaintiffs have not been able to benefit from the "21 miles of guilt-free electric driving before the gas engine kicks on" that the Vehicle was advertised to achieve.

81. Prior to their lease, neither Defendant nor any of its agents, dealers, or other representatives informed the Miller Plaintiffs of the FORM defect. The Miller Plaintiffs reasonably

expected that the Vehicle, including its electric-only range, would function normally and in accordance with Defendant's specifications and representations.

82.     The Miller Plaintiffs leased the Vehicle for personal, family, or household use. The Miller Plaintiffs have always attempted to use the Vehicle in the normal and expected manner.

83.     As a result, the Miller Plaintiffs have been left with a Vehicle with reduced electric-only range. The Miller Plaintiffs have suffered an ascertainable loss resulting from Defendant's concealment, fraud, omissions, and refusal to correct the FORM Defect and did not receive the benefit of their bargain when they leased the Vehicle.

**13.     Plaintiff Jeffrey Monheit**

84.     Plaintiff Jeffrey Monheit is a citizen and resident of Bedford, New Hampshire.

85.     On or about December 28, 2022, Jeffrey Monheit leased a new 2022 Jeep Grand Cherokee 4XE (for purposes of this section, "the Vehicle") from Nucar Automall of Tilton, New Hampshire for approximately $63,890.

86.     Since his lease began, Plaintiff Monheit's Vehicle has been largely unable to operate in electric-only mode due to the FORM defect—as a result, he has not been able to benefit from the "21 miles of guilt-free electric driving before the gas engine kicks on" that the Vehicle was advertised to achieve.

87.     Prior to his lease, neither Defendant nor any of its agents, dealers, or other representatives informed Plaintiff Monheit of the FORM defect. Plaintiff Monheit reasonably expected that the Vehicle, including its electric-only range, would function normally and in accordance with Defendant's specifications and representations.

88.     Plaintiff Monheit leased the Vehicle for personal, family, or household use. Plaintiff Monheit has always attempted to use the Vehicle in the normal and expected manner.

89.     As a result, Plaintiff Monheit has been left with a Vehicle with reduced electric-only range. Plaintiff Monheit has suffered an ascertainable loss resulting from Defendant's concealment, fraud, omissions, and refusal to correct the FORM Defect and did not receive the benefit of his bargain when he leased the Vehicle.

**14.   Plaintiff Gabriel Morrison**

90.   Plaintiff Gabriel Morrison is a citizen and resident of Madison, Wisconsin.

91.   On or about October 22, 2022, Plaintiff Morrison purchased a new 2023 Wrangler 4xe (for purposes of this section, "the Vehicle") from Don Miller Auto Group in Madison, Wisconsin for approximately $62,360.

92.   Plaintiff Morrison was unable to use the electric driving mode for over a month as the weather became colder due to his Vehicle entering FORM mode—as a result, he has not been able to benefit from the "21 miles of guilt-free electric driving before the gas engine kicks on" that the Vehicle was advertised to achieve. Plaintiff Morrison contacted the Jeep service team and ultimately had the Vehicle inspected, but was told that it was operating normally and that there was no reason for concern. Documentation provided to Plaintiff Morrison by the Jeep dealership service department indicates that to exit FORM mode, the driver should run the engine "at highway speeds above 50 mph for extended periods."

93.   The Vehicle's system has also instructed Plaintiff Morrison to get unscheduled and unnecessary oil changes, including after Plaintiff Morrison had driven only 1,500 miles.

94.   Prior to his purchase, neither Defendant nor any of its agents, dealers, or other representatives informed Plaintiff Morrison of the FORM defect. Plaintiff Morrison reasonably expected that the Vehicle, including its electric-only range, would function normally and in accordance with Defendant's specifications and representations.

95.   Plaintiff Morrison purchased the Vehicle for personal, family, or household use. Plaintiff Morrison has always attempted to use the Vehicle in the normal and expected manner.

96.   As a result, Plaintiff Morrison has been left with a Vehicle with reduced electric-only range. Plaintiff Morrison has suffered an ascertainable loss resulting from Defendant's concealment, fraud, omissions, and refusal to correct the FORM Defect and did not receive the benefit of his bargain when he purchased the Vehicle.

**15.   Plaintiff Fr. William "Alex" Nevitt**

97.   Plaintiff Fr. William Nevitt is a citizen and resident of Cedar Knolls, New Jersey.

98.     On or about January 8, 2023, Plaintiff Nevitt leased a new 2022 Jeep Grand Cherokee Summit 4xe (for purposes of this section, "the Vehicle") from Nielsen Chrysler Dodge Jeep Ram of Morristown, New Jersey.

99.     When leasing the Vehicle, Plaintiff Nevitt was told that the FORM mode was something that the Vehicle would enter into from time to time, but Plaintiff Nevitt has found it to be something else entirely—he has been unable to use the electric only driving mode at all for his short commute since the weather turned colder, despite charging the battery. As a result, he has not been able to benefit from the "21 miles of guilt-free electric driving before the gas engine kicks on" that the Vehicle was advertised to achieve.

100.    Prior to his lease, neither Defendant nor any of its agents, dealers, or other representatives informed Plaintiff Nevitt of the FORM defect. Plaintiff Nevitt reasonably expected that the Vehicle, including its electric-only range, would function normally and in accordance with Defendant's specifications and representations.

101.    Plaintiff Nevitt leased the Vehicle for personal, family, or household use. Plaintiff Nevitt has always attempted to use the Vehicle in the normal and expected manner.

102.    As a result, Plaintiff Nevitt has been left with a Vehicle with reduced electric-only range. Plaintiff Nevitt has suffered an ascertainable loss resulting from Defendant's concealment, fraud, omissions, and refusal to correct the FORM Defect and did not receive the benefit of his bargain when he leased the Vehicle.

### 16.     Plaintiff Mackenzie Pirie

103.    Plaintiff Mackenzie Pirie is a citizen and resident of Midland, Michigan.

104.    On or about February 28, 2022, Mackenzie Pirie purchased a new 2021 Jeep Wrangler Sahara 4xe (for purposes of this section, "the Vehicle") from Feeny Chrysler/Jeep/Dodge of Midland in Midland, Michigan for approximately $55,499.

105.    Since her purchase, Plaintiff Pirie's Vehicle has been largely unable to operate in electric-only mode due to the FORM defect—as a result, she has not been able to benefit from the "21 miles of guilt-free electric driving before the gas engine kicks on" that the Vehicle was advertised to

achieve.

106.    Prior to her purchase, neither Defendant nor any of its agents, dealers, or other representatives informed Plaintiff Pirie of the FORM defect. Plaintiff Pirie reasonably expected that the Vehicle, including its electric-only range, would function normally and in accordance with Defendant's specifications and representations.

107.    Plaintiff Pirie purchased the Vehicle for personal, family, or household use. Plaintiff Pirie always attempted to use the Vehicle in the normal and expected manner.

108.    As a result, Plaintiff Pirie was left with a Vehicle with reduced electric-only range. Plaintiff Pirie suffered an ascertainable loss resulting from Defendant's concealment, fraud, omissions, and refusal to correct the FORM Defect and did not receive the benefit of her bargain when she purchased the Vehicle.

**17.    Plaintiff Matthew Raque**

109.    Plaintiff Matthew Raque is a citizen and resident of Chicago, Illinois.

110.    On or about January 18, 2023, Plaintiff Raque leased a new 2022 Grand Cherokee 4xe Overland (for purposes of this section, "the Vehicle") from Marino Chrysler Jeep Dodge in Chicago, Illinois.

111.    Since his lease began, Plaintiff Raque's Vehicle has been largely unable to operate in electric-only mode due to the FORM defect—as a result, he has not been able to benefit from the "21 miles of guilt-free electric driving before the gas engine kicks on" that the Vehicle was advertised to achieve.

112.    Prior to his lease, neither Defendant nor any of its agents, dealers, or other representatives informed Plaintiff Raque of the FORM defect. Plaintiff Raque reasonably expected that the Vehicle, including its electric-only range, would function normally and in accordance with Defendant's specifications and representations.

113.    Plaintiff Raque leased the Vehicle for personal, family, or household use. Plaintiff Raque has always attempted to use the Vehicle in the normal and expected manner.

114.    As a result, Plaintiff Raque has been left with a Vehicle with reduced electric-only

range. Plaintiff Raque has suffered an ascertainable loss resulting from Defendant's concealment, fraud, omissions, and refusal to correct the FORM Defect and did not receive the benefit of his bargain when he purchased the Vehicle.

**18.    Plaintiff Amy Schachow**

115.    Plaintiff Amy Schachow is a citizen and resident of Rockford, Michigan.

116.    On or about May 28, 2022, Amy Schachow purchased a new 2022 Jeep Wrangler 4xe (for purposes of this section, "the Vehicle") from Betten Baker Chrysler Dodge Jeep Ram in Lowell, Michigan for approximately $61,429.

117.    Since her purchase, Plaintiff Schachow's Vehicle has been largely unable to operate in electric-only mode due to the FORM defect—as a result, she has not been able to benefit from the "21 miles of guilt-free electric driving before the gas engine kicks on" that the Vehicle was advertised to achieve.

118.    Prior to her purchase, neither Defendant nor any of its agents, dealers, or other representatives informed Plaintiff Schachow of the FORM defect. Plaintiff Schachow reasonably expected that the Vehicle, including its electric-only range, would function normally and in accordance with Defendant's specifications and representations.

119.    Plaintiff Schachow purchased the Vehicle for personal, family, or household use. Plaintiff Schachow always attempted to use the Vehicle in the normal and expected manner.

120.    As a result, Plaintiff Schachow was left with a Vehicle with reduced electric-only range. Plaintiff Schachow suffered an ascertainable loss resulting from Defendant's concealment, fraud, omissions, and refusal to correct the FORM Defect and did not receive the benefit of her bargain when she purchased the Vehicle.

**19.    Plaintiff George Souders**

121.    Plaintiff George Souders is a citizen and resident of Lakeville, Minnesota.

122.    On or about October 4, 2022, George Souders purchased a new 2022 Jeep Grand Cherokee UT 4xe (for purposes of this section, "the Vehicle") from Park Chrysler Jeep in Burnsville, Minnesota for approximately $71,995.

123.     Since his purchase, Plaintiff Souders's Vehicle has been largely unable to operate in electric-only mode due to the FORM defect—as a result, he has not been able to benefit from the "21 miles of guilt-free electric driving before the gas engine kicks on" that the Vehicle was advertised to achieve.

124.     Prior to his purchase, neither Defendant nor any of its agents, dealers, or other representatives informed Plaintiff Souders of the FORM defect. Plaintiff Souders reasonably expected that the Vehicle, including its electric-only range, would function normally and in accordance with Defendant's specifications and representations.

125.     Plaintiff Souders purchased the Vehicle for personal, family, or household use. Plaintiff Souders has always attempted to use the Vehicle in the normal and expected manner.

126.     As a result, Plaintiff Souders has been left with a Vehicle with reduced electric-only range. Plaintiff Souders has suffered an ascertainable loss resulting from Defendant's concealment, fraud, omissions, and refusal to correct the FORM Defect and did not receive the benefit of his bargain when he purchased the Vehicle.

**20.     Plaintiff Joshua Taylor**

127.     Plaintiff Joshua Taylor is a citizen and resident of Imperial, Missouri.

128.     On or about October 17, 2022, Joshua Taylor purchased a new Jeep Grand Cherokee Trailhawk 4xe (for purposes of this section, "the Vehicle") from South County Dodge Chrysler Jeep in St. Louis, Missouri for approximately $69,530.

129.     Since his purchase, Plaintiff Taylor's Vehicle has been largely unable to operate in electric-only mode due to the FORM defect—as a result, he has not been able to benefit from the "21 miles of guilt-free electric driving before the gas engine kicks on" that the Vehicle was advertised to achieve.

130.     Prior to his purchase, neither Defendant nor any of its agents, dealers, or other representatives informed Plaintiff Taylor of the FORM defect. Plaintiff Taylor reasonably expected that the Vehicle, including its electric-only range, would function normally and in accordance with Defendant's specifications and representations.

131.     Plaintiff Taylor purchased the Vehicle for personal, family, or household use. Plaintiff Taylor has always attempted to use the Vehicle in the normal and expected manner.

132.     As a result, Plaintiff Taylor has been left with a Vehicle with reduced electric-only range. Plaintiff Taylor has suffered an ascertainable loss resulting from Defendant's concealment, fraud, omissions, and refusal to correct the FORM Defect and did not receive the benefit of his bargain when he purchased the Vehicle.

**B.     Defendant FCA US LLC**

133.     Defendant FCA US LLC ("FCA") is a Delaware limited liability company. Stellantis N.V. ("Stellantis") is FCA's corporate parent. Stellantis is a multinational automotive manufacturing corporation formed in 2021 on the basis of a 50–50 merger between Fiat Chrysler Automobiles N.V. and Peugeot S.A., an Italian–American automotive manufacturing corporation and a French automotive manufacturing corporation, respectively. Prior to the 2021 merger, Fiat Chrysler Automobiles N.V. was FCA's corporate parent.

134.     FCA is headquartered at 1000 Chrysler Drive, Auburn Hills, Michigan. FCA is a motor vehicle manufacturer and a licensed distributor of new, previously untitled motor vehicles. FCA (like its predecessor, Chrysler) is one of the "Big Three" American automakers (with Ford and General Motors). FCA engages in commerce by distributing and selling new and unused passenger cars and motor vehicles under the Chrysler, Dodge, Jeep, Ram, and Fiat brands.

135.     FCA has designed, manufactured, imported, distributed, offered for sale, sold, and leased two models of vehicle under the plug-in hybrid 4xe line—the Jeep Wrangler 4xe and the Jeep Grand Cherokee 4xe[4] (the "4xe Vehicles")—with the knowledge and intent to market, sell, and lease them in all fifty states. Moreover, FCA designed, manufactured, marketed, distributed, and warranted the 4xe Vehicles throughout the United States. Dealers sell and lease automobiles under the Jeep brand and disseminate vehicle information provided by Defendant to customers.

136.     Defendant developed and disseminated the owners' manuals, warranty booklets, product brochures, advertisements, and other promotional materials related to the 4xe Vehicles, with

---

[4] *See 4xe*, Jeep, https://www.jeep.com/ev/4xe-hybrid-suvs.html (last visited Jan. 20, 2023).

the intent that such documents should be purposefully distributed throughout all fifty states. Defendant is engaged in interstate commerce, selling vehicles through their network in every state of the United States.

## IV.   FACTUAL ALLEGATIONS

### A.   Advertisements for the 4xe Vehicles Emphasized their Electric-Only Capabilities

137.   As demand for low-emission commuting and government support for long-range, low-emission vehicles through subsidies and tax cuts increases, automotive manufacturers rush to design, manufacture, and sell electric and hybrid vehicles. In January 2020, Jeep introduced the all-new 2021 Jeep Wrangler 4xe, which FCA touts as America's best-selling plug-in hybrid vehicle.[5]

138.   Defendant described the Wrangler 4xe as "the most capable, technically advanced and eco-friendly Wrangler ever.[6] The Wrangler 4xe boasted "375 horsepower, an EPA fuel economy of 49 MPGe with the battery charged, and 21 miles of guilt-free electric driving before the gas engine kicks on" and promised "to combine contradictory attributes—power and efficiency—into a single product that would have been unthinkable just 10 years ago."[7] After the success of the Wrangler, the Jeep Grand Cherokee 4xe was introduced in 2022.[8]

139.   From their introduction, marketing for the 4xe line of vehicles has emphasized their

---

[5] Viknesh Vijayenthiran, *Jeep to present plug-in hybrid Wrangler, Compass and Relegade at 2020 CES*, Green Car Reports (Jan. 2, 2020), https://www.greencarreports.com/news/1126564_jeep-to-present-plug-in-hybrid-wrangler-compass-and-renegade-at-2020-ces (last visited Jan. 23, 2023); Kirk Bell, *Jeep to have an electric vehicle in every SUV segment by 2025*, Motor Authority (July 15, 2021), https://www.motorauthority.com/news/1132869_jeep-to-have-an-electric-vehicle-in-every-suv-segment-by-2025 (last visited Jan. 23, 2023); *see also Full Year 2021 Results*, Stellantis (Feb. 23, 2022), https://www.stellantis.com/en/news/press-releases/2022/february/full-year-2021-results (last visited Jan. 23, 2023) ("In North America, the Jeep Wrangler 4xe was the bestselling plug-in hybrid electric vehicle in U.S. retail for 2021.").

[6] *New Jeep Wrangler 4xe Joins Renegade and Compass 4xe Models in Brand's Global Electric Vehicle Lineup*, Stellantis (Sept. 3, 2020), https://media.stellantisnorthamerica.com/newsrelease.do?id=22016&mid=1368 (last visited Jan. 23, 2023).

[7] Eric Tingwall, *Tested: 2021 Jeep Wrangler 4xe Complicates a Simple Machine*, Car and Driver (July 1, 2021), https://www.caranddriver.com/reviews/a36906094/2021-jeep-wrangler-unlimited-rubicon-4xe-by-the-numbers/ (last visited Jan. 23, 2023).

[8] *Introducing the First-Ever Jeep Grand Cherokee 4xe*, Cunningham Chrysler Dodge Jeep Ram, https://www.cunninghamchryslerofedinboro.com/introducing-the-first-ever-jeep-grand-cherokee-4xe (last visited Jan. 23, 2023).

electric-only capabilities: the global president of the Jeep brand even said that "[o]ur Jeep 4xe vehicles will be the most efficient, responsible and capable that the brand has ever created."[9] He continued, "[w]e are committed to make Jeep the greenest SUV brand. The electrification of the Jeep lineup will allow commuters to travel solely on electric power, delivering an efficient and fun on-road experience and offering an ability to enjoy even more Jeep capability off-road in nearly complete silence."[10]

140.    The Jeep 4xe line entered a competitive market for hybrid SUV vehicles. In 2021, US News listed the best hybrid SUV as the 2021 Ford Escape Hybrid, which boasted 102 miles of electric range on a full charge and cost approximately $20,000 less than the 2021 Wrangler 4xe.[11] Other direct competitors included the Toyota RAV4 Prime, the Ford Escape PHEV, the Lincoln Corsair Reserve Grand Touring PHEV, and the BMW X5 xDrive45e.[12]

141.    The 4xe line distinguished itself from other hybrid competitors by emphasizing the control that drivers had over the Vehicle: "E-Selec driving modes put you in control. Electric Mode uses only battery power for low-emissions zones in cities or quiet off-roading with maximum torque, while eSave Mode reserves battery power for later. Hybrid Mode gives you the best of both worlds."[13] Of Electric Mode, Jeep's website states that "[w]hen the battery has more than a 1% charge, it can run in Electric Mode."[14]

142.    FCA's corporate parent boasted that the Wrangler 4xe's "plug-in hybrid powertrain is capable of up to 21 miles of nearly silent, zero-emission, electric-only propulsion, making it commuter friendly as an all-electric daily driver without range anxiety and the most capable and eco-friendly Jeep

---

[9] *New Jeep Wrangler 4xe Joins Renegade and Compass 4xe Models in Brand's Global Electric Vehicle Lineup*, Stellantis (Sept. 3, 2020), https://media.stellantisnorthamerica.com/newsrelease.do?id=22016&mid=1368 (last visited Jan. 23, 2023) (emphasis added).

[10] *Id.*

[11] Jasmine Sayles, *2021 Ford Escape Hybrid Review*, U.S. News: Cars (Dec. 21, 2021), https://cars.usnews.com/cars-trucks/ford/escape-hybrid/2021 (last visited Apr. 19, 2023); *see also Jeep Hybrids*, U.S. News: Cars, https://cars.usnews.com/cars-trucks/browse?make=Jeep&fuel=Hybrid&sort=alpha&page=1 (last visited Apr. 19, 2023).

[12] Jim Gorzelany, *The 10 Most Cost-Effective Plug-In Hybrids For 2021*, Forbes (Apr. 8, 2021), https://www.forbes.com/sites/jimgorzelany/2021/04/08/the-10-most-cost-effective-plug-in-hybrids-for-2021/?sh=2b0138261ae6 (last visited Apr. 19, 2023).

[13] *4xe*, Jeep, https://www.jeep.com/2022/wrangler/wrangler-4xe.html (last visited Apr. 19, 2023).

[14] *Id.*

vehicle off-road--combined with the open-air freedom that only Jeep Wrangler offers."[15] Jeep went so far as to tell buyers that "[w]ith the ability to charge at home and work, you can enjoy the benefits of fully electric daily commutes."[16]

143.     As the 4xe line of vehicles grew with the introduction of the Grand Cherokee 4xe, Defendant continued to make the electric-only driving mode a key selling point for the vehicles. The landing page for the 4xe Vehicles prominently displays "freedom electrified" to emphasize the "incredible capability, performance, and efficiency" of the 4xe Vehicles[17]:



144.     The website proceeds to emphasize that the Wrangler 4xe can run on electric-only mode for up to 21 miles on a full charge ***whenever the battery has more than a 1% charge***, and that the Grand Cherokee 4xe can achieve up to 25 miles of "pure EV driving"[18]:

---

[15] *New Jeep Wrangler 4xe Joins Renegade and Compass 4xe Models in Brand's Global Electric Vehicle Lineup*, *supra* note 9.
[16] *Jeep 4xe*, Jeep, https://www.jeep.com/ev/4xe-hybrid-suvs.html (last visited Apr. 19, 2023).
[17] *Id.*
[18] *Id.* (emphasis added).

AMENDED CLASS ACTION
COMPLAINT



145.    Consumers who choose the 4xe Vehicles over their traditional gasoline internal combustion counterparts pay to do so: **the Wrangler 4xe costs almost $24,000 more than the base gas Wrangler**.[19]

146.    The advertisements for the 4xe Vehicles go so far as to emphasize their durability in winter conditions, with ads showing the Vehicles on snowy roads or carrying ski and snowboard equipment[20]:



---

[19] Paulo Acoba, *Why doesn't EV mode work in the Jeep Wrangler 4xe when it gets cold outside?*, Alt Car News (Feb. 6, 2022), https://tiremeetsroad.com/2022/02/06/why-doesnt-ev-mode-work-in-the-jeep-wrangler-4xe-when-it-gets-cold-outside/ (last visited Jan. 20, 2023).

[20] Jeep, *Jeep 4xe Day: Freedom Is Electric*, YouTube (Sept. 8, 2022), https://www.youtube.com/watch?v=bQNxyMYXHmY (last visited Jan. 23, 2023); *Winter driving with the Jeep 4xe models*, Stellantis Media (Feb. 2, 2021), https://www.media.stellantis.com/me-en/jeep/video/winter-driving-with-the-jeep-4xe-models-videoclip (last visited Jan. 23, 2023).



**B.    The FORM Defect Significantly Impacts Drivers' Ability to Utilize the All-Electric Mode of the 4xe Vehicles**

147.    Despite Defendant's descriptions of the 4xe Vehicles as "engineered for any environment,"[21] lower temperatures have revealed a defect in the design of the 4xe Vehicles.

148.    "Fuel And Oil Refresh Mode" ("FORM") is designed to "prevent engine and/or fuel system damage due to stale fuel, as well as maintain[] internal engine lubrication."[22] FORM cycles are not unique to the 4xe Vehicles:

> FORM cycles are used in hybrid models to keep gaskets and seals warm and expanded, preventing gasoline from mixing with the oil. It does this by firing the internal combustion engine for short bursts while it reaches operating temperatures. It's normal for some gas and oil to mix in internal combustion engines, but the heat from regular operation evaporates the negligible amount of gas. That's not always the case in plug-in

---

[21] *Jeep 4xe*, Jeep, https://www.jeep.com/ev/4xe-hybrid-suvs.html (last visited Jan. 23, 2023).
[22] Jeep, 2023 Wrangler Hybrid Supplement at 35, https://vehicleinfo.mopar.com/assets/publications/en-us/Jeep/2023/Wrangler_4xe/P139881_23_JL_H_SU_EN_USC_DIGITAL.pdf (last visited Jan. 23, 2023).

hybrids, which may run for extended periods of time without engaging the combustion engine.[23]

149.   However, what is unique to the 4xe Vehicles is that the FORM cycle is initiated without any analysis of fuel contamination in the engine's oil, and drivers have no way to control the FORM cycle.[24]

150.   While the FORM cycle operates, the vehicle will only run using the gas engine—"electric only operation is inhibited" and the electric driving mode is unavailable to drivers.[25]

151.   The amount of time that the vehicle remains in the FORM cycle depends on why the cycle is initiated, and while the FORM cycle triggered by stale fuel can be stopped by refueling the vehicle, the FORM cycle triggered to maintain engine lubrication cannot be stopped by any action by the driver[26]:

> The vehicle will automatically exit the Fuel and Oil Refresh Mode when conditions have been satisfied. If the vehicle enters Fuel and Oil Refresh Mode, due to fuel which has been in the fuel tank for a long period of time (becoming stale fuel), the engine will run whenever the vehicle is operational (no electric only operation) until the low fuel level warning is activated. It is also possible to exit the Fuel and Oil Refresh Mode sooner by adding a minimum of four gallons of new fuel to the vehicle's fuel tank.

> If the vehicle enters Fuel and Oil Refresh Mode to maintain engine lubrication properties, the engine may run for a period of up to 20 minutes when fully warm whenever the vehicle is operational (no electric only operation).

152.   However, drivers quickly reported that FORM cycles would take significantly longer than 20 minutes, particularly in cold weather conditions—leaving drivers unable to use electric-only mode on their 4xe Vehicles at all, with the FORM cycle manifesting far more often and for longer than

---

[23] Caleb Jacobs, *Jeep 4xe Owners Are Mad Over Electric Mode Not Working in the Cold*, TheDrive (Jan. 18, 2023), https://www.thedrive.com/news/jeep-wrangler-4xe-owners-are-mad-over-ev-mode-that-wont-work-in-the-cold (last visited Jan. 23, 2023).

[24] *FORM in Hybrid only...*, 4XE Forums, https://www.4xeforums.com/threads/form-in-hybrid-only.2426/page-2 (last visited Jan. 23, 2023).

[25] Jeep, 2023 Wrangler Hybrid Supplement at 35, https://vehicleinfo.mopar.com/assets/publications/en-us/Jeep/2023/Wrangler_4xe/P139881_23_JL_H_SU_EN_USC_DIGITAL.pdf (last visited Jan. 23, 2023).

[26] Jeep, 2021 Wrangler 4xe Hybrid Supplement at 37, https://msmownerassets.z13.web.core.windows.net/assets/publications/en-us/Jeep/2021/Wrangler_4xe/P125757_21_JL_H_SU_EN_USC_DIGITAL.pdf (last visited Jan. 24, 2023) (emphasis added).

AMENDED CLASS ACTION
COMPLAINT

reasonable (the "FORM Defect").[27]

153.    FCA had or should have had knowledge of the FORM defect through pre-release testing of the Vehicles, its development of the FORM cycle in the Vehicles, and the development and sale of 4xe vehicles in Europe prior to their availability in the United States. Despite this knowledge, FCA failed to modify the FORM system in order to manage the amount of time that the FORM cycle operated or to disclose the effects of the FORM system to drivers.

154.    Once drivers began to recognize the loss of electric driving capabilities resulting from the FORM Defect, FCA acknowledged the issue, but instead of resolving the problem or disclosing the FORM Defect it simply revised the language in the owners' manual to reflect that FORM cycles would last longer:

> If the vehicle enters Fuel and Oil Refresh mode to maintain engine lubrication properties, the engine may run for a period of up to 2.5 hours when fully warm whenever the vehicle is operational (no electric only operation). If the vehicle is shut down before conditions to exit the refresh mode have been satisfied, the engine may run for additional time on subsequent trips. Oil refresh may take significantly longer in freezing temperatures.[28]

155.    In the new hybrid supplement to the vehicle manuals, FCA also notes that "[f]requent short trips at low ambient temperature conditions where the engine does not reach normal operating temperatures are more likely to trigger the lubrication based mode."[29]

156.    Defendant also issued a series of Technical Service Bulletins ("TSBs") related to the FORM Defect. One indicates that FORM cycles may be extended due to an issue with the PCM software, and provides for reprogramming that module, but the other indicates that the FORM cycles

---

[27] *See, e.g.*, Paulo Acoba, *Why doesn't EV mode work in the Jeep Wrangler 4xe when it gets cold outside?*, Alt Car News (Feb. 6, 2022), https://tiremeetsroad.com/2022/02/06/why-doesnt-ev-mode-work-in-the-jeep-wrangler-4xe-when-it-gets-cold-outside/ (last visited Jan. 20, 2023); *Fuel and Oil Refresh Mode*, 4xe Forums, https://www.4xeforums.com/threads/fuel-and-oil-refresh-mode.210/page-25#post-28928 (last visited Jan. 24, 2023).

[28] Jeep, 2023 Wrangler Hybrid Supplement at 36, https://vehicleinfo.mopar.com/assets/publications/en-us/Jeep/2023/Wrangler_4xe/P139881_23_JL_H_SU_EN_USC_DIGITAL.pdf (last visited Jan. 23, 2023); *see also id.* (JeepCares Customer Care Team comment #488).

[29] Jeep, 2023 Wrangler Hybrid Supplement at 36, https://vehicleinfo.mopar.com/assets/publications/en-us/Jeep/2023/Wrangler_4xe/P139881_23_JL_H_SU_EN_USC_DIGITAL.pdf (last visited Jan. 23, 2023).

are operating as designed[30]:



**Case Number:**   S2208000020

**Release Date:**   January 2022

**Symptom/Vehicle Issue:**   EV Mode Unavailable, Cluster Message Displayed Vehicle In Fuel And Oil Refresh Mode

**Customer Complaint/Technician Observation:** Owner complains the vehicle will not go into EV (Electric Vehicle) mode. Technician observed the message for refresh mode and the vehicle is not entering EV Mode.

**Discussion:**
FUEL AND OIL REFRESH MODE Since it is possible to operate this vehicle for extended periods of time without running the gas engine, the fuel within the vehicle's fuel tank can become stale or the engine oil's lubricating properties can be reduced without the normal engine operating temperatures.

To prevent engine and/or fuel system damage due to stale fuel, or lubrication, this vehicle is equipped with a Fuel and Oil Refresh Mode. The vehicle will automatically enter into the Fuel and Oil Refresh Mode to minimize these conditions. When operating in this mode, the gas engine will run to provide vehicle propulsion (electric only operation is inhibited). A message will be displayed in the instrument cluster whenever Fuel and Oil Refresh Mode is active.

The vehicle will automatically exit the Fuel and Oil Refresh Mode when conditions have been satisfied. If the vehicle enters Fuel and Oil Refresh Mode, due to fuel stale, the engine will run whenever the vehicle is operational (no electric only operation) until the low fuel level warning is activated. It is also possible to exit the Fuel and Oil Refresh Mode sooner by adding a minimum of four gallons of new fuel to the vehicle's fuel tank.

**NOTE:** If the vehicle enters Fuel and Oil Refresh Mode to maintain engine lubrication, adding fuel *will not exit* the mode sooner. If the vehicle enters Fuel and Oil Refresh Mode for lubrication properties, the engine may require accumulated engine run time from 20 minutes to 2 hours at max engine operating temperatures (best at speeds above 50 mph) whenever the vehicle is operational (no electric only operation). If the vehicle is shut down before conditions to exit the refresh mode have been satisfied, the engine may run for additional time on subsequent trips.

**NOTE:** Frequent short trips at low ambient temperature conditions are more likely to trigger the lubrication based mode. If the engine run time is not met in-between an oil change interval, changing the engine oil and resetting the service reminder is the recommended option.

**DO NOT RESET THE OIL INDICATOR WITHOUT CHANGING THE OIL FOR THIS CONDITION.**

This document does not authorize warranty repairs. This communication documents a record of past experiences. STAR Online does not provide any conclusions about what is wrong with the vehicle. Rather, it captures all previous cases known that appear to be similar or related to the vehicle symptom / condition. You are the expert, and you are responsible for deciding on the appropriate course of action.

---

[30] *FORM*, Wrangler Forums (Jan. 9, 2023), https://www.jlwranglerforums.com/forum/threads/form.106822/ (last visited Jan. 24, 2023); *Electric Mode Unavailable*, 4xe Forums (Feb. 4, 2022), https://www.4xeforums.com/threads/electric-mode-unavailable.1494/page-14 (last visited Jan. 24, 2023).

| STELLANTIS | Technical Service Bulletin (TSB) |
|---|---|
| PARTS & SERVICES | Flash: Powertrain Control Module (PCM) Updates |

| REFERENCE: | TSB: 18-162-22<br>GROUP 18 - Vehicle Performance | Date: | December 23, 2022 | REVISION: | – |
|---|---|---|---|---|---|

| VEHICLES AFFECTED: | **2022 (JL) Jeep Wrangler**<br>**This bulletin applies to vehicles equipped with a 2.0L I4 DOHC DI Turbo PHEV Engine (Sales Code ECX).** | MARKET APPLICABILITY: |
|---|---|---|

MARKET APPLICABILITY:
- ☒NA    ☒MEA
- ☒SA    ☒IAP
- ☒EE    ☒CH

| CUSTOMER SYMPTOM: | Customers may experience one or more of the following:<br>• Vehicle may not be able to enter electric mode driving while Fuel Oil Refresh Mode (FORM) is active.<br>• FORM staying on too long. |
|---|---|
| CAUSE: | PCM software |

**REPAIR SUMMARY:**
This bulletin involves reprogramming the PCM with the latest available software.

**NOTE: Additional module flashes are required for this update to be effective, the following modules are all to be updated along with this PCM update:**
- **Hybrid Control Processor (HCP), Auxiliary Hybrid Control Processor (AHCP) also known as the Power Inverter Module (PIM).**
- **Transmission Control Module (TCM).**

**CLAIMS DATA:**

| Labor Operation No: | Labor Description | Skill Category | Labor Time |
|---|---|---|---|
| 18-19-06-FX | Module, Powertrain Control (PCM) - Reprogram (0 - Introduction) | 1 - Engine Repair and Performance | 0.3 Hrs. |
| Failure code | CC | Customer Concern | |

**RELATED TIME ALLOWANCE:**

157.     On March 14, 2023, Defendant FCA issued a "Customer Satisfaction Notice" for the 2022–23 4xe Vehicles, which indicated that "[t]he full electric vehicle mode on about 27,500 of the [Jeep Wrangler 4xe Vehicles] may not be available due to an incorrectly enabled engine maintenance mode designed to protect the engine from failure due to diluted oil."[31]

---

[31] *See, e.g.*, FCA US LLC, Customer Satisfaction Notification, https://www.chrysler.com/universal/webselfservice/pdf/23A.pdf (last visited Apr. 7, 2023); Chaosalpha, *Customer Satisfaction Notice 23A*, JL Wrangler Forums (Mar. 14, 2023),

158.     Despite these TSBs, consumers continue to experience an inability to drive in the electric-only mode due to the FORM Defect.

159.     Defendant represented that the electric-only mode in the 4xe Vehicles would be available to owners and lessees without notifying them that during the winter months, they might find themselves wholly unable to utilize the electric-only mode and would be forced to operate their vehicles using only the gas engine. Defendant knew about the FORM Defect, even going so far as revising the owners' manual to describe it, and yet continued to sell the Vehicles without disclosing to consumers that the FORM Defect would render the electric battery wholly useless in cold temperatures. Defendant was also aware of the effects of the FORM Defect because of previous experiences with similar issues with the Pacifica hybrid vehicles.[32] Had Defendant disclosed the FORM Defect to Plaintiffs and other owners and lessees, reasonable consumers would have been aware of it and would have paid less for the 4xe Vehicles, if they chose to buy them at all. Defendant's knowledge of the FORM Defect, and their subsequent inaction, has resulted in harm to Plaintiffs and other owners and lessees.

## V.     CLASS ACTION ALLEGATIONS

160.     Plaintiffs bring this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of a proposed nationwide class (the "Class"), defined as:

Any person in the United States who purchased or leased, other than for resale, a Class Vehicle.

161.     Class Vehicles are defined as follows:

The 2021, 2022, and 2023 Jeep Wrangler 4xe and 2022 and 2023 Jeep Grand Cherokee 4xe vehicles.

162.     In addition, State Classes are defined as follows:

**California State Class**: All persons in the state of California who bought or leased, other than for resale, a Class Vehicle.

**Colorado State Class**: All persons in the state of Colorado who bought or leased, other

---

https://www.jlwranglerforums.com/forum/threads/customer-satisfaction-notice-23a.110269/ (last visited Apr. 7, 2023).

[32] *Oil Refresh Mode – Analysis and Solutions*, Pacifica Forums (Apr. 26, 2020), https://www.pacificaforums.com/threads/oil-refresh-mode-analysis-and-solutions.30330/page-9 (last visited Jan. 30, 2023).

than for resale, a Class Vehicle.

**Illinois State Class**: All persons in the state of Illinois who bought or leased, other than for resale, a Class Vehicle.

**Massachusetts State Class**: All persons in the state of Massachusetts who bought or leased, other than for resale, a Class Vehicle.

**Michigan State Class**: All persons in the state of Michigan who bought or leased, other than for resale, a Class Vehicle.

**Missouri State Class**: All persons in the state of Missouri who bought or leased, other than for resale, a Class Vehicle.

**Nebraska State Class**: All persons in the state of Nebraska who bought or leased, other than for resale, a Class Vehicle.

**New Hampshire State Class**: All persons in the state of New Hampshire who bought or leased, other than for resale, a Class Vehicle.

**New Jersey State Class**: All persons in the state of New Jersey who bought or leased, other than for resale, a Class Vehicle.

**New York State Class**: All persons in the state of New York who bought or leased, other than for resale, a Class Vehicle.

**Oklahoma State Class**: All persons in the state of Oklahoma who bought or leased, other than for resale, a Class Vehicle.

**Oregon State Class**: All persons in the state of Oregon who bought or leased, other than for resale, a Class Vehicle.

**Pennsylvania State Class**: All persons in the state of Pennsylvania who bought or leased, other than for resale, a Class Vehicle.

**Vermont State Class**: All persons in the state of Vermont who bought or leased, other than for resale, a Class Vehicle.

**Wisconsin State Class**: All persons in the state of Wisconsin who bought or leased, other than for resale, a Class Vehicle.

163.    The Class and these State Classes satisfy the prerequisites of Federal Rule of Civil Procedure 23(a) and the requirements of Rule 23(b)(3).

164.    **Numerosity:** Plaintiffs do not know the exact size of the Class or identity of the Class members, since such information is in the exclusive control of Defendant. Nevertheless, the Class encompasses tens of thousands of individuals dispersed throughout the United States. The number of Class members is so numerous that joinder of all Class members is impracticable. The names, addresses, and phone numbers of Class members are identifiable through documents maintained by

Defendant.

165.     **Commonality and Predominance:** This action involves common questions of law and fact which predominate over any question solely affecting individual Class members. These common questions include:

     i.   whether Defendant engaged in the conduct alleged herein;

     ii.   whether Defendant had knowledge of the FORM Defect in the Class Vehicles when it placed Class Vehicles into the stream of commerce in the United States;

     iii.   whether Defendant should have had knowledge of the FORM Defect in the Class Vehicles when it placed Class Vehicles into the stream of commerce in the United States;

     iv.   when Defendant became aware of the FORM Defect in the Class Vehicles;

     v.   whether Defendant failed to disclose the existence and cause of this defect in the Class Vehicles;

     vi.   whether Defendant knowingly concealed the FORM Defect in the Class Vehicles;

     vii.   whether the Defendant had a duty to disclose the FORM Defect in the Class Vehicles;

     viii.   whether Defendant's conduct as alleged herein violates consumer protection laws;

     ix.   whether Defendant's conduct as alleged herein violates other laws asserted herein;

     x.   whether Plaintiff and Class members overpaid for their Class Vehicles as a result of the defect;

     xi.   and whether Plaintiffs and Class members are entitled to damages and equitable relief.

166.     **Typicality:** Plaintiffs' claims are typical of the other Class members' claims because all Class members were comparably injured through Defendant's substantially uniform misconduct as described above. The Plaintiffs representing the Class are advancing the same claims and legal theories on behalf of themselves and all other members of the Class that they represent, and there are no defenses that are unique to Plaintiffs. The claims of Plaintiffs and Class members arise from the same

operative facts and are based on the same legal theories.

167.   **Adequacy:** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Class they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. The Class's interest will be fairly and adequately protected by Plaintiffs and their counsel.

168.   **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be virtually impossible for the Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not; individualized litigation creates a potential for inconsistent or contradictory judgments, increases the delay and expense to the parties, and increases the expense and burden to the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by this Court.

**ANY APPLICABLE STATUTES OF LIMITATION ARE TOLLED**

**A.   Discovery Rule**

169.   Plaintiffs and Class members did not discover, and could not have discovered through the exercise of reasonable diligence, that the Class Vehicles had one or more design and/or manufacturing defects that caused the FORM system to block access to electric-only mode more often and for longer than was reasonable.

170.   Plaintiffs and Class members had no realistic ability to discover the extent of the design and/or manufacturing defects until the FORM Defect began to manifest in their vehicles, and would have had no reason to individually believe that the frequency and duration of the FORM cycle was the result of a widespread design and/or manufacturing defect. Any statutes of limitation otherwise

1   applicable to any claims asserted herein thus have been tolled by the discovery rule.

2   **B.   Equitable Estoppel**

3   171.   Even if Plaintiffs' claims accrued before January 31, 2023, Defendant is equitably

4   estopped from asserting the statutes of limitations. Defendant misrepresented that the Class Vehicles

5   were free from defects, including by representing that the vehicles were "engineered for any

6   environment" and that drivers could utilize the electric-only driving mode at will. Defendant knew that

7   the FORM Defect rendered the electric-only driving mode inaccessible in cold weather conditions.

8   172.   Plaintiffs and Class members were unaware of the fact or nature of Defendant's

9   misrepresentations. Plaintiffs and Class members relied upon Defendant's false advertisements

10   regarding the electric-only driving mode. Plaintiffs and Class members will be prejudiced if Defendant

11   is not estopped.

12   **VI.   CLAIMS FOR RELIEF**

13   **A.   Claims Brought on Behalf of the Nationwide Class**

14   **COUNT ONE — COMMON LAW FRAUD – FRAUD BY OMISSION**

15   173.   Plaintiffs and the Class incorporate by reference each preceding and succeeding

16   paragraph as though fully set forth at length herein.

17   174.   Plaintiffs assert this claim on behalf of themselves and the Nationwide Class or, in the

18   alternative, on behalf of the State Classes, against Defendant FCA.

19   175.   The Class Vehicles that Plaintiffs and Class members purchased or leased were

20   defective because the electric-only driving mode is unavailable to drivers for long periods and in cold

21   temperatures.

22   176.   Defendant failed to disclose the FORM Defect and acted with reckless disregard for the

23   truth when it failed to disclose that the FORM system would render the electric-only driving mode

24   unavailable to drivers in cold conditions. Further, even after Defendant became aware of the FORM

25   Defect, it continued representing to consumers that the electric-only driving mode would be available

26   to them, with the intent that consumers rely on such representations.

27   177.   Defendant had a duty to disclose this material information to Plaintiffs and Class

28

members because Defendant were in a superior position to know about the existence, nature, cause, and results of the Defect; Plaintiffs and Class members could not reasonably have been expected to learn or discover the Defect; and Defendant knew that Plaintiffs and Class members could not reasonably have been expected to learn about or discover the Defect.

178.    Plaintiffs and Class members did not know about the FORM Defect and could not have discovered it through reasonably diligent investigation.

179.    But for Defendant's fraudulent omissions of material information, Plaintiffs and Class members would not have purchased or leased the Class Vehicles, or would have paid less for them. Plaintiffs and Class members have sustained damage because they purchased or leased Vehicles that were not as represented. Accordingly, Defendant is liable to Plaintiffs and Class members for damages in an amount to be proven at trial for their lost benefit of the bargain and overpayment at the time of purchase or lease, and/or for the diminished value of the Class Vehicles.

180.    Defendant's acts were done wantonly, deliberately, with intent to defraud, in reckless disregard of the rights of Plaintiffs and Class members, and to enrich themselves. Defendant's misconduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

## COUNT TWO — VIOLATIONS OF THE MAGNUSON–MOSS WARRANTY ACT
### (15 U.S.C. § 2301, *ET SEQ.*)

181.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

182.    Plaintiffs assert this claim on behalf of themselves and the Nationwide Class or, in the alternative, on behalf of the State Classes, against Defendant FCA.

183.    Plaintiffs and the Class members are "consumers" within the meaning of the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301(3).

184.    FCA is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5).

185.    The Class Vehicles, including Plaintiffs' Vehicles, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

186.    FCA's 3 year/36,000 mile "Basic Limited Warranty Coverage"[33] is a "written warranty" within the meaning of 15 U.S.C. § 2301(6).

187.    FCA's 5 year/60,000 mile "Powertrain Limited Warranty"[34] is a "written warranty" within the meaning of 15 U.S.C. § 2301(6).

188.    FCA breached its express warranties by:

> A.    Selling and leasing Class Vehicles with a FORM system that was defective in design, materials, and/or workmanship, requiring repair or replacement within the warranty period; and

> B.    Refusing and/or failing to honor the express warranties by repairing or replacing the FORM system without leaving the Class Vehicles with the same capability as advertised to the purchasers.

189.    Plaintiffs and the other Class members relied on the existence and length of the express warranties in deciding to purchase or lease the Class Vehicles.

190.    FCA's breach of its express warranties has deprived Plaintiffs and the other Class members of the benefit of their bargain.

191.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

192.    FCA has been given reasonable opportunity to cure its breach of the written warranties. Alternatively, Plaintiffs and the other Class members are not required to do so because affording FCA a reasonable opportunity to cure its breach of written warranties was, and is, futile.

193.    As a direct and proximate cause of FCA's breach of the written warranties, Plaintiffs and the other Class members sustained damages and other losses in an amount to be determined at trial. FCA's conduct damaged Plaintiffs and the other Class members, who are entitled to recover

---

[33] *See* Jeep 2021 Wrangler Warranty Information – Hybrid, at 1, https://vehicleinfo.mopar.com/assets/publications/en-us/Jeep/2021/Wrangler_4xe/P140475_21_JL_H_GW_EN_US_DIGITAL.pdf (last visited Jan. 24, 2023).

[34] *Id.*

AMENDED CLASS ACTION
COMPLAINT

actual damages, consequential damages, specific performance, diminution in value, costs, including statutory attorney fees and/or other relief as deemed appropriate.

## COUNT THREE — UNJUST ENRICHMENT

194.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

195.    Plaintiffs bring this claim on behalf of themselves and on behalf of the Nationwide Class or, alternatively, on behalf of the State Classes, against Defendant FCA.

196.    Plaintiffs and Class members paid Defendant the value of non-defective, fully operational Class Vehicles with the ability to operate only using the electric engine for up to 21 miles. Plaintiffs and Class members paid a premium to be able to use the electric engine, as traditional, non-hybrid models of each of the Class Vehicles are available and significantly lower in cost. In exchange, Defendant provided Plaintiffs and Class members with defective Vehicles that cannot use the electric-only operation mode for significant periods of time while the FORM cycle is engaged.

197.    Plaintiffs provided Defendant with the value of Vehicles not beset by the FORM Defect.

198.    As such, Plaintiffs conferred value upon Defendant which would be unjust for Defendant to retain.

199.    As a direct and proximate result of Defendant's unjust enrichment, Plaintiffs and Class members have suffered and continue to suffer various injuries. As such, they are entitled to damages, including but not limited to restitution of all amounts by which Defendant was enriched through their misconduct.

**B.      Claims Brought on Behalf of the California Class**

**COUNT FOUR —   VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT ("CLRA")
(CAL. CIV. CODE § 1750, *ET SEQ.*)**

200.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

201.    Plaintiff Singh (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the California State Class against Defendant FCA.

202.   Defendant is a "person" as that term is defined in California Civil Code § 1761(c).

203.   Plaintiff and the California State Class members are "consumers" as that term is defined in California Civil Code §1761(d).

204.   Defendant engaged in unfair and deceptive acts in violation of the CLRA by the practices described above, and by knowingly and failing to disclose from California Plaintiffs and Class members that the Class Vehicles suffer from the FORM Defect (and the costs, risks, and diminished value of the vehicles as a result of this problem).

205.   Defendant's acts and practices violated the CLRA by: (1) Representing that goods or services have sponsorships, characteristics, uses, benefits, or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have; (2) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; (3) Advertising goods and services with the intent not to sell them as advertised; and (4) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

206.   Defendant's unfair or deceptive acts or practices occurred repeatedly in its trade or business and were capable of deceiving a substantial portion of the purchasing public.

207.   Defendant knew that the FORM Defect rendered the electric-only driving mode unusable, making the Class Vehicles not suitable for their intended use as hybrid vehicles.

208.   Defendant had the duty to Plaintiff and the California State Class members to disclose the FORM Defect and the defective nature of the Class Vehicles because:

A.   Defendant was in a superior position to know the true state of the facts about the FORM Defect and their associated costs;

B.   Plaintiff and the California State Class members could not reasonably have been expected to learn or discover that the Class Vehicles had defects until those defects became manifest; and

C.   Defendant knew that Plaintiff and the California State Class members could not reasonably have been expected to learn about or discover the FORM Defect

and the effect it would have on the Class Vehicles' ability to be used in electric-only mode.

209.    In failing to disclose the FORM Defect, Defendant has knowingly failed to disclose material facts and breached its duty to disclose.

210.    The facts Defendant did not disclose to Plaintiff and the California State Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the Class Vehicles or pay a lesser price. Plaintiff and the California State Class members did, in fact, rely on Defendant's representations and disclosures regarding the Vehicles' ability to be driven in electric-only mode. Had Defendant disclosed the FORM Defect, Plaintiff and the California State Class members would not have purchased the Class Vehicles or would have paid less for them.

211.    Plaintiff provided FCA with notice of its CLRA violations on January 31, 2023, and seeks injunctive relief and monetary damages.

212.    Defendant's fraudulent and deceptive business practices proximately caused injuries to Plaintiff and the members of the California State Class.

213.    Pursuant to Cal. Civ. Code § 1780, Plaintiff seeks injunctive and declaratory relief, damages, and reasonable attorneys' fees and costs against Defendant.

**COUNT FIVE — VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200)**

214.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

215.    Plaintiff Singh (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the California State Class against Defendant FCA.

216.    The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

217.    Defendant has engaged in unfair competition and unfair, unlawful, or fraudulent business practices by the conduct, statements, and omissions described above, and by failing to

38
AMENDED CLASS ACTION
COMPLAINT

disclose to Plaintiffs and other California State Class members that the Class Vehicles contain the FORM Defect (and thus suffer from the loss of the ability to be driven in electric-only mode, and have diminished value resulting from the defect). Defendant should have disclosed this information because it was in a superior position to know the true facts related to the defect, and Plaintiff and the California State Class members could not have been reasonably expected to learn or discover these true facts.

218.   By its acts and practices, Defendant has deceived Plaintiff and the California State Class and is likely to have deceived the public. In failing to disclose the FORM Defect and suppressing other material facts, Defendant breached its duty to disclose these facts, violated the UCL, and caused injuries to Plaintiff and the California State Class members. Defendant's omissions pertained to information material to Plaintiff and other California State Class members, as it would have been to all reasonable consumers.

219.   The injuries Plaintiff and the California State Class members suffered greatly outweigh any potential countervailing benefit to consumers or to competition, and they are not injuries that Plaintiff and the California State Class members could or should have reasonably avoided.

220.   Defendant's acts and practices are unlawful because they violate California Civil Code §§ 1668, 1709, 1710, and 1750 et seq., and California Commercial Code § 2313.

221.   Plaintiff seeks to enjoin Defendant from further unlawful, unfair, and/or fraudulent acts or practices, to obtain restitutionary disgorgement of all monies and revenues Defendant has generated as a result of such practices, and all other relief allowed under California Business & Professions Code § 17200.

**COUNT SIX — VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE § 17500, *ET SEQ.*)**

222.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

223.   Plaintiff Singh (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the California State Class against Defendant FCA.

224.   California Business & Professions Code § 17500 states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce

the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

225.    Defendant caused to be made or disseminated through California and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care FCA should have known to be untrue and misleading to consumers, including Plaintiff and other California State Class members.

226.    Defendant has violated Section 17500 because its misrepresentations and omissions regarding the reliability, functionality, and energy efficiencies of the Class Vehicles were material and likely to deceive a reasonable consumer.

227.    Plaintiff and the other California State Class members have suffered injuries in fact, including the loss of money or property, resulting from Defendant's unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Class Vehicles, Plaintiff and the other California State Class members relied on Defendant's misrepresentations and/or omissions with respect to the Class Vehicles' electric-only range. These representations were untrue because Defendant in fact distributed the Class Vehicles with the FORM Defect. Had Plaintiff and the other California State Class members known this, they would not have purchased or leased the Class Vehicles or would not have paid as much for them. Accordingly, Plaintiff and the California State Class members did not receive the benefit of their bargain.

228.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the state of California and nationwide.

229.    Plaintiff, individually and on behalf of the other California State Class members, request that the Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing their unfair, unlawful, and/or deceptive practices, and restore to Plaintiff and the other

California State Class members any money Defendant acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

## COUNT SEVEN — BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (CAL. COM. CODE §§ 2314 AND 10212)

230. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

231. Plaintiff Singh (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the California State Class against Defendant FCA.

232. FCA is and was at all relevant times a "merchant" with respect to motor vehicles under California Commercial Code §§ 2104(1) and 10103(c), and a "seller" of motor vehicles under § 2103(1)(d).

233. With respect to leases, FCA is and was at all relevant times relevant a "lessor" of motor vehicles under Cal. Com. Code § 10103(a)(16).

234. The Class Vehicles are and were at all relevant times "goods" within the meaning of California Commercial Code §§ 2105(1) and 10103(a)(8).

235. FCA was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. FCA knew or had reason to know of the specific use for which the Class Vehicles were purchased.

236. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to California Commercial Code §§ 2314 and 10212.

237. FCA provided Plaintiff and the members of the California State Class with an implied warranty that the Class Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. FCA impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles FCA manufactured, supplied, distributed, and/or sold were reliable for providing transportation, and were hybrid vehicles capable of being driven in electric-only mode; and (ii) a warranty that the Class Vehicles would be fit for their intended use while being operated.

238.     However, the Class Vehicles at the time of sale and thereafter were and are not vehicles are not fit for their ordinary purpose of providing reasonably reliable transportation at the time of sale or thereafter because the FORM Defect can manifest and result in loss of the Vehicles' ability to drive in electric-only mode, forcing owners and lessees to drive using the gas engine.

239.     Therefore, the Class Vehicles are not fit for their particular purpose of providing reliable transportation as a hybrid vehicle.

240.     Plaintiff notified FCA of its breach within a reasonable time, and/or were not required to do so because affording FCA a reasonable opportunity to cure its breaches would have been futile. In any event, FCA knows about the defect, as evidenced by its revision to the 2022 owners' manual, which was revised to acknowledge that the FORM cycle can last for up to hours.[35] Moreover, FCA was provided notice of these issues within a reasonable amount of time by the numerous complaints it received from various sources, including through online sources and directly from consumers.

241.     Plaintiff and the California State Class members have had sufficient dealings with FCA or its agents to establish privity of contract. Privity is not required in this case, however, because Plaintiff and the California State Class members are intended third-party beneficiaries of contracts between FCA and its authorized dealers and are intended beneficiaries of FCA's implied warranties. The dealers were not intended to be the ultimate consumers of Class Vehicles, and the warranties were designed for and intended to benefit the ultimate consumers only.

242.     As a direct and proximate result of the breach of said implied warranty, Plaintiff and the California State Class sustained the damages herein set forth.

243.     Plaintiff and the California State Class members are, therefore, entitled to damages in an amount to be proven at the time of trial.

**COUNT EIGHT —  VIOLATIONS OF THE SONG-BEVERLY ACT – BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**

**(CAL. CIV. CODE §§ 1792, 1791.1, ET SEQ.)**

244.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

---

[35] *See supra* ¶ 58.

245.    Plaintiff Singh (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the California State Class against Defendant FCA.

246.    At all relevant times hereto, FCA was the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. FCA knew or should have known of the specific use for which the Class Vehicles were purchased.

247.    FCA provided Plaintiff and the California State Class members with an implied warranty that the Class Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. The Class Vehicles, however, are not fit for their ordinary purpose because, inter alia, the Class Vehicles suffered from the FORM Defect at the time of sale.

248.    The Class Vehicles are not fit for the purpose of providing reliable transportation as a hybrid vehicle because of the defect.

249.    FCA impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the vehicles FCA manufactured, supplied, distributed, and/or sold were reliable for providing transportation, and were hybrid vehicles capable of being driven in electric-only mode; and (ii) a warranty that the Class Vehicles would be fit for their intended use while being operated

250.    Contrary to the applicable implied warranties, the Class Vehicles were not fit for their ordinary and intended purpose. Instead, the Class Vehicles are defective, including, but not limited to, the FORM Defect and inability to be driven in electric-only mode.

251.    FCA's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

### COUNT NINE — FRAUD BY OMISSION

252.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

253.    Plaintiff Singh (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the California State Class against Defendant FCA.

254.    Defendant made material omissions concerning a presently existing or past fact in that, for example, Defendant did not fully and truthfully disclose to its customers the true nature of the FORM defect, which in many cases could not be discovered until years after the Class Vehicles were purchased or leased. These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase.

255.    Defendant had a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

256.    In addition, Defendant had a duty to disclose these omitted material facts because they were known and/or accessible only to Defendant, who had superior knowledge and access to the facts and knew that those facts were not known to or reasonably discoverable by Plaintiff and the California State Class members. These omitted facts were material because they directly impact the reliability of the Class Vehicles.

257.    Defendant was in exclusive control of the material facts and such facts were not known to the public or the California State Class members. Defendant also possessed exclusive knowledge of the FORM defect rendering Class Vehicles inherently more unreliable than similar vehicles.

258.    Defendant failed to disclose these material facts, in whole or in part, with the intent to induce Plaintiff and the California State Class members to purchase the Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

259.    Plaintiff and the California State Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the omitted facts. The actions of Plaintiff and the California State Class members were justified.

260.    Plaintiff and the California State Class members reasonably relied on these omissions and suffered damages as a result.

261.    As a result of these omissions, Plaintiff and the California State Class members incurred damages including, but not limited to, their lost benefit of the bargain and overpayment at the time of

purchase or lease and/or the diminished intrinsic value of their Class Vehicles.

262. Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiff and the California State Class members. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

COUNT TEN — UNJUST ENRICHMENT

263. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

264. Plaintiff Singh (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the California State Class against Defendant FCA.

265. Plaintiff and the California State Class members paid Defendant the value of non-defective, fully operational Class Vehicles with the ability to operate only using the electric engine for up to 21 miles. Plaintiff and the California State Class members paid a premium to be able to use the electric engine, as traditional, non-hybrid models of each of the Class Vehicles are available and significantly lower in cost. In exchange, Defendant provided Plaintiffs and the California State Class members with defective Vehicles that cannot use the electric-only operation mode for significant periods of time while the FORM cycle is engaged.

266. Defendant enjoyed the benefit of increased financial gains, to the detriment of Plaintiff and the California State Class members, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Defendant to retain these wrongfully obtained profits.

267. Plaintiff, therefore, seeks an order establishing Defendant as constructive trustee of the profits unjustly obtained, plus interest.

**C.    Claims Brought on Behalf of the Colorado State Class**

COUNT ELEVEN — VIOLATIONS OF THE COLORADO
CONSUMER PROTECTION ACT
(COLO. REV. STAT. § 6-1-101, *ET SEQ.*)

268. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

45
AMENDED CLASS ACTION
COMPLAINT

269.    Plaintiff Bennett, Plaintiff Chavez, and Plaintiff Clark (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves and the Colorado State Class against Defendant FCA.

270.    Defendant, Plaintiffs, and the Colorado State Class members are "persons" within the meaning of § 6-1-102(6) of the Colorado Consumer Protection Act ("Colorado CPA"), Colo. Rev. Stat. § 6-1-101, et seq.

271.    Plaintiffs and the Colorado State Class members are "consumers" within the meaning of Col. Rev. Stat § 6-1-113(1)(a).

272.    The Colorado CPA makes unlawful deceptive trade practices in the course of a person's business. Defendant engaged in deceptive trade practices prohibited by the Colorado CPA, including: (1) knowingly making a false representation as to the characteristics, uses, and benefits of the Class Vehicles that had the capacity or tendency to deceive Colorado State Class members; (2) representing that the Class Vehicles are of a particular standard, quality, and grade even though Defendant knew or should have known they are not; (3) advertising the Class Vehicles with the intent not to sell them as advertised; and (4) failing to disclose material information concerning the Class Vehicles that was known to Defendant at the time of advertisement or sale with the intent to induce Colorado State Class members to purchase, lease or retain the Class Vehicles.

273.    In the course of their business, Defendant violated the Colorado CPA. As detailed above, it willfully failed to disclose the FORM Defect with the intent that consumers rely on that failure to disclose in deciding whether to purchase a Class Vehicle. By failing to disclose the FORM Defect while advertising the Class Vehicles as hybrid vehicles capable of driving up to 21 miles using only the electric engine, Defendant engaged in one or more of the following unfair or deceptive acts or practices as defined in Colo. Rev. Stat. § 6-1-105:

A.    Representing that the Class Vehicles have approval, characteristics, uses, or benefits that they do not have;

B.    Representing that the Class Vehicles are of a particular standard, quality and grade when they are not;

C.      Advertising the Class Vehicles with the intent not to sell or lease them as advertised; and/or

D.      Failing to disclose material information concerning the Class Vehicles known to Defendant at the time of advertisement or sale, with the intention of inducing Plaintiffs and Class members to purchase or lease the vehicles.

274.    Defendant's failure to disclose the true characteristics of the FORM Defect were material to Plaintiffs and the Colorado State Class, as Defendant intended. Had they known the truth, Plaintiff and the Colorado State Class would not have purchased or leased the Class Vehicles, or—if the Class Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them.

275.    Plaintiffs and the Colorado State Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had failed to disclose, until the FORM Defect manifested in their Vehicles. Plaintiffs and the Colorado State Class members did not, and could not, unravel Defendant's deception on their own.

276.    Defendant had an ongoing duty to Plaintiffs and the Colorado State Class to refrain from unfair and deceptive practices under the Colorado CPA in the course of their business. Specifically, Defendant owed Plaintiffs and Colorado State Class members a duty to disclose all the material facts concerning the FORM Defect because they possessed exclusive knowledge and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

277.    Plaintiffs and Colorado State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's concealment, misrepresentations, and/or failure to disclose material information.

278.    Defendant's violations present a continuing risk to Plaintiffs and the Colorado State Class, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

279.    Pursuant to Colo. Rev. Stat. § 6-1-113, Plaintiffs and the Colorado State Class seek an

order enjoining Defendant's unfair and/or deceptive acts or practices, and awarding damages, treble or punitive damages, and any other just and proper relief available under the Colorado CPA.

## COUNT TWELVE — BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (COLO. REV. STAT. § 4-2-314)

280.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

281.    Plaintiff Bennett, Plaintiff Chavez, and Plaintiff Clark (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves and the Colorado State Class against Defendant FCA.

282.    FCA, Plaintiffs, and the Colorado State Class are all "persons" within the meaning of Colo. Rev. Stat. § 4-1-201(26).

283.    FCA is a "merchant" with respect to motor vehicles within the meaning of Colo. Rev. Stat. § 4-2-104(1).

284.    Pursuant to Colo. Rev. Stat. § 4-2-314, a warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.

285.    The Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that the FORM Defect causes the Vehicles to lose the ability to use the electric motor more frequently and for more significant periods of time than disclosed.

286.    Privity is not required in this case because Plaintiffs and the Colorado State Class are intended third-party beneficiaries of contracts between FCA and its dealers; specifically, they are the intended beneficiaries of FCA's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

287.    FCA was provided notice of the FORM Defect, as alleged herein, by the numerous complaints filed against it, and the instant Complaint, within a reasonable amount of time after the

defect was discovered. FCA's knowledge of the FORM Defect is further supported by its revision to the 2022 owners' manual, which was revised to acknowledge that the FORM cycle can last for up to 2.5 hours.[36]

288.    As a direct and proximate result of FCA's breach of the warranties of merchantability, Plaintiffs and the Colorado State Class members have been damaged in an amount to be proven at trial.

## COUNT THIRTEEN — FRAUD BY OMISSION

289.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

290.    Plaintiff Bennett, Plaintiff Chavez, and Plaintiff Clark (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves and the Colorado State Class against Defendant FCA.

291.    Defendant made material omissions concerning a presently existing or past fact in that, for example, Defendant did not fully and truthfully disclose to its customers the true nature of the FORM defect, which in many cases could not be discovered until years after the Class Vehicles were purchased or leased. These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase.

292.    Defendant had a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

293.    In addition, Defendant had a duty to disclose these omitted material facts because they were known and/or accessible only to Defendant, who had superior knowledge and access to the facts and knew that those facts were not known to or reasonably discoverable by Plaintiffs and the Colorado State Class members. These omitted facts were material because they directly impact the reliability of the Class Vehicles.

294.    Defendant was in exclusive control of the material facts and such facts were not known

---

[36] *See supra* ¶ 58.

to the public or the Colorado State Class members. Defendant also possessed exclusive knowledge of the FORM defect rendering Class Vehicles inherently more unreliable than similar vehicles.

295. Defendant failed to disclose these material facts, in whole or in part, with the intent to induce Plaintiffs and the Colorado State Class members to purchase the Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

296. Plaintiffs and the Colorado State Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the omitted facts. The actions of Plaintiffs and the Colorado State Class members were justified.

297. Plaintiffs and the Colorado State Class members reasonably relied on these omissions and suffered damages as a result.

298. As a result of these omissions, Plaintiffs and the Colorado State Class members incurred damages including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished intrinsic value of their Class Vehicles.

299. Defendant's acts were done maliciously, oppressively, deliberately, and in reckless disregard of the rights of Plaintiffs and the Colorado State Class members. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### COUNT FOURTEEN — UNJUST ENRICHMENT

300. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

301. Plaintiff Bennett, Plaintiff Chavez, and Plaintiff Clark (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves and the Colorado State Class against Defendant FCA.

302. Plaintiffs and the Colorado State Class members paid Defendant the value of non-defective, fully operational Class Vehicles with the ability to operate only using the electric engine for up to 21 miles. Plaintiffs and the Colorado State Class members paid a premium to be able to use the electric engine, as traditional, non-hybrid models of each of the Class Vehicles are available and

significantly lower in cost. In exchange, Defendant provided Plaintiffs and the Colorado State Class members with defective Vehicles that cannot use the electric-only operation mode for significant periods of time while the FORM cycle is engaged.

303.     Defendant enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and the Colorado State Class members, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Defendant to retain these wrongfully obtained profits.

304.     Plaintiffs, therefore, seek an order establishing Defendant as constructive trustee of the profits unjustly obtained, plus interest.

**D.     Claims Brought on Behalf of the Illinois State Class**

**COUNT FIFTEEN — VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**
**(815 ILCS 505/1, *ET SEQ.* AND 510/2)**

305.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

306.     Plaintiff McGowan and Plaintiff Raque (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves and the Illinois State Class against Defendant FCA.

307.     FCA, Plaintiffs, and the Illinois State Class members are "persons" within the meaning 815 ILCS 505/1(c) and 510/1(5).

308.     Plaintiffs and the Illinois State Class members are "consumers" within the meaning of 815 ILCS 505/1(e).

309.     The Illinois Consumer Fraud and Deceptive Practices Act ("Illinois CFA") makes unlawful "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact … in the conduct of trade or commerce … whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2. The Illinois CFA further makes unlawful deceptive trade practices undertaken in the course of business. 815 ILCS 510/2.

310.     In the course of their business, Defendant FCA, through its agents, employees, and/or

subsidiaries, violated the Illinois CFA. As detailed above, it willfully failed to disclose the FORM Defect with the intent that consumers rely on that failure to disclose in deciding whether to purchase a Class Vehicle. By failing to disclose the FORM Defect while advertising the Class Vehicles as hybrid vehicles capable of driving up to 21 miles using only the electric engine, Defendant engaged in one or more of the following unfair or deceptive acts or practices prohibited by 815 ILCS 505/2 and 510/2:

A.   Representing that the Class Vehicles have approval, characteristics, uses, or benefits that they do not have;

B.   Representing that the Class Vehicles are of a particular standard, quality and grade when they are not;

C.   Advertising the Class Vehicles with the intent not to sell or lease them as advertised; and/or

D.   Failing to disclose material information concerning the Class Vehicles known to Defendant at the time of advertisement or sale, with the intention of inducing Plaintiffs and Class members to purchase or lease the vehicles.

311.    Defendant's failure to disclose the true characteristics of the FORM Defect were material to Plaintiffs and the Illinois State Class, as Defendant intended. Had they known the truth, Plaintiffs and the Illinois State Class would not have purchased or leased the Class Vehicles, or—if the Class Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them.

312.    Plaintiffs and the Illinois State Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had failed to disclose, until the FORM Defect manifested in their Vehicles. Plaintiffs and the Illinois State Class members did not, and could not, unravel Defendant's deception on their own.

313.    Defendant had an ongoing duty to Plaintiffs and the Illinois State Class to refrain from unfair and deceptive practices under the Illinois CFA in the course of their business. Specifically, Defendant owed Plaintiffs and Illinois State Class members a duty to disclose all the material facts concerning the FORM Defect because they possessed exclusive knowledge and/or they made

misrepresentations that were rendered misleading because they were contradicted by withheld facts.

314.    Plaintiffs and Illinois State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's concealment, misrepresentations, and/or failure to disclose material information.

315.    Defendant's violations present a continuing risk to Plaintiffs and the Illinois State Class, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

316.    Pursuant to 815 ILCS 505/10a(a) and 510/3, Plaintiffs and the Illinois State Class seek an order enjoining Defendant's unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the Illinois CFA.

**COUNT SIXTEEN — BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**

317.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

318.    Plaintiff McGowan and Plaintiff Raque (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves and the Illinois State Class against Defendant FCA.

319.    FCA, Plaintiff, and the Illinois State Class are all "parties" within the meaning of 810 Ill. Comp. Stat. 5/1-201(26).

320.    FCA is a "merchant" with respect to motor vehicles within the meaning of 810 Ill. Comp. Stat. 5/2-104(1).

321.    Pursuant to 810 Ill. Comp. Stat. 5/2-314, a warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.

322.    The Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that the FORM Defect causes the Vehicles to lose the ability to use the electric motor more frequently and for more significant periods of time than disclosed.

323.    Privity is not required in this case because Plaintiffs and the Illinois State Class are intended third-party beneficiaries of contracts between FCA and its dealers; specifically, they are the

intended beneficiaries of FCA's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

324. FCA was provided notice of the FORM Defect, as alleged herein, by the numerous complaints filed against it, and the instant Complaint, within a reasonable amount of time after the defect was discovered. FCA's knowledge of the FORM Defect is further supported by its revision to the 2022 owners' manual, which was revised to acknowledge that the FORM cycle can last for up to 2.5 hours.[37]

325. As a direct and proximate result of FCA's breach of the warranties of merchantability, Plaintiffs and the Illinois State Class members have been damaged in an amount to be proven at trial.

## COUNT SEVENTEEN — FRAUD BY OMISSION

326. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

327. Plaintiff McGowan and Plaintiff Raque (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves and the Illinois State Class against Defendant FCA.

328. Defendant made material omissions concerning a presently existing or past fact in that, for example, Defendant did not fully and truthfully disclose to its customers the true nature of the FORM defect, which in many cases could not be discovered until years after the Class Vehicles were purchased or leased. These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase.

329. Defendant had a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

330. In addition, Defendant had a duty to disclose these omitted material facts because they

---

[37] See supra ¶ 58.

were known and/or accessible only to Defendant, who had superior knowledge and access to the facts and knew that those facts were not known to or reasonably discoverable by Plaintiffs and the Illinois State Class members. These omitted facts were material because they directly impact the reliability of the Class Vehicles.

331.     Defendant was in exclusive control of the material facts and such facts were not known to the public or the Illinois State Class members. Defendant also possessed exclusive knowledge of the FORM defect rendering Class Vehicles inherently more unreliable than similar vehicles.

332.     Defendant failed to disclose these material facts, in whole or in part, with the intent to induce Plaintiffs and the Illinois State Class members to purchase the Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

333.     Plaintiffs and the Illinois State Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the omitted facts. The actions of Plaintiffs and the Illinois State Class members were justified.

334.     Plaintiffs and the Illinois State Class members reasonably relied on these omissions and suffered damages as a result.

335.     As a result of these omissions, Plaintiffs and the Illinois State Class members incurred damages including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished intrinsic value of their Class Vehicles.

336.     Defendant's acts were done maliciously, oppressively, deliberately, and in reckless disregard of the rights of Plaintiffs and the Illinois State Class members. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT EIGHTEEN — UNJUST ENRICHMENT

337.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

338.     Plaintiff McGowan and Plaintiff Raque (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves and the Illinois State Class against Defendant FCA.

339.    Plaintiffs and the Illinois State Class members paid Defendant the value of non-defective, fully operational Class Vehicles with the ability to operate only using the electric engine for up to 21 miles. Plaintiffs and the Illinois State Class members paid a premium to be able to use the electric engine, as traditional, non-hybrid models of each of the Class Vehicles are available and significantly lower in cost. In exchange, Defendant provided Plaintiffs and the Illinois State Class members with defective Vehicles that cannot use the electric-only operation mode for significant periods of time while the FORM cycle is engaged.

340.    Defendant enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and the Illinois State Class members, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Defendant retain these wrongfully obtained profits.

341.    Plaintiffs, therefore, seek an order establishing Defendant as constructive trustee of the profits unjustly obtained, plus interest.

**E.      Claims Brought on Behalf of the Massachusetts Class**

**COUNT NINETEEN — DECEPTIVE ACTS OR PRACTICES PROHIBITED BY MASSACHUSETTS LAW**
**(MASS. GEN. LAWS CH. 93A, § 1, *ET SEQ.*)**

342.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

343.    Plaintiff Kavanagh (for the purpose of this section, "Plaintiff") brings this action on behalf of herself and the Massachusetts State Class against Defendant FCA.

344.    FCA, Plaintiff, and the Massachusetts State Class members are "persons" within the meaning of Mass. Gen. Laws ch. 93A, § 1(a).

345.    FCA is engaged in "trade" or "commerce" within the meaning of Mass. Gen. Laws ch. 93A, § 1(b).

346.    The Massachusetts consumer protection law ("Massachusetts Act") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2.

347.    In the course of their business, Defendant FCA, through its agents, employees, and/or subsidiaries, violated the Massachusetts Act. As detailed above, it willfully failed to disclose the

FORM Defect with the intent that consumers rely on that failure to disclose in deciding whether to purchase a Class Vehicle. By failing to disclose the FORM Defect while advertising the Class Vehicles as hybrid vehicles capable of driving up to 21 miles using only the electric engine, Defendant engaged in one or more of the following unfair or deceptive acts or practices prohibited by Mass. Gen. Laws ch. 93A, § 2:

A.     Representing that the Class Vehicles have approval, characteristics, uses, or benefits that they do not have;

B.     Representing that the Class Vehicles are of a particular standard, quality and grade when they are not;

C.     Advertising the Class Vehicles with the intent not to sell or lease them as advertised; and/or

D.     Failing to disclose material information concerning the Class Vehicles known to Defendant at the time of advertisement or sale, with the intention of inducing Plaintiff and Class members to purchase or lease the vehicles.

348.   Defendant's failure to disclose the true characteristics of the FORM Defect were material to Plaintiff and the Massachusetts State Class, as Defendant intended. Had they known the truth, Plaintiff and the Massachusetts State Class would not have purchased or leased the Class Vehicles, or—if the Class Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them.

349.   Plaintiff and the Massachusetts State Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had failed to disclose, until the FORM Defect manifested in their Vehicles. Plaintiffs and the Massachusetts State Class members did not, and could not, unravel Defendant's deception on their own.

350.   Defendant had an ongoing duty to Plaintiff and the Massachusetts State Class to refrain from unfair and deceptive practices under the Massachusetts Act in the course of their business. Specifically, Defendant owed Plaintiff and Massachusetts State Class members a duty to disclose all

the material facts concerning the FORM Defect because they possessed exclusive knowledge and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

351.    Plaintiff and Massachusetts State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's concealment, misrepresentations, and/or failure to disclose material information.

352.    Defendant's violations present a continuing risk to Plaintiff and the Massachusetts State Class, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

353.    Plaintiff and the Massachusetts State Class seek an order pursuant to Mass. Gen. Laws ch. 93A § 9 enjoining Defendant's unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the Massachusetts Act.

354.    On November 28, 2017, a notice letter was sent to FCA US LLC pursuant to Mass. Gen. Laws ch. 93A, § 9(3). Plaintiffs sent a second notice letter pursuant to Mass. Gen. Laws ch. 93A, § 9(3) to FCA on July 19, 2017. Additionally, FCA was provided notice of the issues raised in this count and this Complaint by the governmental investigations, the numerous complaints filed against them, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Class Vehicle defects became public. Because Defendant failed to remedy their unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiff and the Massachusetts State Class are entitled.

**COUNT TWENTY — BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(MASS. GEN. LAWS CH. 106 §§ 2-314 AND 2A-212)**

355.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

356.    Plaintiff Kavanagh (for the purpose of this section, "Plaintiff") brings this action on behalf of herself and the Massachusetts State Class against Defendant FCA.

357.    FCA is and was at all relevant times a "merchant" with respect to motor vehicles under Mass Gen. Laws ch. 106 § 2-104(1) and is a "seller" of motor vehicles under § 2-103(1) (d).

358.    With respect to leases, FCA is and was at all relevant times a "lessor" of motor vehicles under Mass Gen. Laws ch. 106 § 2A-103(1)(p).

359.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Mass. Gen. Laws ch. 106 §§ 2-105(1) and 2A-103(1)(h).

360.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Mass. Gen. Laws ch. 106 §§ 2-314 and 2A-212.

361.    The Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that the FORM Defect causes the Vehicles to lose the ability to use the electric motor more frequently and for more significant periods of time than disclosed.

362.    FCA's breaches of the implied warranty of merchantability caused damage to Plaintiff and the Massachusetts State Class. The amount of damages due will be proven at trial.

## COUNT TWENTY-ONE — FRAUD BY OMISSION

363.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

364.    Plaintiff Kavanagh (for the purpose of this section, "Plaintiff") brings this action on behalf of herself and the Massachusetts State Class against Defendant FCA.

365.    Defendant made material omissions concerning a presently existing or past fact in that, for example, Defendant did not fully and truthfully disclose to its customers the true nature of the FORM defect, which in many cases could not be discovered until years after the Class Vehicles were purchased or leased. These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase.

366.    Defendant had a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

367.    In addition, Defendant had a duty to disclose these omitted material facts because they were known and/or accessible only to Defendant, who had superior knowledge and access to the facts and knew that those facts were not known to or reasonably discoverable by Plaintiff and the Massachusetts State Class members. These omitted facts were material because they directly impact the reliability of the Class Vehicles.

368.    Defendant was in exclusive control of the material facts and such facts were not known to the public or the Massachusetts State Class members. Defendant also possessed exclusive knowledge of the FORM defect rendering Class Vehicles inherently more unreliable than similar vehicles.

369.    Defendant failed to disclose these material facts, in whole or in part, with the intent to induce Plaintiff and the Massachusetts State Class members to purchase the Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

370.    Plaintiff and the Massachusetts State Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the omitted facts. The actions of Plaintiff and the Massachusetts State Class members were justified.

371.    Plaintiff and the Massachusetts State Class members reasonably relied on these omissions and suffered damages as a result.

372.    As a result of these omissions, Plaintiff and the Massachusetts State Class members incurred damages including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished intrinsic value of their Class Vehicles.

373.    Defendant's acts were done maliciously, oppressively, deliberately, and in reckless disregard of the rights of Plaintiff and the Massachusetts State Class members. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT TWENTY-TWO —  UNJUST ENRICHMENT**

374.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

375.     Plaintiff Kavanagh (for the purpose of this section, "Plaintiff") brings this action on behalf of herself and the Massachusetts State Class against Defendant FCA.

376.     Plaintiff and the Massachusetts State Class members paid Defendant the value of non-defective, fully operational Class Vehicles with the ability to operate only using the electric engine for up to 21 miles. Plaintiff and the Massachusetts State Class members paid a premium to be able to use the electric engine, as traditional, non-hybrid models of each of the Class Vehicles are available and significantly lower in cost. In exchange, Defendant provided Plaintiffs and the Massachusetts State Class members with defective Vehicles that cannot use the electric-only operation mode for significant periods of time while the FORM cycle is engaged.

377.     Defendant enjoyed the benefit of increased financial gains, to the detriment of Plaintiff and the Massachusetts State Class members, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Defendant retain these wrongfully obtained profits.

378.     Plaintiff, therefore, seeks an order establishing Defendant as constructive trustees of the profits unjustly obtained, plus interest.

**F.     Claims Brought on Behalf of the Michigan Class**

### COUNT TWENTY-THREE — VIOLATIONS OF THE MICHIGAN CONSUMER PROTECTION ACT
### (MICH. COMP. LAWS § 445.903, *ET SEQ.*)

379.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

380.     Plaintiffs Pirie and Schachow (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves and the Michigan State Class against Defendant FCA.

381.     Plaintiffs and members of the Michigan State Class are "persons" within the meaning of Mich. Comp. Laws § 445.902(1)(d).

382.     The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce . . . ." Mich. Comp. Laws § 445.903(1).

383.     Defendant's conduct as set forth herein constitutes unfair or deceptive acts or practices,

including, but not limited to, Defendant's manufacture, sale, and use of Vehicles containing the FORM Defect, which Defendant failed to adequately investigate, disclose and remedy, and their misrepresentations and omissions regarding the reliability and range of the Class Vehicles.

384.    Defendant's conduct as alleged above and herein constitutes practices prohibited by the Michigan CPA, including: "(c) Representing that goods or services have … characteristics . . . that they do not have . . . .;" "(e) Representing that goods or services are of a particular standard . . . if they are of another;" "(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;" "(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is;" and "(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." Mich. Comp. Laws § 445.903(1).

385.    Defendant's actions as set forth above occurred in the conduct of trade or commerce.

386.    Defendant intended that Plaintiffs and the Michigan State Class members rely on their failure to disclose, so that Plaintiffs and the Michigan State Class members would purchase or lease Class Vehicles.

387.    Had Defendant disclosed the omitted material, Plaintiffs and the members of the Michigan State Class would not have purchased or leased Class Vehicles or would have paid less for them.

388.    Defendant's violations present a continuing risk to Plaintiffs and members of the Michigan State Class as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

389.    Plaintiffs and the Michigan State Class members were injured as a result of Defendant's conduct. Plaintiffs and the Michigan State Class overpaid for the Class Vehicles and did not receive the benefit of their bargain, and thus the Class Vehicles have suffered a diminution in value.

390.    Defendant's conduct proximately caused the injuries to Plaintiffs and the Michigan State Class members.

391.    Defendant is liable to Plaintiffs and the Michigan State Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

**COUNT TWENTY-FOUR —  BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY (MICH. COMP. LAWS § 440.314)**

392.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

393.    Plaintiffs Pirie and Schachow (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves and the Michigan State Class against Defendant FCA.

394.    FCA is and was at all relevant times a merchant with respect to motor vehicles within the meaning of Mich. Comp. Laws § 440.2314(1).

395.    Pursuant to Mich. Comp. Laws § 440.2314, a warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.

396.    The Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that the FORM Defect causes the Vehicles to lose the ability to use the electric motor more frequently and for more significant periods of time than disclosed.

397.    Privity is not required in this case because Plaintiffs and the Michigan State Class are intended third-party beneficiaries of contracts between FCA and its dealers; specifically, they are the intended beneficiaries of FCA's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

398.    FCA was provided notice of the FORM Defect, as alleged herein, by the numerous complaints filed against it, and the instant Complaint, within a reasonable amount of time after the defect was discovered. FCA's knowledge of the FORM Defect is further supported by its revision to the 2022 owners' manual, which was revised to acknowledge that the FORM cycle can last for up to

1    2.5 hours.[38]

2          399.    As a direct and proximate result of FCA's breach of the warranties of merchantability,

3    Plaintiffs and the Michigan State Class members have been damaged in an amount to be proven at

4    trial.

5          **COUNT TWENTY-FIVE — FRAUD BY OMISSION**

6          400.    Plaintiffs and the Class incorporate by reference each preceding and succeeding

7    paragraph as though fully set forth at length herein.

8          401.    Plaintiffs Pirie and Schachow (for the purpose of this section, "Plaintiffs") bring this

9    action on behalf of themselves and the Michigan State Class against Defendant FCA.

10         402.    Defendant made material omissions concerning a presently existing or past fact in that,

11   for example, Defendant did not fully and truthfully disclose to its customers the true nature of the

12   FORM defect, which in many cases could not be discovered until years after the Class Vehicles were

13   purchased or leased. These facts, and other facts as set forth above, were material because reasonable

14   people attach importance to their existence or nonexistence in deciding which vehicle to purchase.

15         403.    Defendant had a duty to disclose these omitted facts, because where one does speak one

16   must speak the whole truth and not conceal any facts which materially qualify those facts stated. One

17   who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is

18   fraud.

19         404.    In addition, Defendant had a duty to disclose these omitted material facts because they

20   were known and/or accessible only to Defendant, who had superior knowledge and access to the facts

21   and Defendant knew that those facts were not known to or reasonably discoverable by Plaintiffs and

22   the Michigan State Class members. These omitted facts were material because they directly impact the

23   reliability of the Class Vehicles.

24         405.    Defendant was in exclusive control of the material facts and such facts were not known

25   to the public or the Missouri State Class members. Defendant also possessed exclusive knowledge of

26   the FORM defect rendering Class Vehicles inherently more unreliable than similar vehicles.

27   _____

28   [38] *See supra* ¶ 58.

406.    Defendant failed to disclose these material facts, in whole or in part, with the intent to induce Plaintiffs and the Michigan State Class members to purchase the Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

407.    Plaintiffs and the Michigan State Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the omitted facts. The actions of Plaintiffs and the Michigan State Class members were justified.

408.    Plaintiffs and the Michigan State Class members reasonably relied on these omissions and suffered damages as a result.

409.    As a result of these omissions, Plaintiffs and the Michigan State Class members incurred damages including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished intrinsic value of their Class Vehicles.

410.    Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiffs and the Michigan State Class members. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT TWENTY-SIX —  UNJUST ENRICHMENT**

411.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

412.    Plaintiffs Pirie and Schachow (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves and the Michigan State Class against Defendant FCA.

413.    Plaintiffs and the Michigan State Class members paid Defendant the value of non-defective, fully operational Class Vehicles with the ability to operate only using the electric engine for up to 21 miles. Plaintiffs and the Michigan State Class members paid a premium to be able to use the electric engine, as traditional, non-hybrid models of each of the Class Vehicles are available and significantly lower in cost. In exchange, Defendant provided Plaintiffs and the Michigan State Class members with defective Vehicles that cannot use the electric-only operation mode for significant periods of time while the FORM cycle is engaged.

414.   Defendant enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and the Michigan State Class members, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Defendant retain these wrongfully obtained profits.

415.   Plaintiffs, therefore, seek an order establishing Defendant as constructive trustee of the profits unjustly obtained, plus interest.

## G.   Claims Brought on Behalf of the Minnesota Class

### COUNT TWENTY-SEVEN — VIOLATION OF THE MINNESOTA PREVENTION OF CONSUMER FRAUD ACT
### (MINN. STAT. § 325F, *ET SEQ.*)

416.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

417.   Plaintiff Souders (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the Minnesota State Class against Defendant FCA.

418.   The Class Vehicles constitute "merchandise" within the meaning of Minn. Stat. § 325F.68(2).

419.   The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby …." Minn. Stat. § 325F.69(1).

420.   In the course of their business, Defendant violated the Minnesota CFA. As detailed above, they willfully failed to disclose the FORM Defect with the intent that consumers rely on that failure to disclose in deciding whether to purchase a Class Vehicle. By failing to disclose the FORM Defect while advertising the Class Vehicles as hybrid vehicles capable of driving up to 21 miles using only the electric engine, Defendant engaged in the following unfair or deceptive acts or practices prohibited by Minn. Stat. § 325F.69: using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and

sale/lease of the Class Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

421.     Defendant's failure to disclose of the true characteristics of the FORM Defect and its effect on the electric-only driving mode were material to Plaintiff and the Minnesota State Class, as Defendant intended. Had they known the truth, Plaintiff and the Minnesota State Class would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

422.     Plaintiff and Minnesota State Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had failed to disclose. Plaintiff and Minnesota State Class members did not, and could not, unravel Defendant's deception on their own.

423.     Defendant had an ongoing duty to Plaintiff and the Minnesota State Class to refrain from unfair and deceptive practices under the Minnesota CFA in the course of their business. Specifically, Defendant owed Plaintiff and Minnesota State Class members a duty to disclose all the material facts concerning the FORM system and Defect because they possessed exclusive knowledge, they failed to disclose it from Plaintiff and the Minnesota State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

424.     Plaintiff and Minnesota State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's concealment, misrepresentations, and/or failure to disclose material information.

425.     Defendant's violations present a continuing risk to Plaintiff and the Minnesota State Class, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

426.     Pursuant to Minn. Stat. §§ 8.31(3a) and 549.20(1)(a), Plaintiff and the Minnesota State Class seek an order enjoining Defendant's unfair and/or deceptive acts or practices and any other just and proper relief available under the Minnesota CFA.

**COUNT TWENTY-EIGHT — VIOLATIONS OF THE
MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT
(MINN. STAT. § 325D.43, *ET SEQ.*)**

427. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

428. Plaintiff Souders (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the Minnesota State Class against Defendant FCA.

429. The Minnesota Deceptive Trade Practices Act ("Minnesota DTPA") prohibits deceptive trade practices. Minn. Stat. § 325D.44.

430. In the course of their business, Defendant FCA, through its agents, employees, and/or subsidiaries, violated the Minnesota DTPA. As detailed above, it willfully failed to disclose the FORM Defect with the intent that consumers rely on that failure to disclose in deciding whether to purchase a Class Vehicle. By failing to disclose the FORM Defect while advertising the Class Vehicles as hybrid vehicles capable of driving up to 21 miles using only the electric engine, Defendant engaged in one or more of the following unfair or deceptive acts or practices prohibited by Minn. Stat. § 325D.44:

E. Representing that the Class Vehicles have approval, characteristics, uses, or benefits that they do not have;

F. Representing that the Class Vehicles are of a particular standard, quality and grade when they are not;

G. Advertising the Class Vehicles with the intent not to sell or lease them as advertised; and/or

H. Failing to disclose material information concerning the Class Vehicles known to Defendant at the time of advertisement or sale, with the intention of inducing Plaintiff and Class members to purchase or lease the vehicles.

431. Defendant's failure to disclose the true characteristics of the FORM Defect were material to Plaintiff and the Minnesota State Class, as Defendant intended. Had they known the truth, Plaintiff and the Minnesota State Class would not have purchased or leased the Class Vehicles, or—if the Class Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to

sell—would have paid significantly less for them.

432.    Plaintiff and the Minnesota State Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had failed to disclose, until the FORM Defect manifested in their Vehicles. Plaintiffs and the Minnesota State Class members did not, and could not, unravel Defendant's deception on their own.

433.    Defendant had an ongoing duty to Plaintiff and the Minnesota State Class to refrain from unfair and deceptive practices under the Minnesota DTPA in the course of their business. Specifically, Defendant owed Plaintiff and Minnesota State Class members a duty to disclose all the material facts concerning the FORM Defect because they possessed exclusive knowledge and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

434.    Plaintiff and Minnesota State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's concealment, misrepresentations, and/or failure to disclose material information.

435.    Defendant's violations present a continuing risk to Plaintiff and the Minnesota State Class, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

436.    Pursuant to Minn. Stat. §§ 8.31(3a), 325D.45, and 549.20(1)(a), Plaintiff and the Minnesota State Class seek an order enjoining Defendant's unfair and/or deceptive acts or practices, and awarding damages, and any other just and proper relief available under the Minnesota DTPA.

### COUNT TWENTY-NINE — BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (MINN. STAT. §§ 336.2-314 AND 336.2A-212)

437.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

438.    Plaintiff Souders (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the Minnesota State Class against Defendant FCA.

439.    FCA was at all relevant times a "merchant" with respect to motor vehicles under Minn.

Stat. § 336.2-104(1) and "seller" of motor vehicles under § 336.2-103(1)(d).

440.    With respect to leases, FCA is and was at all relevant times a "lessor" of motor vehicles under Minn. Stat. § 336.2A-103(1)(p).

441.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Minn. Stat. §§ 336.2-105(1) and 336.2A-103(1)(h).

442.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Minn. Stat. §§ 336.2-314 and 336.2A-212.

443.    FCA impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, inter alia, the following: (i) a warranty that the Class Vehicles were manufactured, supplied, distributed, and/or sold by FCA were reliable for providing transportation using the electric-only driving mode; and (ii) a warranty that the Class Vehicles would be fit for their intended use—providing reliable transportation using the electric-only driving mode—while the Class Vehicles were being operated.

444.    FCA breached the implied warranty of merchantability in that the Class Vehicles were not in merchantable condition when they were sold to Plaintiff and the Minnesota State Class members and said vehicles were and are unfit for the ordinary purposes for which such vehicles are used because the electric-only driving mode is unreliable due to the FORM Defect.

445.    FCA's breaches of the implied warranty of merchantability caused damage to the Plaintiff and the Minnesota State Class. The amount of damages due will be proven at trial.

## COUNT THIRTY — FRAUD BY OMISSION

446.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

447.    Plaintiff Souders (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the Minnesota State Class against Defendant FCA.

448.    Defendant made material omissions concerning a presently existing or past fact in that, for example, Defendant did not fully and truthfully disclose to its customers the true nature of the

FORM defect, which in many cases could not be discovered until years after the Class Vehicles were purchased or leased. These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase.

449.    Defendant had a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

450.    In addition, Defendant had a duty to disclose these omitted material facts because they were known and/or accessible only to Defendant, who had superior knowledge and access to the facts and Defendant knew that those facts were not known to or reasonably discoverable by Plaintiff and the Minnesota State Class members. These omitted facts were material because they directly impact the reliability of the Class Vehicles.

451.    Defendant was in exclusive control of the material facts and such facts were not known to the public or the Minnesota State Class members. Defendant also possessed exclusive knowledge of the FORM defect rendering Class Vehicles inherently more unreliable than similar vehicles.

452.    Defendant failed to disclose these material facts, in whole or in part, with the intent to induce Plaintiff and the Minnesota State Class members to purchase the Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

453.    Plaintiff and the Minnesota State Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the omitted facts. The actions of Plaintiff and the Minnesota State Class members were justified.

454.    Plaintiff and the Minnesota State Class members reasonably relied on these omissions and suffered damages as a result.

455.    As a result of these omissions, Plaintiff and the Minnesota State Class members incurred damages including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished intrinsic value of their Class Vehicles.

456.    Defendant's acts were done maliciously, oppressively, deliberately, with intent to

defraud, and in reckless disregard of the rights of Plaintiff and the Minnesota State Class members. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT THIRTY-ONE — UNJUST ENRICHMENT

457.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

458.    Plaintiff Souders (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the Minnesota State Class against Defendant FCA.

459.    Plaintiff and the Minnesota State Class members paid Defendant the value of non-defective, fully operational Class Vehicles with the ability to operate only using the electric engine for up to 21 miles. Plaintiff and the Minnesota State Class members paid a premium to be able to use the electric engine, as traditional, non-hybrid models of each of the Class Vehicles are available and significantly lower in cost. In exchange, Defendant provided Plaintiff and the Minnesota State Class members with defective Vehicles that cannot use the electric-only operation mode for significant periods of time while the FORM cycle is engaged.

460.    Defendant enjoyed the benefit of increased financial gains, to the detriment of Plaintiff and the Minnesota State Class members, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Defendant retain these wrongfully obtained profits.

461.    Plaintiff, therefore, seeks an order establishing Defendant as constructive trustee of the profits unjustly obtained, plus interest.

## H.    Claims Brought on Behalf of the Missouri Class

### COUNT THIRTY-TWO — VIOLATION OF MISSOURI MERCHANDISING PRACTICES ACT
### (MO. REV. STAT. § 407.010, *ET SEQ.*)

462.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

463.    Plaintiff Taylor (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the Missouri State Class against Defendant FCA.

464.    Plaintiff, Defendant, and the Missouri State Class are "persons" within the meaning of Mo. Rev. Stat. § 407.010(5).

465.    Defendant is engaged in "trade" or "commerce" within the meaning of Mo. Rev. Stat. § 407.010(7).

466.    The Missouri Merchandising Practices Act ("Missouri MPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise." Mo. Rev. Stat. § 407.020.

467.    In the course of their business, Defendant violated the Missouri MPA. As detailed above, they willfully failed to disclose the FORM Defect with the intent that consumers rely on that failure to disclose in deciding whether to purchase a Class Vehicle. By failing to disclose the FORM Defect while advertising the Class Vehicles as hybrid vehicles capable of driving up to 21 miles using only the electric engine, Defendant engaged in the following unfair or deceptive acts or practices prohibited by Mo. Rev. Stat. § 407.020: using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Class Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

468.    Defendant's failure to disclose of the true characteristics of the FORM Defect and its effect on the electric-only driving mode were material to Plaintiff and the Missouri State Class, as Defendant intended. Had they known the truth, Plaintiff and the Missouri State Class would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

469.    Plaintiff and Missouri State Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had failed to disclose. Plaintiff and Missouri State Class members did not, and could not, unravel Defendant's deception on their own.

470.    Defendant had an ongoing duty to Plaintiff and the Missouri State Class to refrain from

unfair and deceptive practices under the Missouri MPA in the course of their business. Specifically, Defendant owed Plaintiff and Missouri State Class members a duty to disclose all the material facts concerning the FORM system and Defect because they possessed exclusive knowledge, they failed to disclose it from Plaintiff and the Missouri State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

471.    Plaintiff and Missouri State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's failure to disclose material information.

472.    Defendant's violations present a continuing risk to Plaintiff and the Missouri State Class, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

473.    Pursuant to Mo. Rev. Stat. § 407.025, Plaintiff and the Missouri State Class seek an order enjoining Defendant's unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the Missouri MPA.

**COUNT THIRTY-THREE — BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
**(MO. REV. STAT. § 400.2-314)**

474.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

475.    Plaintiff Taylor (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the Missouri State Class against Defendant FCA.

476.    Plaintiff and the Missouri State Class members were at all times "buyers" under Mo. Rev. Stat. § 400.2-103(a).

477.    FCA is, and was, at all relevant times a "seller" of motor vehicles under Mo. Rev. Stat. § 400.2-103(d) and a "merchant" with respect to motor vehicles under Mo. Rev. Stat. § 400.2-104(1).

478.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Mo. Rev. Stat. § 400.2-105(1).

479.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Mo. Rev. Stat. § 400.2-314.

480.     FCA impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, inter alia, the following: (i) a warranty that the Class Vehicles were manufactured, supplied, distributed, and/or sold by FCA were reliable for providing transportation using the electric-only driving mode; and (ii) a warranty that the Class Vehicles would be fit for their intended use—providing reliable transportation using the electric-only driving mode—while the Class Vehicles were being operated.

481.     FCA breached the implied warranty of merchantability in that the Class Vehicles were not in merchantable condition when they were sold to Plaintiff and the Missouri State Class members and said vehicles were and are unfit for the ordinary purposes for which such vehicles are used because the electric-only driving mode is unreliable due to the FORM Defect.

482.     FCA has been provided notice of these issues by numerous complaints, as alleged herein.

483.     As a direct and proximate result of breaches of the implied warranty of merchantability, Plaintiff and the Missouri State Class members have suffered damages, including but not limited to incidental and consequential damages.

**COUNT THIRTY-FOUR — FRAUD BY OMISSION**

484.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

485.     Plaintiff Taylor (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the Missouri State Class against Defendant FCA.

486.     Defendant made material omissions concerning a presently existing or past fact in that, for example, Defendant did not fully and truthfully disclose to its customers the true nature of the FORM defect, which in many cases could not be discovered until years after the Class Vehicles were purchased or leased. These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase.

487.     Defendant had a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One

who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

488.     In addition, Defendant had a duty to disclose these omitted material facts because they were known and/or accessible only to Defendant, who had superior knowledge and access to the facts and Defendant knew that those facts were not known to or reasonably discoverable by Plaintiff and the Missouri State Class members. These omitted facts were material because they directly impact the reliability of the Class Vehicles.

489.     Defendant was in exclusive control of the material facts and such facts were not known to the public or the Missouri State Class members. Defendant also possessed exclusive knowledge of the FORM defect rendering Class Vehicles inherently more unreliable than similar vehicles.

490.     Defendant failed to disclose these material facts, in whole or in part, with the intent to induce Plaintiff and the Missouri State Class members to purchase the Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

491.     Plaintiff and the Missouri State Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the omitted facts. The actions of Plaintiff and the Missouri State Class members were justified.

492.     Plaintiff and the Missouri State Class members reasonably relied on these omissions and suffered damages as a result.

493.     As a result of these omissions, Plaintiff and the Missouri State Class members incurred damages including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished intrinsic value of their Class Vehicles.

494.     Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiff and the Missouri State Class members. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### COUNT THIRTY-FIVE — UNJUST ENRICHMENT

495.     Plaintiffs and the Class incorporate by reference each preceding and succeeding

paragraph as though fully set forth at length herein.

496.    Plaintiff Taylor (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the Missouri State Class against Defendant FCA.

497.    Plaintiff and the Missouri State Class members paid Defendant the value of non-defective, fully operational Class Vehicles with the ability to operate only using the electric engine for up to 21 miles. Plaintiff and the Missouri State Class members paid a premium to be able to use the electric engine, as traditional, non-hybrid models of each of the Class Vehicles are available and significantly lower in cost. In exchange, Defendant provided Plaintiffs and the Missouri State Class members with defective Vehicles that cannot use the electric-only operation mode for significant periods of time while the FORM cycle is engaged.

498.    Defendant enjoyed the benefit of increased financial gains, to the detriment of Plaintiff and the Missouri State Class members, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Defendant retain these wrongfully obtained profits.

499.    Plaintiff, therefore, seeks an order establishing Defendant as constructive trustee of the profits unjustly obtained, plus interest.

## I.    Claims Brought on Behalf of the Nebraska State Class

### COUNT THIRTY-SIX — VIOLATION OF THE NEBRASKA CONSUMER PROTECTION ACT
### (NEB. REV. STAT.  §  59-1601, *ET SEQ.*)

500.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

501.    Plaintiff Berner (for the purpose of this section, "Plaintiff") brings this action on behalf of herself and the Nebraska State Class against Defendant FCA.

502.    FCA, Plaintiffs, and the Nebraska State Class members are "persons" within the meaning of Neb. Rev. Stat. § 59-1601(1).

503.    FCA is engaged in "trade" or "commerce" within the meaning of Neb. Rev. Stat. § 59-1601(2).

504.    The Nebraska Consumer Protection Act ("Nebraska CPA") makes unlawful "unfair or

deceptive acts or practices in the conduct of any trade or commerce." Neb. Rev. Stat. § 59-1602.

505.   In the course of their business, Defendant FCA, through its agents, employees, and/or subsidiaries, violated the Nebraska CPA. As detailed above, it willfully failed to disclose the FORM Defect with the intent that consumers rely on that failure to disclose in deciding whether to purchase a Class Vehicle. By failing to disclose the FORM Defect while advertising the Class Vehicles as hybrid vehicles capable of driving up to 21 miles using only the electric engine, Defendant engaged in one or more of the following unfair or deceptive acts or practices as prohibited by Neb. Rev. Stat. § 59-1602:

> A.   Representing that the Class Vehicles have approval, characteristics, uses, or benefits that they do not have;

> B.   Representing that the Class Vehicles are of a particular standard, quality and grade when they are not;

> C.   Advertising the Class Vehicles with the intent not to sell or lease them as advertised; and/or

> D.   Failing to disclose material information concerning the Class Vehicles known to Defendant at the time of advertisement or sale, with the intention of inducing Plaintiffs and Class members to purchase or lease the vehicles.

506.   Defendant's failure to disclose the true characteristics of the FORM Defect were material to Plaintiff and the Nebraska State Class, as Defendant intended. Had they known the truth, Plaintiff and the Nebraska State Class would not have purchased or leased the Class Vehicles, or—if the Class Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them.

507.   Plaintiff and the Nebraska State Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had failed to disclose, until the FORM Defect manifested in their Vehicles. Plaintiff and the Nebraska State Class members did not, and could not, unravel Defendant's deception on their own.

508.   Defendant had an ongoing duty to Plaintiff and the Nebraska State Class to refrain from unfair and deceptive practices under the Nebraska CPA in the course of their business. Specifically,

Defendant owed Plaintiff and Nebraska State Class members a duty to disclose all the material facts concerning the FORM Defect because they possessed exclusive knowledge and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

509.     Plaintiff and Nebraska State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's concealment, misrepresentations, and/or failure to disclose material information.

510.     Defendant's violations present a continuing risk to Plaintiffs and the Nebraska State Class, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

511.     Pursuant to Neb. Rev. Stat. § 59-1609, Plaintiff and the Nebraska State Class seek an order enjoining Defendant's unfair and/or deceptive acts or practices, and awarding damages and any other just and proper relief available under the Nebraska CPA.

## COUNT THIRTY-SEVEN — BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

512.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

513.     Plaintiff Berner (for the purpose of this section, "Plaintiff") brings this action on behalf of herself and the Nebraska State Class against Defendant FCA.

514.     FCA, Plaintiff, and the Nebraska State Class are all "persons" within the meaning of Neb. Rev. Stat. § 1-201(27).

515.     FCA is a "merchant" with respect to motor vehicles within the meaning of Neb. Rev. Stat. § 2-104(1).

516.     Pursuant to Neb. Rev. Stat. § 2-314(1), a warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.

517.     The Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that the FORM Defect causes the Vehicles to lose the ability to use the electric motor more frequently and for more significant periods of time than disclosed.

518.     Privity is not required in this case because Plaintiff and the Nebraska State Class are intended third-party beneficiaries of contracts between FCA and its dealers; specifically, they are the intended beneficiaries of FCA's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

519.     FCA was provided notice of the FORM Defect, as alleged herein, by the numerous complaints filed against it, and the instant Complaint, within a reasonable amount of time after the defect was discovered. FCA's knowledge of the FORM Defect is further supported by its revision to the 2022 owners' manual, which was revised to acknowledge that the FORM cycle can last for up to 2.5 hours.[39]

520.     As a direct and proximate result of FCA's breach of the warranties of merchantability, Plaintiff and the Nebraska State Class members have been damaged in an amount to be proven at trial.

## COUNT THIRTY-EIGHT — FRAUD BY OMISSION

521.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

522.     Plaintiff Berner (for the purpose of this section, "Plaintiff") brings this action on behalf of herself and the Nebraska State Class against Defendant FCA.

523.     Defendant made material omissions concerning a presently existing or past fact in that, for example, Defendant did not fully and truthfully disclose to its customers the true nature of the FORM defect, which in many cases could not be discovered until years after the Class Vehicles were purchased or leased. These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase.

524.     Defendant had a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is

---

[39] See supra ¶ 58.

fraud.

525. In addition, Defendant had a duty to disclose these omitted material facts because they were known and/or accessible only to Defendant, who had superior knowledge and access to the facts and knew that those facts were not known to or reasonably discoverable by Plaintiff and the Nebraska State Class members. These omitted facts were material because they directly impact the reliability of the Class Vehicles.

526. Defendant was in exclusive control of the material facts and such facts were not known to the public or the Nebraska State Class members. Defendant also possessed exclusive knowledge of the FORM defect rendering Class Vehicles inherently more unreliable than similar vehicles.

527. Defendant failed to disclose these material facts, in whole or in part, with the intent to induce Plaintiff and the Nebraska State Class members to purchase the Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

528. Plaintiff and the Nebraska State Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the omitted facts. The actions of Plaintiff and the Nebraska State Class members were justified.

529. Plaintiff and the Nebraska State Class members reasonably relied on these omissions and suffered damages as a result.

530. As a result of these omissions, Plaintiff and the Nebraska State Class members incurred damages including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished intrinsic value of their Class Vehicles.

531. Defendant's acts were done maliciously, oppressively, deliberately, and in reckless disregard of the rights of Plaintiff and the Nebraska State Class members. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT THIRTY-NINE — UNJUST ENRICHMENT**

532. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

533.    Plaintiff Berner (for the purpose of this section, "Plaintiff") brings this action on behalf of hersefl and the Nebraska State Class against Defendant FCA.

534.    Plaintiff and the Nebraska State Class members paid Defendant the value of non-defective, fully operational Class Vehicles with the ability to operate only using the electric engine for up to 21 miles. Plaintiff and the Nebraska State Class members paid a premium to be able to use the electric engine, as traditional, non-hybrid models of each of the Class Vehicles are available and significantly lower in cost. In exchange, Defendant provided Plaintiffs and the Nebraska State Class members with defective Vehicles that cannot use the electric-only operation mode for significant periods of time while the FORM cycle is engaged.

535.    Defendant enjoyed the benefit of increased financial gains, to the detriment of Plaintiff and the Nebraska State Class members, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Defendant retain these wrongfully obtained profits.

536.    Plaintiff, therefore, seeks an order establishing Defendant as constructive trustees of the profits unjustly obtained, plus interest.

**J.    Claims Brought on Behalf of the New Hampshire Class**

### COUNT FORTY — VIOLATION OF N.H.
### CONSUMER PROTECTION ACT
### (N.H. REV. STAT. ANN. § 358-A:1, *ET SEQ.*)

537.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

538.    Plaintiff Monheit (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the New Hampshire State Class against Defendant FCA.

539.    Plaintiff, Defendant, and the New Hampshire State Class members are "persons" within the meaning of N.H. Rev. Stat. § 358-A:1.

540.    Defendant is engaged in "trade" or "commerce" within the meaning of N.H. Rev. Stat. § 358-A:1.

541.    The New Hampshire Consumer Protection Act ("New Hampshire CPA") makes unfair or deceptive trade practices unlawful. N.H. Rev. Stat. Ann. § 358-A:2.

542. In the course of their business, Defendant violated the New Hampshire CPA. As detailed in the common law fraud allegations, FCA willfully failed to disclose the FORM Defect with the intent that consumers rely on that failure to disclose in deciding whether to purchase a Class Vehicle. By failing to disclose the FORM Defect while advertising the Class Vehicles as hybrid vehicles capable of driving up to 21 miles using only the electric engine, and by marketing, offering for sale, and selling the defective Class Vehicles, Defendant engaged in one or more of the following unfair or deceptive acts or practices as defined in N.H. Rev. Stat. § 358-A:2:

        A. Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Class Vehicles;

        B. Representing that the Class Vehicles have approval, characteristics, uses, or benefits that they do not have;

        C. Representing that the Class Vehicles are of a particular standard, quality and grade when they are not; and/or

        D. Advertising the Class Vehicles with the intent not to sell or lease them as advertised.

543. Defendant's failure to disclose of the true characteristics of the FORM Defect were material to Plaintiff and the New Hampshire State Class, as Defendant intended. Had they known the truth, Plaintiff and the New Hampshire State Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

544. Plaintiff and the New Hampshire State Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had failed to disclose. Plaintiff and the New Hampshire State Class members did not, and could not, unravel Defendant's deception on their own.

545. Defendant had an ongoing duty to Plaintiff and the New Hampshire State Class to refrain from unfair and deceptive practices under the New Hampshire CPA in the course of their business. Specifically, Defendant owed Plaintiff and the New Hampshire State Class members a duty to disclose all the material facts concerning the FORM Defect because they possessed exclusive

knowledge, they failed to disclose it from Plaintiff and the New Hampshire State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

546.     Plaintiff and the New Hampshire State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's concealment, misrepresentations, and/or failure to disclose material information.

547.     Defendant's violations present a continuing risk to Plaintiff and the New Hampshire State Class, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

548.     Pursuant to N.H. Rev. Stat. § 358-A:10, Plaintiff and the New Hampshire State Class seek an order enjoining Defendant's unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the New Hampshire CPA.

## COUNT FORTY-ONE — BREACH OF THE IMPLIED WARRANTY
### OF MERCHANTABILITY
### (N.H. REV. STAT. ANN. § 382-A:2-314)

549.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

550.     Plaintiff Monheit (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the New Hampshire State Class against Defendant FCA.

551.     FCA is, and was, at all relevant times a "merchant" with respect to motor vehicles under N.H. Rev. Stat. Ann. § 382-A:2-104(1) and a "seller" of motor vehicles under N.H. Rev. Stat. Ann. § 382-A:2-103(1).

552.     The Class Vehicles are and were at all relevant times "goods" within the meaning of N.H. Rev. Stat. Ann. § 382-A:2-105.

553.     A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.H. Rev. Stat. Ann. § 382-A:2-314.

554.     FCA impliedly warranted that the Class Vehicles were of merchantable quality and fit

for such use. This implied warranty included, inter alia, the following: (i) a warranty that the Class Vehicles were manufactured, supplied, distributed, and/or sold by FCA were reliable for providing transportation using the electric-only driving mode; and (ii) a warranty that the Class Vehicles would be fit for their intended use—providing reliable transportation using the electric-only driving mode—while the Class Vehicles were being operated.

555.     FCA breached the implied warranty of merchantability in that the Class Vehicles were not in merchantable condition when they were sold to Plaintiff and New Hampshire State Class members and said vehicles were and are unfit for the ordinary purposes for which such vehicles are used because the electric-only driving mode is unreliable due to the FORM Defect.

556.     FCA has been provided notice of these issues by numerous complaints, as alleged herein.

557.     As a direct and proximate result of breaches of the implied warranty of merchantability, Plaintiff and the New Hampshire State Class members have suffered damages, including but not limited to incidental and consequential damages.

## COUNT FORTY-TWO — FRAUD BY OMISSION

558.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

559.     Plaintiff Monheit (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the New Hampshire State Class against Defendant FCA.

560.     Defendant made material omissions concerning a presently existing or past fact in that, for example, Defendant did not fully and truthfully disclose to its customers the true nature of the FORM Defect, which in many cases could not be discovered until years after the Class Vehicles were purchased or leased. These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase.

561.     Defendant had a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is

fraud.

562.    In addition, Defendant had a duty to disclose these omitted material facts because they were known and/or accessible only to Defendant, who had superior knowledge and access to the facts and Defendant knew that those facts were not known to or reasonably discoverable by Plaintiff and the New Hampshire State Class members. These omitted facts were material because they directly impact the reliability of the Class Vehicles.

563.    Defendant were in exclusive control of the material facts and such facts were not known to the public or the New Hampshire State Class members. Defendant also possessed exclusive knowledge of the FORM defect rendering Class Vehicles inherently more unreliable than similar vehicles.

564.    Defendant failed to disclose these material facts, in whole or in part, with the intent to induce Plaintiff and the New Hampshire State Class members to purchase the Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

565.    Plaintiff and the New Hampshire State Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the omitted facts. The actions of Plaintiff and the New Hampshire State Class members were justified.

566.    Plaintiff and the New Hampshire State Class members reasonably relied on these omissions and suffered damages as a result.

567.    As a result of these omissions, Plaintiff and the New Hampshire State Class members incurred damages including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished intrinsic value of their Class Vehicles.

568.    Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiff and the New Hampshire State Class members. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### COUNT FORTY-THREE —  UNJUST ENRICHMENT

569.    Plaintiffs and the Class incorporate by reference each preceding and succeeding

paragraph as though fully set forth at length herein.

570.    Plaintiff Monheit (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the New Hampshire State Class against Defendant FCA.

571.    Plaintiff and the New Hampshire State Class members paid Defendant the value of non-defective, fully operational Class Vehicles with the ability to operate only using the electric engine for up to 21 miles. Plaintiff and the New Hampshire State Class members paid a premium to be able to use the electric engine, as traditional, non-hybrid models of each of the Class Vehicles are available and significantly lower in cost. In exchange, Defendant provided Plaintiffs and the New Hampshire State Class members with defective Vehicles that cannot use the electric-only operation mode for significant periods of time while the FORM cycle is engaged.

572.    Defendant enjoyed the benefit of increased financial gains, to the detriment of Plaintiff and the New Hampshire State Class members, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Defendant retain these wrongfully obtained profits.

573.    Plaintiff, therefore, seeks an order establishing Defendant as constructive trustee of the profits unjustly obtained, plus interest.

**K.    Claims Brought on Behalf of the New Jersey State Class**

**COUNT FORTY-FOUR — VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT**
**(N.J. STAT. ANN. § 56:8-1, *ET SEQ.*)**

574.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

575.    Plaintiff Fr. Nevitt (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the New Jersey State Class against Defendant FCA.

576.    FCA, Plaintiff, and the New Jersey State Class members are "persons" within the meaning of N.J. Stat. Ann. § 56:8-1(d).

577.    FCA is engaged in "sales" of "merchandise" within the meaning of N.J. Stat. Ann. § 56:8-1(c), (e).

578.    The New Jersey Consumer Fraud Act ("New Jersey CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false

pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby…" N.J. Stat. Ann. § 56:8-2.

579.    In the course of their business, Defendant FCA, through its agents, employees, and/or subsidiaries, violated the New Jersey CFA. As detailed above, it willfully failed to disclose the FORM Defect with the intent that consumers rely on that failure to disclose in deciding whether to purchase a Class Vehicle. By failing to disclose the FORM Defect while advertising the Class Vehicles as hybrid vehicles capable of driving up to 21 miles using only the electric engine, Defendant engaged in the following unfair or deceptive acts or practices as prohibited by N.J. Stat. Ann. § 56:8-2: using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Class Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

580.    Defendant's failure to disclose the true characteristics of the FORM Defect were material to Plaintiff and the New Jersey State Class, as Defendant intended. Had they known the truth, Plaintiff and the New Jersey State Class would not have purchased or leased the Class Vehicles, or—if the Class Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them.

581.    Plaintiff and the New Jersey State Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had failed to disclose, until the FORM Defect manifested in their Vehicles. Plaintiff and the New Jersey State Class members did not, and could not, unravel Defendant's deception on their own.

582.    Defendant had an ongoing duty to Plaintiff and the New Jersey State Class to refrain from unfair and deceptive practices under the New Jersey CFA in the course of their business. Specifically, Defendant owed Plaintiff and New Jersey State Class members a duty to disclose all the

material facts concerning the FORM Defect because they possessed exclusive knowledge and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

583.    Plaintiff and New Jersey State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's concealment, misrepresentations, and/or failure to disclose material information.

584.    Defendant's violations present a continuing risk to Plaintiff and the New Jersey State Class, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

585.    Pursuant to N.J. Stat. Ann. § 56:8-19, Plaintiff and the New Jersey State Class seek an order enjoining Defendant's unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the New Jersey CFA.

### COUNT FORTY-FIVE — BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

586.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

587.    Plaintiff Fr. Nevitt (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the New Jersey State Class against Defendant FCA.

588.    FCA, Plaintiff, and the New Jersey State Class are all "persons" within the meaning of N.J. Stat. Ann. § 12A:1-201(27).

589.    FCA is a "merchant" with respect to motor vehicles within the meaning of N.J. Stat. Ann. § 12A:2-104(1).

590.    Pursuant to N.J. Stat. Ann. § 12A:2-314, a warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.

591.    The Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that the FORM Defect causes the Vehicles to lose the ability to use the electric motor more frequently and for more significant periods of time than disclosed.

592.     Privity is not required in this case because Plaintiff and the New Jersey State Class are intended third-party beneficiaries of contracts between FCA and its dealers; specifically, they are the intended beneficiaries of FCA's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

593.     FCA was provided notice of the FORM Defect, as alleged herein, by the numerous complaints filed against it, and the instant Complaint, within a reasonable amount of time after the defect was discovered. FCA's knowledge of the FORM Defect is further supported by its revision to the 2022 owners' manual, which was revised to acknowledge that the FORM cycle can last for up to 2.5 hours.[40]

594.     As a direct and proximate result of FCA's breach of the warranties of merchantability, Plaintiff and the New Jersey State Class members have been damaged in an amount to be proven at trial.

## COUNT FORTY-SIX — FRAUD BY OMISSION

595.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

596.     Plaintiff Fr. Nevitt (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the New Jersey State Class against Defendant FCA.

597.     Defendant made material omissions concerning a presently existing or past fact in that, for example, Defendant did not fully and truthfully disclose to its customers the true nature of the FORM defect, which in many cases could not be discovered until years after the Class Vehicles were purchased or leased. These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase.

598.     Defendant had a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One

---

[40] *See supra* ¶ 58.

who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

599.    In addition, Defendant had a duty to disclose these omitted material facts because they were known and/or accessible only to Defendant, who had superior knowledge and access to the facts and Defendant knew that those facts were not known to or reasonably discoverable by Plaintiff and the New Jersey State Class members. These omitted facts were material because they directly impact the reliability of the Class Vehicles.

600.    Defendant was in exclusive control of the material facts and such facts were not known to the public or the New Jersey State Class members. Defendant also possessed exclusive knowledge of the FORM defect rendering Class Vehicles inherently more unreliable than similar vehicles.

601.    Defendant failed to disclose these material facts, in whole or in part, with the intent to induce Plaintiff and the New Jersey State Class members to purchase the Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

602.    Plaintiff and the New Jersey State Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the omitted facts. The actions of Plaintiff and the New Jersey State Class members were justified.

603.    Plaintiff and the New Jersey State Class members reasonably relied on these omissions and suffered damages as a result.

604.    As a result of these omissions, Plaintiff and the New Jersey State Class members incurred damages including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished intrinsic value of their Class Vehicles.

605.    Defendant's acts were done maliciously, oppressively, deliberately, and in reckless disregard of the rights of Plaintiff and the New Jersey State Class members. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### COUNT FORTY-SEVEN — UNJUST ENRICHMENT

606.    Plaintiffs and the Class incorporate by reference each preceding and succeeding

paragraph as though fully set forth at length herein.

607.    Plaintiff Fr. Nevitt (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the New Jersey State Class against Defendant FCA.

608.    Plaintiff and the New Jersey State Class members paid Defendant the value of non-defective, fully operational Class Vehicles with the ability to operate only using the electric engine for up to 21 miles. Plaintiff and the New Jersey State Class members paid a premium to be able to use the electric engine, as traditional, non-hybrid models of each of the Class Vehicles are available and significantly lower in cost. In exchange, Defendant provided Plaintiffs and the New Jersey State Class members with defective Vehicles that cannot use the electric-only operation mode for significant periods of time while the FORM cycle is engaged.

609.    Defendant enjoyed the benefit of increased financial gains, to the detriment of Plaintiff and the New Jersey State Class members, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Defendant to retain these wrongfully obtained profits.

610.    Plaintiff, therefore, seeks an order establishing Defendant as constructive trustee of the profits unjustly obtained, plus interest.

**L.    Claims Brought on Behalf of the New York Class**

**COUNT FORTY-EIGHT — VIOLATIONS OF NEW YORK**
**GENERAL BUSINESS LAW § 349**
**(N.Y. GEN. BUS. LAW § 349)**

611.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

612.    Plaintiff Erskine and Plaintiff Koss (for purposes of this section, "Plaintiffs") bring this claim on behalf of themselves and on behalf of the New York State Class against Defendant FCA.

613.    Plaintiffs, Defendant, and the New York State Class members are "persons" within the meaning of the New York General Business Law ("GBL"). N.Y. Gen. Bus. Law § 349(h).

614.    Under GBL section 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce" are unlawful. N.Y. Gen. Bus. Law § 349.

92
AMENDED CLASS ACTION
COMPLAINT

615.    In the course of Defendant's business, they willfully failed to disclose the FORM Defect with the intent that consumers rely on that failure to disclose in deciding whether to purchase a Class Vehicle.

616.    By failing to disclose the FORM Defect while advertising the Class Vehicles as hybrid vehicles capable of driving up to 21 miles using only the electric engine, Defendant engaged in deceptive acts or practices in violation of GBL section 349.

617.    Defendant's deceptive acts or practices were materially misleading. Defendant's conduct was likely to and did deceive reasonable consumers, including Plaintiff and members of the New York State Class, about the Class Vehicles' true performance and value.

618.    Plaintiffs and members of the New York State Class were unaware of, and lacked a reasonable means of discovering, the material facts Defendant omitted.

619.    Defendant's misleading conduct concerns the reliability of widely purchased consumer products and affects the public interest.

620.    Defendant's actions set forth above occurred in the conduct of its business, trade, or commerce.

621.    Plaintiffs and members of the New York State Class suffered ascertainable loss as a direct and proximate result of Defendant's GBL violations. Plaintiffs and members of the New York State Class overpaid for their Class Vehicles, and their Class Vehicles suffered a diminution in value resulting from the FORM Defect. These injuries are the direct and natural consequence of Defendant's material misrepresentations and omissions.

622.    Plaintiffs and members of the New York State Class request that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing their unfair and deceptive practices. Under the GBL, Plaintiffs and members of the New York State Class are entitled to recover their actual damages or $50, whichever is greater. Additionally, because Defendant acted willfully or knowingly, Plaintiffs and members of the New York State Class are entitled to recover three times their actual damages. Plaintiffs are also entitled to reasonable attorneys' fees. N.Y. Gen. Bus. Law § 349(h).

**COUNT FORTY-NINE — VIOLATIONS OF NEW YORK
GENERAL BUSINESS LAW § 350
(N.Y. GEN. BUS. LAW § 350)**

623.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

624.    Plaintiff Erskine and Plaintiff Koss (for purposes of this section, "Plaintiffs") bring this claim on behalf of themselves and on behalf of the New York State Class against Defendant FCA.

625.    GBL section 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce…." N.Y. Gen. Bus. Law § 350. False advertising includes "advertising, including labeling, of a commodity…if such advertising is misleading in a material respect," taking into account "not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity…to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual." N.Y. Gen. Bus. Law § 350-a.

626.    Defendant caused or made to be disseminated through New York, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiffs and other members of the New York State Class.

627.    Defendant violated GBL Section 350 because the omissions regarding the FORM Defect were material and deceived reasonable consumers, including Plaintiffs and members of the New York State Class, about the true performance and value of the Class Vehicles.

628.    Plaintiffs and members of the New York State Class suffered ascertainable loss as a direct and proximate result of Defendant's violations. In purchasing or leasing their Class Vehicles, Plaintiffs and members of the New York State Class relied on Defendant's representations and omissions with respect to electric-only performance, reliability, and value of the Class Vehicles. Defendant's representations turned out to be untrue because the Class Vehicles are unable to utilize the electric-only driving mode for significant periods of time due to the FORM Defect. Had Plaintiffs or

members of the New York State Class known this, they would not have purchased or leased their Class Vehicles or would have paid less money for them.

629.   Plaintiffs and members of the New York State Class overpaid for their Class Vehicles and their Class Vehicles suffered a diminution in value resulting from the FORM defect. These injuries are the direct and natural consequence of Defendant's material misrepresentations and omissions.

630.   Plaintiffs and members of the New York State Class request that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing its unfair, unlawful, and deceptive practices of false advertising. Under the GBL, Plaintiffs and members of the New York State Class are entitled to recover their actual damages or $500, whichever is greater. Additionally, because Defendant acted willfully or knowingly, Plaintiffs and members of the New York State Class are entitled to recover three times their actual damages, up to $10,000. Plaintiffs are entitled to reasonable attorneys' fees. N.Y. Gen. Bus. Law § 350-e.

### COUNT FIFTY — BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (N.Y. U.C.C. LAW §§ 2-314 AND 2A-212)

631.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

632.   Plaintiff Erskine and Plaintiff Koss (for purposes of this section, "Plaintiffs") bring this claim on behalf of themselves and on behalf of the New York State Class against Defendant FCA.

633.   FCA is, and was, at all relevant times a "merchant" with respect to motor vehicles under N.Y. UCC Law § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

634.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.Y. UCC Law §§ 2-105(1) and 2A-103(1)(h).

635.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.Y. UCC Law §§ 2-314 and 2A-212.

636.   FCA impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, inter alia, the following: (i) a warranty that the Class

Vehicles were manufactured, supplied, distributed, and/or sold by FCA were reliable for providing transportation using the electric-only driving mode; and (ii) a warranty that the Class Vehicles would be fit for their intended use—providing reliable transportation using the electric-only driving mode—while the Class Vehicles were being operated.

637.　FCA breached the implied warranty of merchantability in that the Class Vehicles were not in merchantable condition when they were sold to Plaintiff and New York State Class members and said vehicles were and are unfit for the ordinary purposes for which such vehicles are used because the electric-only driving mode is unreliable due to the FORM Defect.

638.　FCA has been provided notice of these issues by numerous complaints, as alleged herein.

639.　As a direct and proximate result of breaches of the implied warranty of merchantability, Plaintiffs and the New York State Class members have suffered damages, including but not limited to incidental and consequential damages.

## COUNT FIFTY-ONE — FRAUD BY OMISSION

640.　Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

641.　Plaintiff Erskine and Plaintiff Koss (for purposes of this section, "Plaintiffs") bring this claim on behalf of themselves and on behalf of the New York State Class against Defendant FCA.

642.　Defendant made material omissions concerning a presently existing or past fact in that, for example, Defendant did not fully and truthfully disclose to its customers the true nature of the FORM defect, which in many cases could not be discovered until years after the Class Vehicles were purchased or leased. These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase.

643.　Defendant had a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

644. In addition, Defendant had a duty to disclose these omitted material facts because they were known and/or accessible only to Defendant, who had superior knowledge and access to the facts and knew that those facts were not known to or reasonably discoverable by Plaintiffs and the New York State Class members. These omitted facts were material because they directly impact the reliability of the Class Vehicles.

645. Defendant were in exclusive control of the material facts and such facts were not known to the public or the New York State Class members. Defendant also possessed exclusive knowledge of the FORM defect rendering Class Vehicles inherently more unreliable than similar vehicles.

646. Defendant failed to disclose these material facts, in whole or in part, with the intent to induce Plaintiffs and the New York State Class members to purchase the Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

647. Plaintiffs and the New York State Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the omitted facts. The actions of Plaintiffs and the New York State Class members were justified.

648. Plaintiffs and the New York State Class members reasonably relied on these omissions and suffered damages as a result.

649. As a result of these omissions, Plaintiffs and the New York State Class members incurred damages including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished intrinsic value of their Class Vehicles.

650. Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiffs and the New York State Class members. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT FIFTY-TWO — UNJUST ENRICHMENT**

651. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

652. Plaintiff Erskine and Plaintiff Koss (for purposes of this section, "Plaintiffs") bring this

claim on behalf of themselves and on behalf of the New York State Class against Defendant FCA.

653.     Plaintiffs and the New York State Class members paid Defendant the value of non-defective, fully operational Class Vehicles with the ability to operate only using the electric engine for up to 21 miles. Plaintiffs and the New York State Class members paid a premium to be able to use the electric engine, as traditional, non-hybrid models of each of the Class Vehicles are available and significantly lower in cost. In exchange, Defendant provided Plaintiffs and the New York State Class members with defective Vehicles that cannot use the electric-only operation mode for significant periods of time while the FORM cycle is engaged.

654.     Defendant enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and the New York State Class members, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Defendant retain these wrongfully obtained profits.

655.     Plaintiffs, therefore, seek an order establishing Defendant as constructive trustee of the profits unjustly obtained, plus interest.

**M.     Claims Brought on Behalf of the Oklahoma State Class**

**COUNT FIFTY-THREE — VIOLATION OF OKLAHOMA CONSUMER PROTECTION ACT**
**(OKLA. STAT. TIT. 15  §  751, *ET SEQ.*)**

656.     Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

657.     Plaintiff Berner (for the purpose of this section, "Plaintiff") brings this action on behalf of herself and the Oklahoma State Class against Defendant FCA.

658.     FCA, Plaintiff, and the Oklahoma State Class members are "persons" within the meaning of Okla. Stat. Tit. 15 § 752.1.

659.     At all relevant times, FCA is and was engaged in "the course of business" within the meaning of Okla. Stat. Tit. 15 § 753.

660.     The Oklahoma Consumer Protection Act ("Oklahoma CPA") prohibits numerous unlawful acts, including misleading representations, false advertisements, and false statements. Okla. Stat. Tit. 15 § 753.

661.     In the course of its business, FCA, through its agents, employees, and/or subsidiaries, violated the Oklahoma CPA. As detailed above, FCA willfully failed to disclose the FORM Defect with the intent that consumers rely on that failure to disclose in deciding whether to purchase a Class Vehicle. By failing to disclose the FORM Defect while advertising the Class Vehicles as hybrid vehicles capable of driving up to 21 miles using only the electric engine, Defendant engaged in one or more of the following unfair or deceptive acts or practices as defined in Okla. Stat. Tit. 15 § 753:

A.     Representing that the Class Vehicles have approval, characteristics, uses, or benefits that they do not have;

B.     Representing that the Class Vehicles are of a particular standard, quality and grade when they are not;

C.     Advertising the Class Vehicles with the intent not to sell or lease them as advertised; and/or

D.     Failing to disclose material information concerning the Class Vehicles known to Defendant at the time of advertisement or sale, with the intention of inducing Plaintiffs and Class members to purchase or lease the vehicles.

662.     Defendant's failure to disclose the true characteristics of the FORM Defect were material to Plaintiff and the Oklahoma State Class, as Defendant intended. Had they known the truth, Plaintiff and the Oklahoma State Class would not have purchased or leased the Class Vehicles, or—if the Class Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them.

663.     Plaintiff and the Oklahoma State Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had failed to disclose, until the FORM Defect manifested in their Vehicles. Plaintiff and the Oklahoma State Class members did not, and could not, unravel Defendant's deception on their own.

664.     Defendant had an ongoing duty to Plaintiff and the Oklahoma State Class to refrain from unfair and deceptive practices under the Oklahoma CPA in the course of their business. Specifically, Defendant owed Plaintiff and Oklahoma State Class members a duty to disclose all the

material facts concerning the FORM Defect because it possessed exclusive knowledge and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts

665.    Plaintiff and Oklahoma State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's concealment, misrepresentations, and/or failure to disclose material information.

666.    Defendant's violations present a continuing risk to Plaintiff and the Oklahoma State Class, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

667.    Pursuant to Okla. Stat. Tit. 15 § 761.1, Plaintiff and the Oklahoma State Class seek an order enjoining Defendant's unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the Oklahoma CPA.

### COUNT FIFTY-FOUR — BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

668.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

669.    Plaintiff Berner (for the purpose of this section, "Plaintiff") brings this action on behalf of herself and the Oklahoma State Class against Defendant FCA.

670.    FCA, Plaintiff, and the Oklahoma State Class are all "persons" within the meaning of Okla. Stat. tit. 12A, § 1-201(27).

671.    FCA is a "merchant" with respect to motor vehicles within the meaning of Okla. Stat. tit. 12A, § 2-104(1).

672.    Pursuant to Okla. Stat. tit. 12A, § 2-314, a warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.

673.    The Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that the FORM Defect causes the Vehicles to lose the ability to use the electric motor more frequently and for more significant periods of time than disclosed.

674.    Privity is not required in this case because Plaintiff and the Oklahoma State Class are intended third-party beneficiaries of contracts between FCA and its dealers; specifically, they are the intended beneficiaries of FCA's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

675.    FCA was provided notice of the FORM Defect, as alleged herein, by the numerous complaints filed against it, and the instant Complaint, within a reasonable amount of time after the defect was discovered. FCA's knowledge of the FORM Defect is further supported by its revision to the 2022 owners' manual, which was revised to acknowledge that the FORM cycle can last for up to 2.5 hours.[41]

676.    As a direct and proximate result of FCA's breach of the warranties of merchantability, Plaintiff and the Oklahoma State Class members have been damaged in an amount to be proven at trial.

## COUNT FIFTY-FIVE — FRAUD BY OMISSION

677.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

678.    Plaintiff Berner (for the purpose of this section, "Plaintiff") brings this action on behalf of herself and the Oklahoma State Class against Defendant FCA.

679.    Defendant made material omissions concerning a presently existing or past fact in that, for example, Defendant did not fully and truthfully disclose to its customers the true nature of the FORM defect, which in many cases could not be discovered until years after the Class Vehicles were purchased or leased. These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase.

680.    Defendant had a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is

---

[41] *See supra* ¶ 58.

fraud.

681.    In addition, Defendant had a duty to disclose these omitted material facts because they were known and/or accessible only to Defendant, who had superior knowledge and access to the facts and Defendant knew that those facts were not known to or reasonably discoverable by Plaintiff and the Oklahoma State Class members. These omitted facts were material because they directly impact the reliability of the Class Vehicles.

682.    Defendant was in exclusive control of the material facts and such facts were not known to the public or the Oklahoma State Class members. Defendant also possessed exclusive knowledge of the FORM defect rendering Class Vehicles inherently more unreliable than similar vehicles.

683.    Defendant failed to disclose these material facts, in whole or in part, with the intent to induce Plaintiff and the Oklahoma State Class members to purchase the Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

684.    Plaintiff and the Oklahoma State Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the omitted facts. The actions of Plaintiff and the Oklahoma State Class members were justified.

685.    Plaintiff and the Oklahoma State Class members reasonably relied on these omissions and suffered damages as a result.

686.    As a result of these omissions, Plaintiff and the Oklahoma State Class members incurred damages including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished intrinsic value of their Class Vehicles.

687.    Defendant's acts were done maliciously, oppressively, deliberately, and in reckless disregard of the rights of Plaintiff and the Oklahoma State Class members. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT FIFTY-SIX — UNJUST ENRICHMENT**

688.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

689.     Plaintiff Berner (for the purpose of this section, "Plaintiff") brings this action on behalf of herself and the Oklahoma State Class against Defendant FCA.

690.     Plaintiff and the Oklahoma State Class members paid Defendant the value of non-defective, fully operational Class Vehicles with the ability to operate only using the electric engine for up to 21 miles. Plaintiff and the Oklahoma State Class members paid a premium to be able to use the electric engine, as traditional, non-hybrid models of each of the Class Vehicles are available and significantly lower in cost. In exchange, Defendant provided Plaintiff and the Oklahoma State Class members with defective Vehicles that cannot use the electric-only operation mode for significant periods of time while the FORM cycle is engaged.

691.     Defendant enjoyed the benefit of increased financial gains, to the detriment of Plaintiff and the Oklahoma State Class members, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Defendant to retain these wrongfully obtained profits.

692.     Plaintiff, therefore, seeks an order establishing Defendant as constructive trustee of the profits unjustly obtained, plus interest.

**N.     Claims Brought on Behalf of the Oregon Class**

**COUNT FIFTY-SEVEN — VIOLATIONS OF THE OREGON UNLAWFUL TRADE PRACTICES ACT (OR. REV. STAT. § 646.605 THROUGH 646.656)**

693.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

694.     Plaintiff Lindgren (for purposes of this section, "Plaintiff") brings this claim on behalf of himself and on behalf of the Oregon State Class against Defendant FCA.

695.     Plaintiff and FCA are "persons" under the Oregon Unlawful Trade Practices Act, ORS § 646.605(4).

696.     Plaintiff purchased his Class Vehicles primarily for personal, family or household purposes and thus his Class Vehicle is a "good" under ORS § 646.605(6)(a).

697.     Defendant is and was engaged in "trade" and "commerce" as defined by ORS § 646.605(8).

698.    ORS § 646.607 provides, in relevant part, that a "person engages in an unlawful trade practice if in the course of the person's business, vocation or occupation the person . . . [e]mploys any unconscionable tactic in connection with selling . . . goods or services."

699.    Defendant knew or should have known that the Class Vehicles' electric-only driving mode would be rendered unusable by the FORM Defect, and that the Class Vehicles were thus not suitable for their intended use.

700.    Defendant employed unconscionable tactics in selling the Class Vehicles by not giving Plaintiff and the Oregon State Class members sufficient notice or warning regarding the FORM defect, intending that Plaintiff and the Class rely upon Defendant's omissions when purchasing the Class Vehicles. Plaintiff and the Oregon State Class members were deceived by FCA failing to disclose the FORM Defect.

701.    Defendant also engaged in unlawful and deceptive practices in violation of ORS § 646.608 by representing that the Class Vehicles have characteristics, uses, benefits, quantities and qualities that they do not have (ORS § 646.608(e)); representing that the Class Vehicles are of a particular standard, quality or grade when they are of another (ORS § 646.608(g)); concurrently with tender or delivery of the Class Vehicles, failing to disclose known material defects or material nonconformities (ORS § 646.608(t)); and engaging in other unfair or deceptive conduct (ORS § 646.608(u)).

702.    Defendant also engaged in unlawful and deceptive practices in violation of ORS §§ 646.607 and 646.608 by failing to provide Plaintiffs and Oregon State Class members the full cost to repair the Class Vehicles and cure the FORM Defect.

703.    Defendant knew or should have known that their conduct was a violation of the Oregon Unfair Trade Practices Act, ORS § 646.605–.656, and therefore their conduct was willful. ORS § 646.605(10).

704.    Plaintiff and the Oregon State Class members have suffered an ascertainable loss of money or property as a direct and proximate result of Defendant's willful use or employment of unlawful methods, acts or practices.

705.    Pursuant to ORS § 646.638, Plaintiff and the Oregon State Class members seek an order enjoining Defendant's unfair and/or deceptive practices, actual damages, punitive damages, attorney's fees and costs, and any other just and proper relief available under the Oregon UTPA.

706.    Pursuant to ORS § 646.638(2), Plaintiff will serve the Oregon Attorney General with a copy of this Complaint.

### COUNT FIFTY-EIGHT —  BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (OR. REV. STAT. § 72.8020 *ET. SEQ.*)

707.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

708.    Plaintiff Lindgren (for purposes of this section, "Plaintiff") brings this claim on behalf of himself and on behalf of the Oregon State Class against Defendant FCA.

709.    The Class Vehicles are "consumer goods" as defined in ORS § 72.8010(1).

710.    Plaintiff and the Oregon State Class members are "buyers" and "retail buyers" as defined in ORS § 72.8010(2).

711.    FCA is and was at all relevant times a "manufacturer" as defined in ORS § 72.8010(3) with respect to the Class Vehicles.

712.    Pursuant to ORS § 72.8020, FCA impliedly warranted that the Class Vehicles are fit for the ordinary purposes for which they are used: providing reliable transportation using the electric-only driving mode and hybrid driving mode.

713.    By marketing, advertising, distributing, and selling Class Vehicles with the FORM Defect, FCA breached the implied warranty that the Class Vehicles were merchantable and safe for use as personal transportation.

714.    The FORM Defect was installed in the Class Vehicles at the time they left FCA's manufacturing facilities and at the time they were sold or leased to Plaintiff and the Oregon State Class.

715.    Plaintiff and the Oregon State Class members have performed the duties required of them under the terms of the warranties, except as may have been excused or prevented by FCA's

conduct or by operation of law in light of FCA's unconscionable conduct.

716. FCA received timely notice about the FORM Defect but has failed to rectify the problem and refused to offer an effective remedy.

717. Plaintiff and the Oregon State Class members have had sufficient dealings with FCA or its agents to establish privity of contract. Privity is not required in this case, however, because Plaintiff and the Oregon State Class Members are intended third-party beneficiaries of contracts between FCA and its authorized dealers and are intended beneficiaries of FCA's implied warranties. The dealers were not intended to be the ultimate consumers of Class Vehicles, and the warranties were designed for and intended to benefit the ultimate consumers only.

718. As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiff and the Oregon State Class members suffered economic damage, including loss attributable to the diminished value of the Class Vehicles.

## COUNT FIFTY-NINE — FRAUD BY OMISSION

719. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

720. Plaintiff Lindgren (for purposes of this section, "Plaintiff") brings this claim on behalf of himself and on behalf of the Oregon State Class against Defendant FCA.

721. As set forth above, Defendant failed to disclose material facts concerning the Class Vehicles' electric-only and hybrid capabilities.

722. Defendant failed to disclose these material facts, in whole or in part, with the intent to induce Plaintiff and the Oregon State Class members to purchase the Class Vehicles at a higher price than their true value.

723. Defendant still have not made full and adequate disclosure and continues to defraud Plaintiff and the Oregon State Class members.

724. Plaintiff and the Oregon State Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the omitted facts. Plaintiff and the Oregon State Class's actions were justified. Defendant had exclusive control of the material facts and

such facts were not known to the public, Plaintiff, or the Oregon State Class.

725. As a result of the failure to disclose material facts, Plaintiff and the Oregon State Class members sustained damage. For those of the Oregon State Class who elect to affirm the sale, these damages include the difference between the actual value of that which Plaintiff and the Oregon State Class members paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits. For any Plaintiff or member of the Oregon State Class who wants to rescind their purchases, then such Oregon State Class members are entitled to restitution and consequential damages.

726. Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Oregon State Class's rights and well-being. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT SIXTY — UNJUST ENRICHMENT

727. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

728. Plaintiff Lindgren (for purposes of this section, "Plaintiff") brings this claim on behalf of himself and on behalf of the Oregon State Class against Defendant FCA.

729. Plaintiff and the Oregon State Class members paid Defendant the value of non-defective, fully operational Class Vehicles with the ability to operate only using the electric engine for up to 21 miles. Plaintiffs and the Oregon State Class members paid a premium to be able to use the electric engine, as traditional, non-hybrid models of each of the Class Vehicles are available and significantly lower in cost. In exchange, Defendant provided Plaintiff and the Oregon State Class members with defective Vehicles that cannot use the electric-only operation mode for significant periods of time while the FORM cycle is engaged.

730. Defendant enjoyed the benefit of increased financial gains, to the detriment of Plaintiff and the Oregon State Class members, who paid a higher price for vehicles which actually had lower

values. It would be inequitable and unjust for Defendant to retain these wrongfully obtained profits.

731.   Plaintiff, therefore, seeks an order establishing Defendant as constructive trustee of the profits unjustly obtained, plus interest.

**O.   Claims Brought on Behalf of the Pennsylvania State Class**

**COUNT SIXTY-ONE — VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
(73 PA. STAT. § 201 ET SEQ)**

732.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

733.   Plaintiffs Renee and Joshua Miller (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves and the Pennsylvania State Class against Defendant FCA.

734.   Plaintiffs, the Pennsylvania State Class, and Defendant are "persons" within the meaning of Pa. Stat. § 201-2(2).

735.   FCA is engaged in "trade" or "commerce" within the meaning of 73 Pa. Stat. Ann. § 201-2(3).

736.   The Pennsylvania Unfair Trade Practices Act ("Pennsylvania UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce …." 73 Pa. Stat. Ann. § 201 3.

737.   In the course of its business, Defendant FCA, through its agents, employees, and/or subsidiaries, violated the Pennsylvania UTPA. As detailed above, it willfully failed to disclose the FORM Defect with the intent that consumers rely on that failure to disclose in deciding whether to purchase a Class Vehicle. By failing to disclose the FORM Defect while advertising the Class Vehicles as hybrid vehicles capable of driving up to 21 miles using only the electric engine, Defendant engaged in one or more of the following unfair or deceptive acts or practices in violation of 73 Pa. Stat. Ann. § 201-3:

          A.   Representing that the Class Vehicles have approval, characteristics, uses, or benefits that they do not have;

          B.   Representing that the Class Vehicles are of a particular standard, quality and grade when they are not;

       C.     Advertising the Class Vehicles with the intent not to sell or lease them as advertised; and/or

       D.     Failing to disclose material information concerning the Class Vehicles known to FCA at the time of advertisement or sale, with the intention of inducing Plaintiffs and Class members to purchase or lease the vehicles.

738. Defendant's failure to disclose the true characteristics of the FORM Defect were material to Plaintiff and the Pennsylvania State Class, as Defendant intended. Had they known the truth, Plaintiff and the Pennsylvania State Class would not have purchased or leased the Class Vehicles, or—if the Class Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them.

739. Plaintiffs and the Pennsylvania State Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had failed to disclose, until the FORM Defect manifested in their Vehicles. Plaintiffs and the Pennsylvania State Class members did not, and could not, unravel Defendant's deception on their own.

740. Defendant had an ongoing duty to Plaintiffs and the Pennsylvania State Class to refrain from unfair and deceptive practices under the Pennsylvania UTPA in the course of their business. Specifically, Defendant owed Plaintiffs and the Pennsylvania State Class members a duty to disclose all the material facts concerning the FORM Defect because they possessed exclusive knowledge and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts

741. Plaintiffs and the Pennsylvania State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's concealment, misrepresentations, and/or failure to disclose material information.

742. Defendant's violations present a continuing risk to Plaintiffs and the Pennsylvania State Class, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

743. Pursuant to 73 Pa. Stat. Ann. § 201-9.2(a), Plaintiffs and the Pennsylvania State Class

seek an order enjoining Defendant's unfair and/or deceptive acts or practices, and awarding damages, punitive and/or treble damages, and any other just and proper relief available under the Pennsylvania UTPA.

### COUNT SIXTY-TWO — BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (13 PA. CONS. STAT. §§ 2314 AND 2A212)

744.    Plaintiffs reallege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

745.    Plaintiffs Renee and Joshua Miller (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves and the Pennsylvania State Class against Defendant FCA.

746.    FCA was at all relevant times a "merchant" with respect to motor vehicles under 13 Pa. Cons. Stat. §§ 2104 and 2A103(a), and "sellers" of motor vehicles under § 2103(a).

747.    With respect to leases, FCA is and was at all relevant times a "lessor" of motor vehicles under 13 Pa. Cons. Stat. § 2A103(a).

748.    The Class Vehicles are and were at all relevant times "goods" within the meaning of 13 Pa. Cons. Stat. §§ 2105(a) and 2A103(a).

749.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to 13 Pa. Cons. Stat. §§ 2314 and 2A212.

750.    FCA sold and/or leased Class Vehicles that were not in merchantable condition and/or fit for their ordinary purpose in violation of the implied warranty. The Class Vehicles were not in merchantable condition because their design violated state and federal laws. The Class Vehicles were not fit for their ordinary purpose as they were built to evade state and federal emission standards.

751.    FCA's breaches of the implied warranty of merchantability caused damage to the Plaintiffs and the Pennsylvania State Class. The amount of damages due will be proven at trial.

### COUNT SIXTY-THREE — FRAUD BY OMISSION

752.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

753.    Plaintiffs Renee and Joshua Miller (for the purpose of this section, "Plaintiffs") bring

this action on behalf of themselves and the Pennsylvania State Class against Defendant FCA.

754.   Defendant made material omissions concerning a presently existing or past fact in that, for example, Defendant did not fully and truthfully disclose to its customers the true nature of the FORM defect, which in many cases could not be discovered until years after the Class Vehicles were purchased or leased. These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase.

755.   Defendant had a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

756.   In addition, Defendant had a duty to disclose these omitted material facts because they were known and/or accessible only to Defendant, who had superior knowledge and access to the facts and Defendant knew that those facts were not known to or reasonably discoverable by Plaintiffs and the Pennsylvania State Class members. These omitted facts were material because they directly impact the reliability of the Class Vehicles.

757.   Defendant was in exclusive control of the material facts and such facts were not known to the public or the Pennsylvania State Class members. Defendant also possessed exclusive knowledge of the FORM defect rendering Class Vehicles inherently more unreliable than similar vehicles.

758.   Defendant failed to disclose these material facts, in whole or in part, with the intent to induce Plaintiffs and the Pennsylvania State Class members to purchase the Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

759.   Plaintiffs and the Pennsylvania State Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the omitted facts. The actions of Plaintiffs and the Pennsylvania State Class members were justified.

760.   Plaintiffs and the Pennsylvania State Class members reasonably relied on these omissions and suffered damages as a result.

761.   As a result of these omissions, Plaintiffs and the Pennsylvania State Class members

incurred damages including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished intrinsic value of their Class Vehicles.

762.     Defendant's acts were done maliciously, oppressively, deliberately, and in reckless disregard of the rights of Plaintiffs and the Pennsylvania State Class members. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT SIXTY-FOUR — UNJUST ENRICHMENT

763.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

764.     Plaintiffs Renee and Joshua Miller (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves and the Pennsylvania State Class against Defendant FCA.

765.     Plaintiffs and the Pennsylvania State Class members paid Defendant the value of non-defective, fully operational Class Vehicles with the ability to operate only using the electric engine for up to 21 miles. Plaintiffs and the Pennsylvania State Class members paid a premium to be able to use the electric engine, as traditional, non-hybrid models of each of the Class Vehicles are available and significantly lower in cost. In exchange, Defendant provided Plaintiffs and the Pennsylvania State Class members with defective Vehicles that cannot use the electric-only operation mode for significant periods of time while the FORM cycle is engaged.

766.     Defendant enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and the Pennsylvania State Class members, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Defendant to retain these wrongfully obtained profits.

767.     Plaintiffs, therefore, seek an order establishing Defendant as constructive trustee of the profits unjustly obtained, plus interest.

1   **P.      Claims Brought on Behalf of the Vermont State Class**

**COUNT SIXTY-FIVE — VIOLATIONS OF THE VERMONT
CONSUMER PROTECTION ACT
(VT. STAT. ANN. TIT. 9, § 2451 *ET SEQ.*)**

768.     Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

769.     Plaintiff Koss (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the Vermont State Class against Defendant FCA.

770.     FCA is a "person" within the meaning of Vt. Stat. Tit. 9, § 2451a(a). The Vermont State Class members are "consumers" within the meaning of Vt. Stat. Tit. 9, § 2451a(a).

771.     FCA is engaged in "commerce" within the meaning of Vt. Stat. Tit. 9, § 2453(a).

772.     The Vermont Consumer Protection Act ("Vermont CPA") prohibits "[u]nfair methods of competition in commerce and unfair or deceptive acts or practices in commerce…." Vt. Stat. Tit. 9, § 2453(a).

773.     In the course of its business, Defendant FCA, through its agents, employees, and/or subsidiaries, violated the Vermont CPA. As detailed above, it willfully failed to disclose the FORM Defect with the intent that consumers rely on that failure to disclose in deciding whether to purchase a Class Vehicle. By failing to disclose the FORM Defect while advertising the Class Vehicles as hybrid vehicles capable of driving up to 21 miles using only the electric engine, Defendant engaged in one or more of the following unfair or deceptive acts or practices as defined in Wis. Stat. § 100.18(1):

A.      Representing that the Class Vehicles have approval, characteristics, uses, or benefits that they do not have;

B.      Representing that the Class Vehicles are of a particular standard, quality and grade when they are not;

C.      Advertising the Class Vehicles with the intent not to sell or lease them as advertised; and/or

    D.  Failing to disclose material information concerning the Class Vehicles known to Defendant at the time of advertisement or sale, with the intention of inducing Plaintiffs and Class members to purchase or lease the vehicles.

774. Defendant's failure to disclose the true characteristics of the FORM Defect were material to Plaintiff and the Vermont State Class, as Defendant intended. Had they known the truth, Plaintiff and the Vermont State Class would not have purchased or leased the Class Vehicles, or—if the Class Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them.

775. Plaintiff and the Vermont State Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had failed to disclose, until the FORM Defect manifested in their Vehicles. Plaintiff and the Vermont State Class members did not, and could not, unravel Defendant's deception on their own.

776. Defendant had an ongoing duty to Plaintiff and the Vermont State Class to refrain from unfair and deceptive practices under the Vermont CPA in the course of their business. Specifically, Defendant owed Plaintiff and the Vermont State Class members a duty to disclose all the material facts concerning the FORM Defect because they possessed exclusive knowledge and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts

777. Plaintiff and the Vermont State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's concealment, misrepresentations, and/or failure to disclose material information.

778. Defendant's violations present a continuing risk to the Vermont State Class, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

779. Pursuant to Vt. Stat. Tit. 9, § 2461(b), the Vermont State Class seek an order enjoining Defendant's unfair and/or deceptive acts or practices, and awarding damages, exemplary damages, and any other just and proper relief available under the Vermont CPA.

**COUNT SIXTY-SIX — BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(VT. STAT. ANN. TIT. 9A, § § 2-314 AND 2A-212)**

780.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

781.    Plaintiff Koss (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the Vermont State Class against Defendant FCA.

782.    FCA was at all relevant times a "merchant" with respect to motor vehicles under Vt. Stat. Tit. 9A, § 2-104(1) and 2A-103(1)(t), and "sellers" of motor vehicles under § 2-103(1)(d).

783.    With respect to leases, FCA is and was at all relevant times a "lessor" of motor vehicles under Vt. Stat. Tit. 9A, § 2A-103(1)(p).

784.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Vt. Stat. Tit. 9A, §§ 2-105(1) and 2A-103(1)(h).

785.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Vt. Stat. Tit. 9A, §§ 2-314 and 2A-212.

786.    FCA sold and/or leased Class Vehicles that were not in merchantable condition and/or fit for their ordinary purpose in violation of the implied warranty. The Class Vehicles were not in merchantable condition because their design violated state and federal laws. The Class Vehicles were not fit for their ordinary purpose as they were built to evade state and federal emission standards.

787.    FCA's breaches of the implied warranty of merchantability caused damage to Plaintiff and the Vermont State Class. The amount of damages due will be proven at trial.

**COUNT SIXTY-SEVEN — FRAUD BY OMISSION**

788.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

789.    Plaintiff Koss (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the Vermont State Class against Defendant FCA.

790.    Defendant made material omissions concerning a presently existing or past fact in that, for example, Defendant did not fully and truthfully disclose to its customers the true nature of the

FORM defect, which in many cases could not be discovered until years after the Class Vehicles were purchased or leased. These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase.

791.    Defendant had a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

792.    In addition, Defendant had a duty to disclose these omitted material facts because they were known and/or accessible only to Defendant, who had superior knowledge and access to the facts and Defendant knew that those facts were not known to or reasonably discoverable by Plaintiff and the Vermont State Class members. These omitted facts were material because they directly impact the reliability of the Class Vehicles.

793.    Defendant was in exclusive control of the material facts and such facts were not known to the public or the Vermont State Class members. Defendant also possessed exclusive knowledge of the FORM defect rendering Class Vehicles inherently more unreliable than similar vehicles.

794.    Defendant failed to disclose these material facts, in whole or in part, with the intent to induce Plaintiff and the Vermont State Class members to purchase the Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

795.    Plaintiff and the Vermont State Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the omitted facts. The actions of Plaintiff and the Vermont State Class members were justified.

796.    Plaintiff and the Vermont State Class members reasonably relied on these omissions and suffered damages as a result.

797.    As a result of these omissions, Plaintiff and the Vermont State Class members incurred damages including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished intrinsic value of their Class Vehicles.

798.    Defendant's acts were done maliciously, oppressively, deliberately, and in reckless

disregard of the rights of Plaintiff and the Vermont State Class members. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT SIXTY-EIGHT — UNJUST ENRICHMENT

799.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

800.    Plaintiff Koss (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the Vermont State Class against Defendant FCA.

801.    Plaintiff and the Vermont State Class members paid Defendant the value of non-defective, fully operational Class Vehicles with the ability to operate only using the electric engine for up to 21 miles. Plaintiff and the Vermont State Class members paid a premium to be able to use the electric engine, as traditional, non-hybrid models of each of the Class Vehicles are available and significantly lower in cost. In exchange, Defendant provided Plaintiff and the Vermont State Class members with defective Vehicles that cannot use the electric-only operation mode for significant periods of time while the FORM cycle is engaged.

802.    Defendant enjoyed the benefit of increased financial gains, to the detriment of Plaintiff and the Vermont State Class members, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Defendant retain these wrongfully obtained profits.

803.    Plaintiff, therefore, seeks an order establishing Defendant as constructive trustee of the profits unjustly obtained, plus interest.

## Q.    Claims Brought on Behalf of the Wisconsin State Class

### COUNT SIXTY-NINE — VIOLATIONS OF THE WISCONSIN DECEPTIVE TRADE PRACTICES ACT
### (WIS. STAT. § 100.18)

804.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

805.    Plaintiffs Chad Altschafl and Gabriel Morrison (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves and the Wisconsin State Class against Defendant

FCA.

806.    Plaintiffs and the Wisconsin State Class are members of "the public" and are "persons" within the meaning of Wis. Stat. § 100.18(1).

807.    FCA is a "person, firm, corporation or association" within the meaning of Wis. Stat. § 100.18(1).

808.    The Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA") makes unlawful any "representation or statement of fact which is untrue, deceptive or misleading." Wis. Stat. § 100.18(1).

809.    In the course of their business, Defendant FCA, through its agents, employees, and/or subsidiaries, violated the Wisconsin DTPA. As detailed above, it willfully failed to disclose the FORM Defect with the intent that consumers rely on that failure to disclose in deciding whether to purchase a Class Vehicle. By failing to disclose the FORM Defect while advertising the Class Vehicles as hybrid vehicles capable of driving up to 21 miles using only the electric engine, Defendant engaged in one or more of the following unfair or deceptive acts or practices as defined in Wis. Stat. § 100.18(1):

A.    Representing that the Class Vehicles have approval, characteristics, uses, or benefits that they do not have;

B.    Representing that the Class Vehicles are of a particular standard, quality and grade when they are not;

C.    Advertising the Class Vehicles with the intent not to sell or lease them as advertised; and/or

D.    Failing to disclose material information concerning the Class Vehicles known to FCA at the time of advertisement or sale, with the intention of inducing Plaintiffs and Class members to purchase or lease the vehicles.

810.    Defendant's failure to disclose the true characteristics of the FORM Defect were material to Plaintiffs and the Wisconsin State Class, as Defendant intended. Had they known the truth, Plaintiffs and the Wisconsin State Class would not have purchased or leased the Class Vehicles, or—if the Class Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to

sell—would have paid significantly less for them.

811.    Plaintiffs and the Wisconsin State Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had failed to disclose, until the FORM Defect manifested in their Vehicles. Plaintiffs and the Wisconsin State Class members did not, and could not, unravel Defendant's deception on their own.

812.    Defendant had an ongoing duty to Plaintiffs and the Wisconsin State Class to refrain from unfair and deceptive practices under the Wisconsin DTPA in the course of their business. Specifically, Defendant owed Plaintiffs and the Wisconsin State Class members a duty to disclose all the material facts concerning the FORM Defect because it possessed exclusive knowledge and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts

813.    Plaintiffs and Wisconsin State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's concealment, misrepresentations, and/or failure to disclose material information.

814.    Defendant's violations present a continuing risk to Plaintiffs and the Wisconsin State Class, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

815.    Pursuant to Wis. Stat. § 100.18(11)(b)(2), Plaintiffs and the Wisconsin State Class seek an order enjoining Defendant's unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the Wisconsin DTPA.

**COUNT SEVENTY — BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**

816.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

817.    Plaintiffs Chad Altschafl and Gabriel Morrison (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves and the Wisconsin State Class against Defendant FCA.

818.    FCA, Plaintiffs, and the Wisconsin State Class are all "persons" within the meaning of

Wis. Stat. § 401.201(2)(nm).

819.   FCA is a "merchant" with respect to motor vehicles within the meaning of Wis. Stat. § 402.104(3).

820.   Pursuant to Wis. Stat. § 402.314, a warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.

821.   The Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that the FORM Defect causes the Vehicles to lose the ability to use the electric motor more frequently and for more significant periods of time than disclosed.

822.   Privity is not required in this case because Plaintiffs and the Wisconsin State Class are intended third-party beneficiaries of contracts between FCA and its dealers; specifically, they are the intended beneficiaries of FCA's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

823.   FCA was provided notice of the FORM Defect, as alleged herein, by the numerous complaints filed against it, and the instant Complaint, within a reasonable amount of time after the defect was discovered. FCA's knowledge of the FORM Defect is further supported by its revision to the 2022 owners' manual, which was revised to acknowledge that the FORM cycle can last for up to 2.5 hours.[42]

824.   As a direct and proximate result of FCA's breach of the warranties of merchantability, Plaintiffs and the Wisconsin State Class members have been damaged in an amount to be proven at trial.

## COUNT SEVENTY-ONE — FRAUD BY OMISSION

825.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

---

[42] *See supra* ¶ 58.

826.   Plaintiffs Chad Altschafl and Gabriel Morrison (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves and the Wisconsin State Class against Defendant FCA.

827.   Defendant made material omissions concerning a presently existing or past fact in that, for example, Defendant did not fully and truthfully disclose to its customers the true nature of the FORM defect, which in many cases could not be discovered until years after the Class Vehicles were purchased or leased. These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase.

828.   Defendant had a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

829.   In addition, Defendant had a duty to disclose these omitted material facts because they were known and/or accessible only to Defendant, who had superior knowledge and access to the facts and knew that those facts were not known to or reasonably discoverable by Plaintiffs and the Wisconsin State Class members. These omitted facts were material because they directly impact the reliability of the Class Vehicles.

830.   Defendant was in exclusive control of the material facts and such facts were not known to the public or the Wisconsin State Class members. Defendant also possessed exclusive knowledge of the FORM defect rendering Class Vehicles inherently more unreliable than similar vehicles.

831.   Defendant failed to disclose these material facts, in whole or in part, with the intent to induce Plaintiffs and the Wisconsin State Class members to purchase the Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

832.   Plaintiffs and the Wisconsin State Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the omitted facts. The actions of Plaintiffs and the Wisconsin State Class members were justified.

833.   Plaintiffs and the Wisconsin State Class members reasonably relied on these omissions

and suffered damages as a result.

834.    As a result of these omissions, Plaintiffs and the Wisconsin State Class members incurred damages including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished intrinsic value of their Class Vehicles.

835.    Defendant's acts were done maliciously, oppressively, deliberately, and in reckless disregard of the rights of Plaintiffs and the Wisconsin State Class members. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT SEVENTY-TWO — UNJUST ENRICHMENT

836.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

837.    Plaintiffs Chad Altschafl and Gabriel Morrison (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves and the Wisconsin State Class against Defendant FCA.

838.    Plaintiffs and the Wisconsin State Class members paid Defendant the value of non-defective, fully operational Class Vehicles with the ability to operate only using the electric engine for up to 21 miles. Plaintiffs and the Wisconsin State Class members paid a premium to be able to use the electric engine, as traditional, non-hybrid models of each of the Class Vehicles are available and significantly lower in cost. In exchange, Defendant provided Plaintiffs and the Wisconsin State Class members with defective Vehicles that cannot use the electric-only operation mode for significant periods of time while the FORM cycle is engaged.

839.    Defendant enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and the Wisconsin State Class members, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Defendant retain these wrongfully obtained profits.

840.    Plaintiffs, therefore, seek an order establishing Defendant as constructive trustee of the profits unjustly obtained, plus interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, pray that this Court:

A.    Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Nationwide Class and State Classes as defined above;

B.    Appoint Plaintiffs as representatives of the Nationwide Class and applicable State Classes and their counsel as Class Counsel;

C.    Award all actual, general, special, incidental, consequential, punitive, and exemplary damages and restitution to which Plaintiff and Class members are entitled;

D.    Award pre- and post-judgment interest on any monetary relief;

E.    Grant appropriate injunctive relief against FCA, including an order requiring FCA to buy back or permanently and completely repair the Class Vehicles pursuant to its obligations under the terms of the Warranty;

F.    Determine that FCA is financially responsible for all Class notice and administration of Class relief;

G.    Award reasonable attorney fees and costs;

H.    Grant any such equitable relief as the Court deems appropriate, including but not limited to restitution and/or disgorgement; and

I.    Grant such further relief that this Court deems appropriate.

DATED this 20th day of April, 2023.

KELLER ROHRBACK L.L.P.


By */s/ Matthew J. Preusch*
     Matthew J. Preusch (CSB No. 298144)
     KELLER ROHRBACK L.L.P.
     801 Garden Street, Suite 301
     Santa Barbara, CA 93101
     (805) 456-1496
     Fax (805) 456-1497
     mpreusch@kellerrohrback.com

     Gretchen Freeman Cappio (admitted pro hac vice)
     Ryan McDevitt (admitted pro hac vice)
     Emma Wright (admitted pro hac vice)
     KELLER ROHRBACK L.L.P.
     1201 Third Avenue, Suite 3200
     Seattle, WA 98101-3052
     (206) 623-1900
     Fax (206) 623-3384
     gcappio@kellerrohrback.com
     rmcdevitt@kellerrohrback.com
     ewright@kellerrohrback.com

     E. Powell Miller (pro hac vice forthcoming)
     Sharon S. Almonrode (pro hac vice forthcoming)
     Dennis A. Lienhardt, Jr. (pro hac vice forthcoming)
     THE MILLER LAW FIRM, P.C.
     Miller Building
     950 West University Drive, Suite 300
     Rochester, MI 48307
     Telephone: (248) 841-2200
     Fax: (248) 652-2852
     epm@millerlawpc.com
     ssa@millerlawpc.com
     dal@millerlawpc.com

     *Attorneys for Plaintiffs*