Matthew J. Preusch (CSB No. 298144)
KELLER ROHRBACK L.L.P.
801 Garden Street, Suite 301
Santa Barbara, CA 93101
(805) 456-1496
Fax (805) 456-1497
mpreusch@kellerrohrback.com

*Attorney for Plaintiffs*
[*Additional counsel listed on signature page*]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

ANSHUMAN SINGH, *et al.* Individually and on
Behalf of All Others Similarly Situated,

Plaintiffs,

v.

FCA US LLC,

Defendant.

No. 4:23-cv-00452-HSG

**PLAINTIFFS' OPPOSITION TO
DEFENDANT FCA US LLC'S MOTION
TO DISMISS AMENDED CLASS ACTION
COMPLAINT**

# TABLE OF CONTENTS

I.      INTRODUCTION ...........................................................................................1

II.     RELEVANT FACTS .....................................................................................1

III.    ARGUMENT .................................................................................................2

        A.      Governing Legal Standards ...............................................................2

        B.      FCA is Subject to Personal Jurisdiction in the Northern District of
                California .............................................................................................3

        C.      Plaintiffs' Consumer Protection and Common-law Fraud Claims Survive
                ............................................................................................................5

                1.      Not All of Plaintiffs' Claims are Subject to the 9(b) Pleading
                        Standard .................................................................................5

                2.      Plaintiffs' Claims That are Subject to the 9(b) Pleading Standard
                        are Adequately Pled..............................................................6

        D.      Plaintiffs' UCL Claim Survives as a Matter of Law.............................17

        E.      Plaintiffs' MMWA Claim and Implied Warranty Claims Survive.........18

        F.      FCA's Challenges to Plaintiffs' Unjust Enrichment Claims Fail...........20

        G.      Plaintiffs' Nationwide Class Allegations Survive FCA's Challenges....22

IV.     CONCLUSION .............................................................................................23

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Action Embroidery Corp. v. Atlantic Embroidery, Inc.*,
  368 F.3d 1174 (9th Cir. 2004) ................................................................4

*Alpharma, Inc. v. PennField Oil Co.*,
  No. 8:03cv401, 2008 WL 2331019 (D. Neb. June 4, 2008) (Nebraska)..................................5

*Anderson v. Apple Inc.*,
  500 F. Supp. 3d 993 (N.D. Cal. 2020)...........................................7, 9, 16

*Astiana v. Hain Celestial Group, Inc.*,
  783 F.3d 753 (9th Cir. 2015) ...............................................22

*Aviva Sports, Inc. v. Fingerhut Direct Marketing, Inc.*,
  No. 09-1091, 2011 WL 4457956 (D. Minn. Sept. 23, 2011) (Minnesota UDTPA)...............11

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
  874 F.3d 1064 (9th Cir. 2017) ...............................................5

*Banh v. Am. Honda Motor Co., Inc.*,
  No., 2020 WL 4390371 (C.D. Cal. July 28, 2020) ...............................................19

*Benkle v. Ford Motor Co.*,
  No. 16-1569, 2017 WL 9486154 (C.D. Cal. Dec. 22, 2017).................................13

*Bergman v. Spruce Peak Realty, LLC*,
  847 F. Supp. 2d 653 (D. Vt. 2012) (Vermont).................................5

*Bristol-Myers Squibb Co. v. Sup. Ct. Cal.*,
  582 U.S. 255 (2017) ...............................................3

*Brown v. Food for Life Baking Co.*,
  --- F.Supp.3d ---, 2023 WL 2637407 (N.D. Cal. Feb. 28, 2023)............................3

*Bryde v. General Motors, LLC*,
  No. 16-cv-02421, 2016 WL 6804584 (N.D. Cal. Nov. 17, 2016) ...............19, 20

*Bugarin v. All Nippon Airways Co., Ltd.*,
  513 F. Supp. 3d 1172 (N.D. Cal. 2021).................................11, 23

*Cabebe v. Nissan of North Am., Inc.*,
  No. 18-cv-00144, 2018 WL 5617732 (N.D. Cal. Oct. 26, 2018) ...............................14

*Cafasso v. Gen. Dynamics C4 Sys.*,
  637 F.3d 1047 (9th Cir. 2011) ...............................................6

*In re Carrier IQ, Inc.*,
    78 F. Supp. 3d 1051 (N.D. Cal. 2015) ....................................................................... 13

*Celex Group, Inc. v. Executive Gallery, Inc.*,
    877 F. Supp. 1114 (N.D. Ill. 1995) ........................................................................... 11

*Centrella v. Ritz-Craft Corp. of Pa., Inc.*,
    No. 2:14-cv-111, 2018 WL 840038 (D. Vt. Feb. 12, 2018) ....................................... 11

*Chapman v. General Motors LLC*,
    531 F. Supp. 3d 1257 (E.D. Mich. 2021) .................................................................. 20

*In re Chrysler-Dodge-Jeep Ecodiesel Marketing, Sales Practices, and Products Liability Litigation*,
    295 F. Supp. 3d 927 (N.D. Cal. 2018) ........................................................ 7, 9, 15, 16

*Citizens United Reciprocal Exchange v. Meer*,
    321 F. Supp. 3d 479 (D.N.J. 2018) ........................................................................... 14

*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008) .................................................................................... 2

*CollegeSource, Inc. v. AcademyOne, Inc.*,
    653 F.3d 1066 (9th Cir. 2011) .................................................................................... 5

*Corbett v. PharmaCare U.S., Inc.*,
    567 F. Supp. 3d 1172 (S.D. Cal. 2021) ..................................................................... 15

*Cyr v. Ford Motor Co.*,
    507 Mich. 1029 (2021) .............................................................................................. 16

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) .................................................................................................... 3

*Duffie v. Michigan Grp., Inc.*,
    No. 14-cv-14148, 2016 WL 8259511 (E.D. Mich. 2016) .......................................... 21

*Falk v. General Motors Corp.*,
    496 F. Supp. 2d 1088 (N.D. Cal. 2007) ......................................................... 10, 11, 12

*Fenerjian v. Nongshim Co., Ltd.*,
    72 F. Supp. 3d 1058 (N.D. Cal. 2014) ...................................................................... 22

*Flier v. FCA US LLC*,
    No. 21-cv-02553, 2022 WL 16823042 (N.D. Cal. Nov. 8, 2022) ............................... 6

*Flynn v. FCA US LLC*,
    327 F.R.D. 206 (S.D. Ill. 2018) ................................................................................ 11

**PLS.' OPP'N TO DEF. FCA US LLC'S MOT. TO DISMISS AM. CLASS ACTION COMPL.**

*Freeman v. Indochino Apparel, Inc.*,
 443 F. Supp. 3d 1107 (N.D. Cal. 2020)...............................................................20

*Friedman v. Dollar Thrifty Automotive Group, Inc.*,
 No. 12-cv-02432, 2015 WL 4036319 (D. Colo. July 1, 2015)..............................16

*Fujifilm North Am. Corp. v. M&R Printing Equipment, Inc.*,
 565 F. Supp. 3d 222 (D.N.H. 2021).....................................................................11

*Geis v. Nestle Waters North Am., Inc.*,
 321 F. Supp. 3d 230 (D. Mass. 2018)..................................................................11

*In re General Motors LLC CP4 Fuel Pump Litigation*,
 393 F. Supp. 3d 871 (N.D. Cal. 2019)............................................................7, 10

*Giles v. General Motors Acceptance Corp.*,
 494 F.3d 865 (9th Cir. 2007) ...............................................................................16

*Gitson v. Trader Joe's Company*,
 63 F. Supp. 3d 1114 (N.D. Cal. 2014)..................................................................22

*Glenn v. Hyundai Motor Am.*,
 No. SACV 15-2052, 2016 WL 7507766 (C.D. Cal. Nov. 21, 2016) ..............20, 22

*Gold v. Lumber Liquidators, Inc.*,
 323 F.R.D. 280 (N.D. Cal. 2017) .........................................................................13

*Greene v. Gerber Prods. Co.*,
 No. 16-1153, 2017 WL 3327583 (E.D.N.Y. Aug. 2, 2017) (New York)................5

*Harris Grp. v. Robinson*,
 209 P.3d 1188 (Colo. App. 2009) ........................................................................21

*Hoff v. Mercedes-Benz USA, LLC*,
 Case No. 04-836, 2005 WL 3723201 (Mich. Cir. Ct. Dec. 30, 2005) ..................16

*Ingaharro v. Blanchette*,
 122 N.H. 54 (N.H. 1982) .....................................................................................13

*Luong v. Subaru of America, Inc.*,
 No. 17-cv-03160, 2018 WL 2047646 (N.D. Cal. May 2, 2018)...........................17

*MacDonald v. Ford Motor Co.*,
 37 F. Supp. 3d 1087 (N.D. Cal. 2014)............................................................7, 10

*Martell v. General Motors LLC*,
 492 F.Supp.3d 1131 (D. Or. 2020).......................................................................11

iv

*Martinez v. Lewis*,
    969 P.2d 213 (Colo. 1998) .................................................................11

*Massey v. Flowers Foods, Inc.*,
    No. CIV-16-1233, 2017 WL 3639150 (W.D. Okla. 2017) ....................14

*Mavrix Photo, Inc. v. Brand Technologies, Inc.*,
    647 F.3d 1218 (9th Cir. 2011) .............................................................2

*McLaughlin v. Bayer Corp.*,
    172 F. Supp. 3d 804 (E.D. Pa. 2016)...................................................11

*McQueen v. Yamaha Motor Corp., U.S.A.*,
    488 F. Supp. 3d 848 (D. Minn. 2020) .................................................11

*Miller v. Ford Motor Co.*,
    620 F.Supp.3d 1045 (E.D. Cal. 2022) .................................................19

*Mirandette v. Nelnet, Inc.*,
    720 Fed. Appx. 288 (6th Cir. 2018) ....................................................11

*Morrill v. Scott Financial Corp.*,
    873 F.3d 1136 (9th Cir. 2017) .............................................................2

*Mui Ho v. Toyota Motor Corp.*,
    931 F. Supp. 2d 987 (N.D. Cal. 2013)................................................10

*Murphy v. Toyota Motor Sales USA Inc.*,
    No. 2:20-cv-05892, 2021 WL 2801456 (C.D. Cal. Apr. 21, 2021) ......12

*In re MyFord Touch Consumer Litig.*,
    46 F. Supp. 3d 936 (N.D. Cal. 2014)..................................................19

*In re MyFord Touch Consumer Litig.*,
    291 F. Supp. 3d 936 (N.D. Cal. 2018).........................................18, 19

*In re Natera Prenatal Testing Litig.*,
    --- F. Supp. 3d ---, 2023 WL 3370737 (N.D. Cal. Mar. 28, 2023) ......11

*Nesby* v. *Country Mut. Ins. Co.*,
    805 N.E.2d 241 (Ill. App. 2004) .........................................................21

*In re Nexus 6P Products Liability Litigation*,
    293 F. Supp. 3d 888 (N.D. Cal. 2018)................................................19

*Oddo v. Arocaire Air Conditioning and Heating*,
    No. 8:15-cv-01985, 2020 WL 5267917 (C.D. Cal. May 18, 2020)......13

**PLS.' OPP'N TO DEF. FCA US
LLC'S MOT. TO DISMISS AM.
CLASS ACTION COMPL.**

*Pereda v. General Motors LLC*,
No. 21-cv-06338, 2022 WL 19975388 (N.D. Cal. Dec. 9, 2022).........................................21

*Reniger v. Hyundai Motor Am.*,
122 F. Supp. 3d 888 (N.D. Cal. 2015)................................................................................10

*Rubin v. Oregon*,
No. 3:19-cv-01377, 2022 WL 2713904 (D. Or. July 13, 2022) ...........................................17

*Sinatro v. Barilla America, Inc.*,
--- F.Supp.3d ---, 2022 WL 10128276 (N.D. Cal. Oct. 17, 2022) ......................................23

*Siqueiros v. General Motors LLC*,
No. 16-cv-07244, 2021 WL 2115400 (N.D. Cal. May 25, 2021)..........................................12

*Sloan v. General Motors LLC*,
287 F.Supp.3d 840 (N.D. Cal. 2018).............................................................................*passim*

*Sonner v. Premier Nutrition Corp*,
971 F.3d 834 (9th Cir. 2020) .................................................................................. 17, 18

*Swearington v. Healthy Beverage, LLC*,
No. 13-cv-04385, 2017 WL 1650552 (N.D. Cal. May 2, 2017)............................................8

*T&M Farms v. CNH Industrial Am., LLC*,
488 F. Supp. 3d 756 (E.D. Wis. 2020) .................................................................................11

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
No. 07-1827, 2011 WL 4501223 (N.D. Cal. Sept. 28, 2011)...............................................21

*In re Toyota RAV4 Hybrid Fuel Tank Litigation*,
534 F. Supp. 3d 1067 (N.D. Cal. 2021).................................................................... 8, 17, 23

*U.S. Funding, Inc. of Am. v. Bank of Boston Corp.*,
551 N.E.2d 922 (Mass. App. Ct. 1990) ..................................................................................5

*Valencia v. Volkswagen Group of Am. Inc.*,
No. 15-cv-00887, 2015 WL 4760707 (N.D. Cal. Aug. 11, 2015) ........................................22

*Vallerta v. United Airlines, Inc.*,
497 F. Supp. 3d 790 (N.D. Cal. 2020)..................................................................................23

*Vess v. Ciba-Geigy Corp.*,
317 F.3d 1097 (9th Cir. 2003) ...............................................................................................6

*Vinci v. Hyundai Motor Am.*,
No. 17-0997, 2018 WL 6136828 (C.D. Cal. Apr. 10, 2018)................................................15

PLS.' OPP'N TO DEF. FCA US
LLC'S MOT. TO DISMISS AM.
CLASS ACTION COMPL.

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation,*
     MDL No. 2672, 2017 WL 3058563 (N.D. Cal. July 19, 2017)................................................8

*Wheeler v. Subaru of Am., Inc.,*
     451 F. Supp. 3d 1034 (D. Minn. 2020) ..............................................................21

*Zeiger v. WellPet LLC,*
     526 F. Supp. 3d 652 (N.D. Cal. 2021)................................................................18

**PLS.' OPP'N TO DEF. FCA US LLC'S MOT. TO DISMISS AM. CLASS ACTION COMPL.**

## I.    INTRODUCTION

Plaintiffs are purchasers and lessees of Defendant FCA US LLC's ("Defendant" or "FCA") Jeep Wrangler 4xe and Jeep Grand Cherokee 4xe vehicles (collectively, the "4xe Vehicles" or "Class Vehicles") equipped with a uniform and widespread design defect (the "FORM Defect") that causes the electric-only driving mode to be largely unavailable to drivers. FCA has continuously, systemically, and purposefully placed its 4xe Vehicles into the stream of commerce in California, availed itself of California's vast market for hybrid vehicles, and directed marketing at California consumers. Thus, the Northern District of California can appropriately exercise jurisdiction over FCA. FCA's Motion to Dismiss Amended Class Action Complaint ("Motion" or "Mot."), Dkt. No. 49, should be denied.

## II.    RELEVANT FACTS

The Jeep 4xe Vehicles consist of the 2021–23 Wrangler 4xe and the 2022–23 Grand Cherokee 4xe, which both pair a traditional gas engine and an electric motor, providing drivers with the option to operate their vehicles using the electric motor, the gasoline engine, or a combination of the two. Am. Class Action Compl. ("Complaint" or "Compl.") ¶ 2, Dkt. No. 39. The Wrangler and Grand Cherokee are also offered as traditional gas-only models, which are significantly less expensive than the hybrid models. *Id.* ¶¶ 140, 145.

FCA heavily advertised the benefits of purchasing the 4xe models over their traditional gas counterparts. For example, FCA emphasized that it was "committed to mak[ing] Jeep the greenest SUV brand" via the electrification of the Jeep lineup, which would "allow commuters to travel solely on electric power." *Id.* ¶ 139 (citation omitted). Potential purchasers were informed that the "E-Selec" driving modes offered by the 4xe Vehicles would "put [them] in control. Electric mode uses only battery power for low-emissions zones in cities or quiet off-roading with maximum torque, while eSave Mode reserves battery power for later. Hybrid Mode gives you the best of both worlds." *Id.* ¶ 141 (citation omitted). The material information FCA did not disclose, however, was that during cold weather conditions, drivers would be unable to use the electric-only mode on their vehicles at all, rendering one of the biggest selling points of the vehicles unusable. *Id.* ¶ 152.

**PLS.' OPP'N TO DEF. FCA US LLC'S MOT. TO DISMISS AM. CLASS ACTION COMPL.**

The FORM system is designed to prevent gasoline and oil from mixing in the gas engine, but in the 4xe Vehicles, the FORM system is insufficiently tethered to any actual fuel contamination analysis or driver controls and is defectively designed and/or manufactured such that it improperly engages due to cold temperatures for hours of driving time (the "FORM Defect" or "Defect"). *Id.* ¶¶ 148–52. The result is that the electric only operation of the Vehicles—which FCA charges a premium for—can be unavailable to drivers for weeks or months at a time. *Id.*

FCA's subsequent actions have failed to remedy the harm caused by the FORM Defect. Instead of acknowledging the Defect when owners and lessees began to raise concerns about the unusually frequent and long FORM cycles, FCA deceptively revised the language in owners' manuals to reflect that FORM cycles would just last longer. *Id.* ¶ 154. While FCA issued a "Customer Satisfaction Notice" acknowledging that for a subset of the 4xe Vehicles, the full electric vehicle mode may not be available due to "an incorrectly enabled engine maintenance mode designed to protect the engine from failure due to diluted oil"—the FORM Defect, *id.* ¶ 157 (citation omitted)—this notice did not include any remedy.

FCA harmed Plaintiffs at the point of sale and continues to harm them by failing to provide the vehicles for which Plaintiffs paid a significant premium. While FCA continues to disavow that there is any defect in the vehicles, owners and lessees are left with Vehicles that are unable to be driven in electric-only mode much of the time, despite paying a premium for those features.

### III.    ARGUMENT

**A.    Governing Legal Standards.**

To prevail on a motion to dismiss for lack of personal jurisdiction, Plaintiffs must make "a prima facie showing of jurisdictional facts" demonstrating that jurisdiction is appropriate. *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141 (9th Cir. 2017) (citation omitted). "[U]ncontroverted allegations in the complaint must be taken as true," and factual disputes are resolved in the plaintiffs' favor. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

To avoid a Rule 12(b)(6) dismissal for failure to state a claim, "a complaint need not contain detailed factual allegations; rather, it must plead 'enough facts to state a claim to relief that is plausible

**PLS.' OPP'N TO DEF. FCA US LLC'S MOT. TO DISMISS AM. CLASS ACTION COMPL.**

on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Brown v. Food for Life Baking Co.*, --- F. Supp. 3d ---, 2023 WL 2637407, at *3 (N.D. Cal. Feb. 28, 2023) (alterations in original) (citation omitted). "A claim has facial plausibility when the [p]laintiff pleads factual content that allows the court to draw the reasonable inference that the [d]efendant is liable for the misconduct alleged"—this is not akin to a "probability requirement," but allegations must suggest that the claim has at least a plausible chance of success. *Id.* (citation omitted).

## B.   FCA Is Subject to Personal Jurisdiction in the Northern District of California.

In California, federal due process principles determine whether a court may assert personal jurisdiction over a non-consenting defendant. *See Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) ("California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution."). "Whether the Court may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 856 (N.D. Cal. 2018) (citation omitted).

> Three requirements must be met: "(1) the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable."

*Id.* (quoting *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017)).

Defendant concedes that this Court may properly exercise personal jurisdiction over the claims of Plaintiff Singh, who purchased his vehicle in California. *See* Compl. ¶ 11; Mot. at 6. But FCA argues that under *Bristol-Myers*, this Court may not exercise jurisdiction over claims by out-of-state plaintiffs because those claims do not arise out of or relate to its forum-related activities. Mot. at 7; *see also Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255 (2017). However, as this Court has recognized, it may still exercise jurisdiction over the out-of-state plaintiffs' claims under the doctrine of pendent personal jurisdiction.

PLS.' OPP'N TO DEF. FCA US
LLC'S MOT. TO DISMISS AM.
CLASS ACTION COMPL.

The doctrine of pendent personal jurisdiction permits a court to assert jurisdiction "over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004). As the Ninth Circuit noted in adopting the doctrine, pendent personal jurisdiction "is typically found where one or more federal claims for which there is nationwide personal jurisdiction are combined in the same suit with one or more state or federal claims for which there is not nationwide personal jurisdiction"—as in the instant case. *Id.* at 1180–81.

Following the adoption of the doctrine, this District has exercised specific personal jurisdiction over claims in the same suit as one with personal jurisdiction—even when, as here, it is not necessarily a claim by the same *plaintiff*—when such claims arise out of the same common nucleus of operative facts.

As here, plaintiffs in *Sloan v. General Motors* did not allege "that the defective vehicles were designed or manufactured in California, that the decision not to disclose the defect was made in California, or that marketing materials omitting the defect and used nationwide were designed in or promulgated from California to their states." 287 F. Supp. 3d at 857. However, the court exercised personal jurisdiction over claims brought by out-of-state plaintiffs (against an out-of-state automaker defendant) under the doctrine of pendent personal jurisdiction, pointing to the nature of the action as a putative nationwide class action, where the court already had jurisdiction over the claims of out-of-state absent class members. *Id.* at 861. The *Sloan* court also determined that the exercise of jurisdiction over non-resident plaintiffs' claims would impose only a *de minimis* burden on the defendant because the new claims overlapped substantially with the claims already before the court and arose out of the same nucleus of operative facts. *Id.* at 862. Similarly, in this case, this Court already exercises jurisdiction over Plaintiff Singh's claims—including nationwide claims and California consumer protection, fraud, and warranty claims—weighing in favor of exercising pendent personal jurisdiction over FCA with respect to the claims of the nonresident Plaintiffs. The additional claims arise out of the same nucleus of operative facts as Plaintiff Sigh's claims: they relate principally to whether FCA's 4xe

**PLS.' OPP'N TO DEF. FCA US LLC'S MOT. TO DISMISS AM. CLASS ACTION COMPL.**

vehicles are defective, whether the FORM Defect is material, and when FCA became aware of the Defect. *Compare id.* at 863 ("Judicial economy is better served by having the claims of all plaintiffs heard in this Court where they involve similar legal issues and all arise out of a common nucleus of operative facts relating principally to whether GM's engine was defective, whether the defect was material or posed an unreasonable safety risk, and when GM became aware of the defect."), *with* Compl. ¶ 165.

Finally, the Court must consider whether the exercise of jurisdiction is reasonable and comports with fair play and substantial justice. *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017). Because Plaintiffs have made a prima facie showing that the assertion of specific jurisdiction over FCA is constitutional, the burden shifts to FCA to present "a compelling case" that the exercise of jurisdiction would be unreasonable and violate due process. *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1079 (9th Cir. 2011) (citation omitted). FCA has not done so, and cannot. Therefore, this Court may properly exercise specific personal jurisdiction over FCA with respect to claims by nonresident Plaintiffs arising out of the same nucleus of operative facts as Plaintiff Singh's claims.

## C.   Plaintiffs' Consumer Protection and Common-law Fraud Claims Survive.

### 1.   Not All of Plaintiffs' Claims are Subject to the 9(b) Pleading Standard.

FCA incorrectly argues that all of Plaintiffs' consumer protection act ("CPA") claims must meet Rule 9(b) pleading standards. Mot. at 8. But Rule 9(b) does not require heightened pleading for state CPA claims where the underlying state law does not require it, and not all 16 states that FCA addresses require Rule 9(b) pleading for CPA claims.

The laws of Massachusetts, New York, Nebraska, and Vermont law are clear that claims under their consumer protection statutes do not require Rule 9(b) pleading.[1] The same is true of California, where fraud is not necessarily an element of a claim under the consumer protection statutes (though

---

[1] *U.S. Funding, Inc. of Am. v. Bank of Boston Corp.*, 551 N.E.2d 922, 925 (Mass. App. Ct. 1990) (Massachusetts); *Alpharma, Inc. v. PennField Oil Co.*, No. 8:03CV401, 2008 WL 2331019 (D. Neb. June 4, 2008) (Nebraska); *Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 67 (E.D.N.Y. 2017) (New York); *Bergman v. Spruce Peak Realty, LLC*, 847 F. Supp. 2d 653, 671 (D. Vt. 2012) (Vermont).

PLS.' OPP'N TO DEF. FCA US LLC'S MOT. TO DISMISS AM. CLASS ACTION COMPL.

averments of fraud do need to be pled with particularity). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). This is because these consumer protection statutes are intended to reach conduct that may not already be actionable under traditional tort or contract claims, or give rise to duties independent of those addressed by the common law.

It is true that Colorado, Illinois, Michigan, Minnesota, Missouri, New Hampshire, New Jersey, Oklahoma, Oregon, Pennsylvania, and Wisconsin likely would require Rule 9(b) pleading where claims sound in fraud. But as laid out below, Plaintiffs satisfy Rule 9(b) because they "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (alteration in original) (citation omitted).

### 2. Plaintiffs' Claims That are Subject to the 9(b) Pleading Standard are Adequately Pled.

Where Plaintiffs' fraud-based claims are subject to the heightened pleading standard articulated in Federal Rule of Civil Procedure 9(b), which states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b), their "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). When pleading fraud by omission, however, the Rule 9(b) pleading standard is lowered as to pleading "the time, place, and specific content of [the fraudulent] omission." *See Flier v. FCA US LLC*, No. 21-cv-02553-CRB, 2022 WL 16823042 (N.D. Cal. Nov. 8, 2022) (alteration in original) (quoting *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1098–99 (N.D. Cal. 2007)). Under either construction, Plaintiffs have satisfied Rule 9(b)'s heightened pleading standard.

#### a. Plaintiffs Have Adequately Alleged Fraud by Omission.

FCA takes issue with the fact that Plaintiffs have not each identified a precise moment at which it made an omission as to the 4xe Vehicles. However, not only is this a misstatement of the pleading requirement for a fraudulent omission claim, but it is not true as to Plaintiffs' allegations.

Defendant relies on a series of unpublished, out-of-district cases to support its assertion that Plaintiffs are required to identify the precise time and place they were subject to FCA's omissions—

PLS.' OPP'N TO DEF. FCA US LLC'S MOT. TO DISMISS AM. CLASS ACTION COMPL.

but that is not the standard. When alleging an omission-based claim, because plaintiffs are "alleging a failure to act instead of an affirmative act," plaintiffs are not required to "specify the time, place, and specific content of an omission as would a plaintiff in a false representation claim." *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1096 (N.D. Cal. 2014) (citation omitted); *see also Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1006 (N.D. Cal. 2020) ("Because such a plaintiff is alleging a failure to act instead of an affirmative act, the plaintiff [sometimes] cannot point out the specific moment when the defendant failed to act.") (alteration in original) (quoting *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007)); *In re Gen. Motors LLC CP4 Fuel Pump Litig.*, 393 F. Supp. 3d 871, 876–81 (N.D. Cal. 2019) (holding that plaintiffs had properly alleged fraud by omission even where plaintiffs had not alleged specific advertisements or sales material each had seen and relied upon); *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 988 (N.D. Cal. 2018) ("Furthermore, this is a concealment theory that the Court may consider for purposes of this opinion because this theory—unlike the fraudulent concealment theory in (2) above—is not dependent on any advertising by Defendants. In other words, this is a straight omission/concealment theory.").

Even where Plaintiffs have not alleged specific information about the advertisements each saw and relied upon, a fraudulent concealment claim may prevail. *In re Chrysler-Dodge-Jeep Ecodiesel*, 295 F. Supp. 3d at 988. As in *Ecodiesel*, Plaintiffs here have alleged that Defendant failed to disclose that the 4xe Vehicles contained a defect. *See, e.g.*, *id.*; Compl. ¶ 176. In short, "the 'who' is [FCA], the 'what' is its knowledge of a defect, the 'when' is prior to the sale of the Class Vehicles, and the 'where' is the various channels of information through which [FCA] sold the Class Vehicles." *MacDonald*, 37 F. Supp. 3d at 1096. This is sufficient to survive a motion to dismiss a fraudulent omission claim.

FCA also appears to argue that Plaintiffs have not adequately pleaded the content of its omission. *See* Mot. at 10. Plaintiffs allege that the FORM Defect caused drivers to be unable to use the electric-only mode on their hybrid vehicles. *See, e.g.*, Compl. ¶¶ 152, 159. Plaintiffs reasonably

1  expected that their *hybrid* vehicles,[2] for which they paid a premium, would have a working electric

2  battery and motor that they would be able to use as advertised. The fact that the 4xe Vehicles' electric

3  driving mode would be unusable for significant periods of time, rendering them, effectively, gas

4  vehicles without an electric driving option, was a material omission. *See, e.g.*, *id.*

5            **b.**      **Plaintiffs Have Pleaded Reliance on FCA's Omissions.**

6          Plaintiffs have also adequately pleaded reliance on FCA's omissions of information regarding

7  the FORM Defect. To prove reliance on an omission, "a plaintiff must show that the defendant's

8  nondisclosure was an immediate cause of the plaintiff's injury-producing conduct." *Sloan*, 287 F.

9  Supp. 3d at 873 (citation omitted). This requires a showing that the plaintiff would have behaved

10  differently had they known the omitted information, and a showing that the plaintiff would have been

11  aware of a disclosure by the defendant had it been made. *Id.* at 874, 875 ("Thus, focus is on whether

12  the Defendant *could have* disclosed the information to [p]laintiffs through the exercise of reasonable

13  care, and whether [p]laintiffs *would have* received it had [d]efendant done so.").

14          However, courts also permit reliance to be inferred where, as here, the information withheld is

15  material. *See, e.g.*, *Swearingen v. Healthy Beverage, LLC*, No. 13-cv-04385-EMC, 2017 WL 1650552,

16  at *4 (N.D. Cal. May 2, 2017); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab.*

17  *Litig.*, MDL No. 2672 CRB (JSC), 2017 WL 3058563, at *14 (N.D. Cal. July 19, 2017). Plaintiffs have

18  alleged that the FORM Defect—which causes the electric-only function of the 4xe Vehicles to be

19  inoperable for weeks or months at a time—is material, evidenced further by the significant price

20  difference between the 4xe Vehicles and their gas-engine equivalents. Compl. ¶¶ 145–52.

21          Even if the Court finds that reliance cannot be inferred, Plaintiffs have adequately pled reliance.

22  Plaintiffs have pleaded that they had an opportunity to receive the omitted information about the

23  FORM Defect at the dealerships had it been disclosed to them and point to a campaign of

24  advertisements by FCA that should have included the subject omission. Plaintiffs plead that neither

25  FCA nor its agents, dealers, or other representatives informed them of the FORM Defect. *See id.* ¶¶ 13,

26  19, 25, 31, 37, 43, 50, 57, 63, 69, 75, 81, 87, 94, 100, 106, 112, 118, 124, 130. Plaintiffs also assert that

27

28  [2] That is, a vehicle with two different types of components—a gas engine and electric motor—
    performing essentially the same function—powering the vehicle.

**PLS.' OPP'N TO DEF. FCA US
LLC'S MOT. TO DISMISS AM.
CLASS ACTION COMPL.**

had they been aware of the FORM Defect, they "would not have purchased or leased the Class Vehicles, or would have paid less for them." *Id.* ¶ 179.[3] This is sufficient to show that Plaintiffs would have behaved differently had they known of the FORM Defect.

Plaintiffs have also pleaded that they would have been aware of the disclosure of the FORM Defect had it been made by pointing to a campaign of advertisements by FCA by which they would have plausibly become aware of the FORM Defect had it been disclosed.[4] *Id.* ¶¶ 138–46. As the court in *Anderson* indicated, the identification of any advertising or advertising campaign related to the subject of the defect can support a plausible claim that plaintiffs would have known of relevant information about the defect had it been disclosed. 500 F. Supp. 3d at 1007. Plaintiffs have therefore pleaded a plausible method by which FCA could have disclosed the existence of the FORM Defect but failed to do so. Further, like the plaintiffs in *Sloan*, "although [Plaintiffs] have not specifically alleged that they interacted with and received information from sales representatives at the dealerships, it is plausible to infer that they did so (at least at the pleading stage) because it would be highly improbable for a person to walk into a dealership and purchase a vehicle without interacting with a sales representative." 287 F. Supp. 3d at 876. Thus, Plaintiffs who purchased or leased vehicles directly from authorized FCA dealerships—i.e., all of the Plaintiffs in this case—have adequately pleaded the opportunity to receive the omitted information about the FORM Defect. *Id.* at 875.

---

[3] FCA repeatedly asserts that these are not "facts" on which Plaintiffs are entitled to rely. *See, e.g.*, Mot. at 10–11. That FCA may disagree with Plaintiffs' assertion that they would not have purchased or leased the 4xe Vehicles had they known of the FORM Defect does not make it any less an allegation that must be taken as true for purposes of this analysis. *See, e.g.*, *Sloan*, 287 F. Supp. 3d at 874 ("As explained above, [p]laintiffs have demonstrated that the defect was material, so this component of reliance can be inferred at this stage. In any case, [p]laintiffs have explicitly pled that they 'would not have purchased . . . and/or paid as much for' the vehicles if they had been aware of the omitted information.").

[4] FCA also argues that the advertisements included in the Complaint "amount[] to nonactionable puffery." Mot. at 9. This argument is irrelevant to Plaintiffs' claims of fraud by omission. *See In re Chrysler-Dodge-Jeep Ecodiesel*, 295 F. Supp. 3d at 1004 ("[P]uffery is generally characterized as a statement of opinion, as opposed to a statement of fact, on which no reasonable consumer would rely."). Further, whether or not a statement is deemed puffery is "generally considered a question of fact, not law." *Id.* at 1004–05. Given these parameters, the advertisements to which Plaintiffs point— including that the electric-only mode can operate "whenever the battery has more than a 1% charge," Compl. ¶ 144—are not non-actionable puffery.

**PLS.' OPP'N TO DEF. FCA US LLC'S MOT. TO DISMISS AM. CLASS ACTION COMPL.**

1

    **c.**  **FCA Had Knowledge of the FORM Defect Before It Sold the 4xe Vehicles.**

2

   "While circumstances constituting fraud must be alleged with particularity, knowledge may be

3

alleged generally." *In re Gen. Motors*, 393 F. Supp. 3d at 878 (citation omitted); *see also* Fed. R. Civ.

4

P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged

5

generally."). "In addition, the pleading standard may be relaxed as to matters that are exclusively

6

within the opposing party's knowledge." *MacDonald*, 37 F. Supp. 3d at 1092.

7

   Plaintiffs allege that "FCA had or should have had knowledge of the FORM Defect through

8

pre-release testing of the Vehicles, its development of the FORM cycle in the Vehicles, and the

9

development and sale of 4xe vehicles in Europe prior to their availability in the United States." Compl.

10

¶ 153. Plaintiffs also allege that similar complaints regarding the Pacifica Hybrid vehicles—which

11

were released and sold prior to the release of the 4xe Vehicles—should have made FCA aware of the

12

FORM Defect.[5] *Id.* ¶ 159; *see also id.* ¶ 152 (identifying complaints about the FORM Defect). These

13

allegations, when accepted as true for purposes of this Rule 12(b)(6) motion, suffice to state a claim

14

that FCA had exclusive knowledge of the FORM Defect. *See Falk*, 496 F. Supp. 2d at 1096–97

15

(holding that where plaintiffs alleged exclusive knowledge and post-release record of complaints to

16

defendant, plaintiffs had successfully shown knowledge for purposes of prevailing on motion to

17

dismiss under Rule 12(b)(6)); *see also Reniger*, 122 F. Supp. 3d at 900 (holding that where plaintiffs

18

alleged that defendants had exclusive information of the defect and pre-release TSBs aimed at a similar

19

issue in another vehicle, the pleadings formed a plausible basis for the belief that defendants knew or

20

reasonably should have known of a defect); *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 998

21

(N.D. Cal. 2013) ("[P]laintiffs claim that [d]Defendants had non-public, internal data about the [c]lass

22

[v]ehicles' headlamp problems, including 'pre-release testing data, early consumer complaints about

23

the defect to [d]efendants' dealers who are their agents for vehicle repairs, dealership repair orders,

24

testing conducted in response to those complaints, and other internal sources.' . . . At this stage of

25

litigation, [p]laintiffs have provided the Court with sufficient detail to make a determination about

26

[d]efendants' knowledge relative to that of its customers.") (citation omitted).

27

28

[5] *Reniger v. Hyundai Motor America*, 122 F. Supp. 3d 888, 900 (N.D. Cal. 2015), held that allegations of a similar defect in prior vehicles can support a showing of pre-sale knowledge.

**PLS.' OPP'N TO DEF. FCA US LLC'S MOT. TO DISMISS AM. CLASS ACTION COMPL.**

1

### d.  FCA Had a Duty to Disclose the FORM Defect.[6]

FCA broadly argues—without support—that *all* of Plaintiffs' fraud-based claims are subject to dismissal because Plaintiffs have failed to establish a duty to disclose. To the contrary, while a duty to disclose is generally an element of common law fraud, Plaintiffs are not required to allege a duty to disclose for every state consumer protection act claim, or even every fraud by omission claim.[7, 8] For those common law claims that require it, FCA's duty to disclose the FORM Defect arises from its exclusive knowledge of the Defect which, as discussed above, Plaintiffs have adequately alleged. *See supra* Section III.C.3.

**California.** Plaintiffs' Consumer Legal Remedies Act ("CLRA"), Unfair Competition Law ("UCL"), False Advertising Law, and common law fraud claims require a showing of a duty to disclose. Under California law, a duty to disclose can arise when the defendant had exclusive knowledge of material facts not known to the plaintiff. *Falk*, 496 F. Supp. 2d at 1094–95 (citing *LiMandri v. Judkins*, 60 Cal. Rptr. 2d 539, 543 (Cal. Ct. App. 1997)). Plaintiffs have pleaded that FCA

---

[6] Plaintiffs concede that a special relationship is required to form a duty to disclose under Oregon law. *See Martell v. Gen. Motors LLC*, 492 F. Supp. 3d 1131, 1143 (D. Or. 2020).

[7] The CPA claims that do not require a duty to disclose are those in: **Colorado:** *Martinez v. Lewis*, 969 P.2d 213, 221 (Colo. 1998); **Illinois:** *Celex Grp., Inc. v. Exec. Gallery, Inc.*, 877 F. Supp. 1114, 1130 (N.D. Ill. 1995); **Massachusetts:** *Geis v. Nestle Waters N. Am., Inc.*, 321 F. Supp. 3d 230, 245 (D. Mass. 2018); **Minnesota:** *McQueen v. Yamaha Motor Corp., U.S.A.*, 488 F. Supp. 3d 848, 860 (D. Minn. 2020) (Minnesota Prevention of Consumer Fraud Act); *Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, No. 09-1091 (JNE/JSM), 2011 WL 4457956 (D. Minn. Sept. 23, 2011) (Minnesota Uniform Deceptive Trade Practices Act); **Missouri:** *Flynn v. FCA US LLC*, 327 F.R.D. 206, 220 (S.D. Ill. 2018) ("the [Missouri Merchandising Practices Act] does not require showing a duty to disclose on the part of a defendant"); **Nebraska:** *Mirandette v. Nelnet, Inc.*, 720 F. App'x 288, 290 (6th Cir. 2018); **New Hampshire:** *Fujifilm N. Am. Corp. v. M&R Printing Equip., Inc.*, 565 F. Supp. 3d 222, 235 (D.N.H. 2021); **New Jersey:** *In re Natera Prenatal Testing Litig.*, --- F. Supp. 3d ---, No. 22-cv-00985-JST, 2023 WL 3370737, at *8 (N.D. Cal. Mar. 28, 2023) (citing *Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537, 546 (D.N.J. 2013)); **Pennsylvania:** *McLaughlin v. Bayer Corp.*, 172 F. Supp. 3d 804, 830 (E.D. Pa. 2016); **Vermont:** *Centrella v. Ritz-Craft Corp. of Pa., Inc.*, No. 2:14-cv-111-jmc, 2018 WL 840038 (D. Vt. Feb. 12, 2018); **Wisconsin:** *T&M Farms v. CNH Indus. Am., LLC*, 488 F. Supp. 3d 756, 759–60 (E.D. Wis. 2020).

[8] Plaintiffs need not plead an independent duty to disclose for omission-based claims under Illinois law. *In re Natera*, 2023 WL 3370737, at *8 (citing *Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 505 (Ill. 1996)).

**PLS.' OPP'N TO DEF. FCA US LLC'S MOT. TO DISMISS AM. CLASS ACTION COMPL.**

had exclusive knowledge of the FORM Defect and that Plaintiffs had no realistic ability to discover it.[9] *See, e.g.*, Compl. ¶¶ 153, 170. This is sufficient to establish FCA's duty to disclose the FORM Defect.

**Colorado.** Plaintiffs' fraud by omission claim under Colorado common law requires a duty to disclose. Under Colorado law, a party has a duty to disclose "facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of [1] the relationship between them, [2] the customers of the trade or [3] other objective circumstances, would reasonably expect a disclosure of those facts." *Murphy v. Toyota Motor Sales USA Inc.*, No. 2:20-cv-05892-VAP-ADSx, 2021 WL 2801456, at *7 (C.D. Cal. Apr. 21, 2021) (alterations in original) (quoting *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1109 (10th Cir. 2009)). Similarly to the plaintiffs in *Murphy*, here Plaintiffs have shown that the fact of the FORM Defect was basic to their transactions because they allege that they would not have purchased or leased the 4xe Vehicles had they known of the defect. *See id.*; *see also* Compl. ¶ 179. Plaintiffs have alleged a duty to disclose under Colorado law.

**Massachusetts.** Plaintiffs' fraud by omission claim under Massachusetts common law requires a duty to disclose. Under Massachusetts law, a duty to disclose can arise where "(i) there is a fiduciary or other similar relation of trust and confidence, (ii) there are matters known to the speaker that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading, or (iii) the nondisclosed fact is basic to, or goes to the essence of, the transaction." *Siqueiros v. Gen. Motors LLC*, No. 16-cv-07244-EMC, 2021 WL 2115400, at *7 (N.D. Cal. May 25, 2021) (quoting *Stolzoff v. Waste Sys. Int'l, Inc.*, 792 N.E.2d 1031, 1044 (Mass. App. Ct. 2003)). As Plaintiffs have already articulated, FCA had exclusive knowledge of the FORM Defect. *See, e.g.*, Compl. ¶¶ 153, 170. Further, FCA knew that the FORM Defect was material to Plaintiffs' purchase of a hybrid vehicle that purportedly offered an electric-only driving mode, as the FORM Defect prevented the 4xe Vehicles from operating in electric-only mode at all. *See supra* Section III.C.1. As such, Plaintiffs have adequately alleged a duty to disclose under Massachusetts law.

---

[9] Plaintiffs are not required to show a fiduciary relationship with FCA to establish a duty to disclose. *See, e.g.*, *Falk*, 496 F. Supp. 2d at 1096–97 (finding duty to disclose where there was no relationship between plaintiffs and defendant GM).

**PLS.' OPP'N TO DEF. FCA US LLC'S MOT. TO DISMISS AM. CLASS ACTION COMPL.**

**Michigan.** Plaintiffs' Michigan CPA and common law fraud claims require a duty to disclose. Michigan law imposes "an affirmative duty on defendants to disclose a material fact when that fact is in the exclusive knowledge of the defendant." *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1121 (N.D. Cal. 2015). Because FCA had exclusive knowledge of the FORM Defect, it had a duty to disclose under Michigan law.

**Minnesota.** Plaintiffs' fraud by omission claim under Minnesota common law requires a duty to disclose. Under Minnesota law, an omission is actionable fraud when a party "has special knowledge of material facts to which the other party does not have access." *Gold v. Lumber Liquidators, Inc.*, 323 F.R.D. 280, 291–92 (N.D. Cal. 2017) (citation omitted). Because Plaintiffs have adequately alleged FCA's special knowledge of the FORM Defect, they have adequately alleged a duty to disclose under Minnesota law.

**Missouri.** Plaintiffs' fraud by omission claim under Missouri common law requires a duty to disclose. Under Missouri law, a duty to disclose may arise where defendant has superior or exclusive knowledge of a defect. *See Oddo v. Arocaire Air Conditioning & Heating*, No. 8:15-cv-01985-CAS Ex, 2020 WL 5267917, at *27 (C.D. Cal. May 18, 2020). Plaintiffs have alleged that FCA had superior and exclusive knowledge of the FORM Defect, conferring a duty to disclose under Missouri law.

**Nebraska.** Plaintiffs' fraud by omission claim under Nebraska common law requires a duty to disclose. As previously discussed, Plaintiffs have alleged that FCA had knowledge of the FORM Defect and that they would not have purchased their vehicles or would have paid less for them had they known of the FORM Defect. This is sufficient to show a duty to disclose under Nebraska law. *See Benkle v. Ford Motor Co.*, No. 16-1569-DOC (JCGx), 2017 WL 9486154, at *7 (C.D. Cal. Dec. 22, 2017).

**New Hampshire.** Plaintiffs' fraud by omission claim under New Hampshire common law requires a duty to disclose. Under New Hampshire law, where there is a "concealed defect known to the seller, unknown to the buyer and incapable of detection by the buyer's reasonable inspection," a duty to disclose may arise. *Ingaharro v. Blanchette*, 440 A.2d 445, 447 (N.H. 1982). As Plaintiffs have

**PLS.' OPP'N TO DEF. FCA US LLC'S MOT. TO DISMISS AM. CLASS ACTION COMPL.**

shown, FCA had exclusive knowledge of the FORM Defect and Plaintiffs had no ability to discover the FORM Defect; this confers a duty to disclose under New Hampshire law.

**New Jersey.** Plaintiffs' fraud by omission claim under New Jersey common law requires a duty to disclose. For fraudulent omission claims under New Jersey common law, a duty to disclose will arise in three general classes of transactions: "(1) fiduciary relationships such as attorney and client; (2) where, because of the nature of the transaction or the parties' position toward each other, 'trust and confidence . . . is necessarily implied'; and (3) where contracts or transactions are 'intrinsically fiduciary' because of their 'essential nature' and thus 'necessarily call[ ] for perfect good faith and full disclosure, without regard to any particular intention of the parties.'" *Citizens United Reciprocal Exch. v. Meer*, 321 F. Supp. 3d 479, 491 (D.N.J. 2018) (alteration in original) (citation omitted).

**New York.** Plaintiffs' Section 349, Section 350, and common law fraud claims under New York law require a duty to disclose. Under New York law, a duty to disclose arises when "one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." *Cabebe v. Nissan of N. Am., Inc.*, No. 18-cv-00144, 2018 WL 5617732, at *8 (N.D. Cal. Oct. 26, 2018). Plaintiffs have alleged that FCA possessed superior knowledge of the FORM Defect. Further, Plaintiffs have alleged that they had no realistic ability to discover the FORM Defect and that FCA knew that such facts were not known or reasonably discoverable by Plaintiffs. Compl. ¶ 644. Plaintiffs have adequately pleaded a duty to disclose under New York law.

**Oklahoma.** Plaintiffs' Oklahoma CPA and common law fraud by omission claims require a duty to disclose. Oklahoma law will impose a duty to disclose where "the defendant knows the fact is peculiarly within his knowledge and the other person is not in a position to discover the fact for himself." *Massey v. Flowers Foods, Inc.*, No. CIV-16-1233-R, 2017 WL 3639150, at *4 (W.D. Okla. Apr. 21, 2017) (citation omitted). As shown previously, Plaintiffs have alleged that FCA had exclusive knowledge of the FORM Defect and that Plaintiffs had no ability to discover the FORM Defect; this is sufficient to confer a duty to disclose under Oklahoma law.

PLS.' OPP'N TO DEF. FCA US
LLC'S MOT. TO DISMISS AM.
CLASS ACTION COMPL.

**Oregon.** Plaintiffs' Oregon Unfair Trade Practices Act ("OUTPA") and common law fraud by omission claims require a duty to disclose. Under Oregon law, "a duty to disclose arises when the defendant knows a fact that a reasonable person would find material at the time of the transaction." *Vinci v. Hyundai Motor Am.*, No. 17-0997-DOC (KESx), 2018 WL 6136828, at *12 (C.D. Cal. Apr. 10, 2018) (citing *CRM Collateral II, Inc. v. Tri-Cnty. Metro. Transp. Dist. of Or.*, No. 08-1266-PK, 2009 WL 3054959, at *5 (D. Or. Sept. 18, 2009)). Because Plaintiffs have alleged that FCA had knowledge of the FORM Defect and that the Defect was material, FCA had a duty to disclose under Oregon law.

**Pennsylvania.** Plaintiffs' fraud by omission claim under Pennsylvania common law requires a duty to disclose. Pennsylvania law confers a duty to disclose "where the undisclosed fact is basic to the transaction." *In re Chrysler-Dodge-Jeep Ecodiesel*, 295 F. Supp. 3d at 1010 (quoting *City of Rome v. Glanton*, 958 F. Supp. 1026, 1039 (E.D. Pa. 1997)). As discussed above, *supra* pages 9–10, the operation of the electric battery is a basic fact to the sale of a hybrid vehicle—for this reason, FCA had a duty to disclose under Pennsylvania law.

**Vermont.** Plaintiffs' fraud by omission claim under Vermont common law requires a duty to disclose. Vermont law confers a duty to disclose where a party has "superior knowledge or means of knowledge." *In re Chrysler-Dodge-Jeep Ecodiesel*, 295 F. Supp. 3d at 1011 (citation omitted). Because FCA had superior knowledge of the FORM Defect, Plaintiffs have adequately alleged a duty to disclose under Vermont law.

      e.      **FCA's "Other State-Specific Grounds for Dismissal" Are Unavailing**[10]

**Pre-Suit Notice.** Lack of notice under the CLRA, or notice provided fewer than 30 days before the filing of the action for damages, is not fatal to Plaintiffs' claim. "Where a plaintiff fails to provide such notice, the damages 'claim must simply be dismissed until 30 days or more after the plaintiff complies.'" *Corbett v. PharmaCare U.S., Inc.*, 567 F. Supp. 3d 1172, 1200 (S.D. Cal. 2021) (quoting *Bitton v. Gencor Nutrientes, Inc.*, 654 F. App'x 358, 362 (9th Cir. 2016)). As it has been more than 30

---

[10] Plaintiffs concede that fraudulent omission claims are not actionable under the Wisconsin Deceptive Trade Practices Act.

**PLS.' OPP'N TO DEF. FCA US LLC'S MOT. TO DISMISS AM. CLASS ACTION COMPL.**

days since Plaintiffs provided FCA with notice of their CLRA claim, Plaintiffs' claim for damages under the CLRA is proper. Plaintiffs' UCL claim does not require pre-suit notice.

**Economic Loss Rule.** As courts in this District have previously found, "the economic loss doctrine is not a bar to a statutory consumer protection claim." *See In re Chrysler-Dodge-Jeep Ecodiesel*, 295 F. Supp. 3d at 1021 (quoting *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 967 (N.D. Cal. 2014)). The economic loss doctrine also does not bar Plaintiffs' common law fraudulent omission claims under California, Colorado, or New York law.[11, 12]

**Class Action Bar.** Plaintiffs concede that the Colorado Consumer Protection Act ("CCPA") precludes monetary damages and treble damages in class actions under the CCPA. *See Friedman v. Dollar Thrifty Auto. Grp., Inc.*, No. 12-cv-02432-WYD-KMT, 2015 WL 4036319, at *3 (D. Colo. July 1, 2015). However, the CCPA does not bar an award of injunctive relief on a class-wide basis. *See id.* at *6 ("Plaintiffs' Revised Motion for Class Certification appears to rely solely on monetary relief under Fed. R. Civ. P. 23(b)(3) as a basis for certification. It does not cite to or rely on Rule 23(b)(2), which provides for certification where injunctive or declaratory relief is appropriate respecting the class as a whole."). Plaintiffs properly seek injunctive relief under the CCPA. Compl. ¶ 279.

**Michigan CPA Exemption.** Plaintiffs disagree that the Michigan CPA ("MCPA") exception applies to their claims in this case. The "specific act of selling an automobile or manufacturing an automobile is not regulated and therefore that act is not excluded from the [MCPA]." *Hoff v. Mercedes-Benz USA, LLC*, No. 04 836 NZ, 2005 WL 3723201, at *8 (Mich. Cir. Ct. Dec. 30, 2005). Plaintiffs are cognizant of and respect recent rulings to the contrary. Yet, Justices Welch and Bernstein of the Michigan Supreme Court have stated that they are "persuaded, with the input of the amici curiae in this case, that this Court should examine whether our previous decisions . . . properly interpreted the

---

[11] **California:** *Anderson*, 500 F. Supp. 3d at 1021 ("A fraudulent omission, no less than an affirmative misrepresentation, falls into several categories to which the court held the [economic loss] rule should generally not apply[.]"); **Colorado:** *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 875 (9th Cir. 2007) (citing *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1226 (10th Cir. 2000)); **New York:** *Id.* (citing *EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265, 278–79 (S.D.N.Y. 2004)).

[12] Plaintiffs concede that the Economic Loss Rule likely bars their common law fraudulent omission claims under Michigan, New Hampshire, Pennsylvania, Oklahoma, Oregon, and Wisconsin law.

PLS.' OPP'N TO DEF. FCA US LLC'S MOT. TO DISMISS AM. CLASS ACTION COMPL.

safe-harbor provision in the [MCPA]" and hope to do so in conjunction with a future case. *See Cyr v. Ford Motor Co.*, 961 N.W.2d 493, 494 (Mich. 2021). As such, dismissal of the MCPA claim should be denied at this stage and may be addressed at the summary judgment stage in the event the Michigan Supreme Court addresses this issue.

**Oregon Statute of Limitations.** The relevant accrual date for the statute of limitations under the OUTPA is when Plaintiff knew of or had reason to know of his or her claim. *See Rubin v. Oregon*, No. 3:19-cv-01377-IM, 2022 WL 2713904, at *2 (D. Or. July 13, 2022). As Plaintiffs have alleged, they did not discover, and could not have discovered, the FORM Defect until recently before the commencement of this action, tolling the statue of limitations by the discovery rule. Compl. ¶¶ 169–72.

**D.      Plaintiffs' UCL Claim Survives as a Matter of Law.**

FCA's challenge to Plaintiffs' UCL claim is largely repetitive of its previous arguments. As an initial matter, Plaintiffs have adequately pleaded an actionable violation of the "fraudulent" prong of the UCL. *See supra* Section III.C.1. California courts have held that "'a claim may be stated' under the . . . UCL . . . 'in terms constituting fraudulent omissions' so long as the omission is 'contrary to a representation actually made by the defendant' or the omission is 'of a fact the defendant was obliged to disclose.'" *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1101 (N.D. Cal. 2021) (quoting *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (Cal. Ct. App. 2006)). Plaintiffs have shown that FCA was obligated to disclose the FORM Defect under California law. *See supra* Section III.C.4. Additionally, Plaintiffs have alleged actual representations made by FCA that are rendered false by the FORM Defect: FCA repeatedly stated that electric-only driving mode would be available to drivers "whenever the battery has more than a 1% charge," which, as Plaintiffs' experiences demonstrate, is not true due to the FORM Defect. *See* Compl. ¶ 144.

Because Plaintiffs do not predicate their UCL claim on either the "unfair" or "unlawful" prongs, FCA's arguments are inapposite as to Plaintiffs' failure to tie their UCL claim to any legislative policy or establish the violation of any other law.

Finally, Plaintiffs are permitted to plead remedies—including those provided under the UCL—in the alternative. *See, e.g.*, *Luong v. Subaru of Am., Inc.*, No. 17-cv-03160-YGR, 2018 WL 2047646

PLS.' OPP'N TO DEF. FCA US
LLC'S MOT. TO DISMISS AM.
CLASS ACTION COMPL.

1   (N.D. Cal. May 2, 2018). FCA points to *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir.

2   2020) to support its contention that Plaintiffs' UCL claim must be dismissed because they do not lack

3   an adequate remedy at law; however, *Sonner* does not foreclose Plaintiffs from seeking injunctive

4   relief where damages are also available. *See Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 687 (N.D.

5   Cal. 2021) ("California's consumer protection laws permit courts to issue injunctions that serve

6   different purposes and remedy different harms than retrospective monetary damages."). Because

7   Plaintiffs seek injunctive relief under the UCL, Compl. ¶ 221, their UCL claim should survive the

8   Motion.

9   **E.    Plaintiffs' Magnuson–Moss Warranty Act Claim and Implied Warranty Claims Survive.**

10          **Merchantability.** As an initial matter, FCA asserts that because the 4xe Vehicles continue to

11   be drivable, they are not unmerchantable as a matter of law. To state a claim for breach of the implied

12   warranty of merchantability, "a plaintiff must allege a fundamental defect that renders the product unfit

13   for its ordinary purpose." *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 945 (N.D. Cal.

14   2018) (quoting *T&M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 878

15   (N.D. Cal. 2015)). The "three factors related to vehicle merchantability are safety, reliability, and

16   substantial freedom from defects." *Id.* at 946.

17          Contrary to FCA's assertion, "courts reject the notion that a vehicle is fit for its particular

18   purpose 'merely because [it] provides transportation from point A to point B[.]'" *Id.* (alterations in

19   original) (citing *Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 27 (Ct. App. Cal. 2007)). In

20   fact, "courts have recognized that vehicles may be unmerchantable even if they can be used to provide

21   basic transportation when a defect presents symptoms in a persistent manner that can be said to impair

22   safety, reliability, or operability over an extended period of time." *Id.* at 947.

23          Like the plaintiffs in *MyFord Touch*, Plaintiffs here "do not suggest that the [FORM Defect]

24   impair[s] the mechanical functionality of the vehicles." *Id.* at 948. This is not fatal to Plaintiffs' claims

25   for breach of the implied warranty of merchantability. Plaintiffs allege that the FORM Defect causes

26   the electric-only driving mode motor to be unavailable for long periods of time. *See, e.g.*, Compl. ¶¶

27   150, 159. At the pleading stage, this is sufficient to state a claim under the implied warranty of

28

18

**PLS.' OPP'N TO DEF. FCA US
LLC'S MOT. TO DISMISS AM.
CLASS ACTION COMPL.**

merchantability—it is plausible that a jury could conclude that these symptoms were so persistent and prevalent as to impair the reliability or operability of the vehicles, in that one of their primary driving modes—the mode for which purchasers paid a premium—is frequently inoperable. *See In re MyFord Touch*, 291 F. Supp. 3d at 948.

**Damages.** Plaintiffs have alleged that had they known of the FORM Defect, they would not have purchased or leased the 4xe Vehicles or would have paid less for them. *See, e.g.*, Compl. ¶ 179. Plaintiffs have therefore pleaded damages as a result of FCA's breach of the implied warranty of merchantability, and none of the cases cited to by FCA—a case involving breach of an employment contract where the court rejected an attempt to claim damages for a layoff that occurred following employees' departure from the company (*Aguilera*), an unpublished decision involving a data breach where the court found that increased risk of identity theft was insufficient to establish damages for breach of express contract (*Gardner*), and another breach case holding that Michigan law did not recognize "peace of mind" as a measure of damages for breach of contract actions (*Hendricks*)—suggest otherwise.

**Privity.** Even in those states where privity is required for an implied warranty of merchantability claim,[13] Plaintiffs have pleaded that they are third-party beneficiaries to the contracts between FCA and its authorized dealers as they pertain to implied warranties, and that they purchased or leased their vehicles from authorized dealerships, *see e.g.*, Compl. ¶¶ 23, 29; that they took their

---

[13] Privity is not required for an implied warranty of merchantability claim under Colorado or Missouri law, or for an implied warranty claim under the Song–Beverly Act. *Miller v. Ford Motor Co.*, 620 F. Supp. 3d 1045, 1064 (E.D. Cal. 2022) ("Privity is not a required element of a warranty claim in Colorado."); *Banh v. Am. Honda Motor Co.*, No. 2:19-cv-05984-RGK-AS, 2020 WL 4390371, at *9 (C.D. Cal. July 28, 2020) ("[P]rivity is generally not required in . . . Missouri[.]"); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 982–83 (N.D. Cal. 2014) ("For the implied warranty claim under the Song–Beverly Act, there is no privity requirement."). There is a third-party beneficiary exception to the privity requirement for implied warranty of merchantability claims under California, Illinois, and New York law. **California:** *Bryde v. Gen. Motors, LLC*, No. 16-cv-02421-WHO, 2016 WL 6804584, at *16 (N.D. Cal. Nov. 17, 2016) ("I conclude that the third-party beneficiary exception is viable under California law."); **Illinois:** *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 922 (N.D. Cal. 2018) (recognizing third-party beneficiary exception to privity requirement for implied warranty of merchantability claims under Illinois law); **New York:** *Id.* (recognizing third-party beneficiary exception to privity requirement for implied warranty of merchantability claims under New York law).

**PLS.' OPP'N TO DEF. FCA US LLC'S MOT. TO DISMISS AM. CLASS ACTION COMPL.**

1    vehicles to those authorized dealerships for repairs related to the FORM Defect, *id.* ¶¶ 30, 56, 92; and

2    that FCA issued TSBs to its dealerships about the FORM Defect, *id.* ¶ 156. This is sufficient to

3    plausibly allege that Plaintiffs qualify for the third-party beneficiary exception to the privity

4    requirement for purposes of surviving a motion to dismiss under Rule 12(b)(6). *See Bryde*, 2016 WL

5    6804584, at *16 (finding that plaintiffs had plausibly pled third-party beneficiary exception where they

6    alleged that they bought vehicles from and took vehicles to GM dealerships for repairs and where GM

7    issued TSBs to its dealers).

8        **Notice.** Plaintiffs have alleged that FCA was put on notice of the implied breach of

9    merchantability caused by the FORM Defect through numerous online complaints and directly from

10   consumers. *See, e.g.*, Compl. ¶¶ 240, 287. The question of adequacy and timeliness of that notice is

11   "one of fact, and the claim should not be defeated at the motion to dismiss stage." *Chapman v. Gen.*

12   *Motors LLC*, 531 F. Supp. 3d 1257, 1279 (E.D. Mich. 2021).

13   **F.    FCA's Challenges to Plaintiffs' Unjust Enrichment Claims Fail.**

14       **Rule 9(b).** FCA's argument concerning the Rule 9(b) pleading standard fails for the same

15   reasons in connection with Plaintiffs' unjust enrichment claims as it does with regard to their consumer

16   protection and common-law fraud claims. *See* Section III.C above.

17       **Existence of a Written Contract.** While FCA is correct that unjust enrichment claims are

18   generally not viable where a written contract exists to define the parties' rights and expectations,

19   Plaintiffs bring no breach of contract claims, and FCA's conduct indicates that it does not believe that

20   any written warranty applies to Plaintiffs' claims, as it has universally refused to repair the Defect for

21   vehicles within the warranty period.

22       Further, "Plaintiff[s] may allege claims in the alternative at the pleading stage." *Freeman v.*

23   *Indochino Apparel, Inc.*, 443 F. Supp. 3d 1107, 1114 (N.D. Cal. 2020) ("With regard to unjust

24   enrichment, Ninth Circuit law is well-settled that the claim alleged here is cognizable and not

25   duplicative of other claims for breach of contract or restitution."). Moreover, unjust enrichment claims

26   are commonly permitted to proceed at the pleading stage in automotive cases. *See, e.g.*, *Glenn v.*

27   *Hyundai Motor Am.*, No. SACV 15-2052-DOC (KESx), 2016 WL 7507766, at *5 (C.D. Cal. Nov. 21,

28

20

**PLS.' OPP'N TO DEF. FCA US
LLC'S MOT. TO DISMISS AM.
CLASS ACTION COMPL.**

2016) ("Thus, 'a claim for restitution is permitted even if the party inconsistently pleads a breach of contract claim that alleges the existence of an enforceable agreement.'") (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (Ct. App. Cal. 2014)).

**Adequacy of Legal Remedies.** FCA's argument that Plaintiffs must plead "facts" showing that their legal remedies are inadequate is inaccurate, and the cases cited by FCA are unpersuasive.[14] Courts in this District have previously permitted unjust enrichment claims to move forward at the motion to dismiss stage where, as here, plaintiffs request restitution or disgorgement of profits. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827, 2011 WL 4501223, at *14 (N.D. Cal. Sept. 28, 2011) ("Further, there is no evidence before the Court concerning the degree to which the remedies available under plaintiffs' unjust enrichment claims are identical to the legal remedies plaintiffs seek.") (citing to complaint's request for "restitution, including disgorgement of profits"); *see, e.g.*, Compl. ¶ 199.

**Conferral of a Direct Benefit.** Plaintiffs allege that they paid FCA the value of non-defective, fully operational Class Vehicles with the ability to operate using only the electric engine for up to 21 miles—a significant feature that was priced at a premium by FCA—and that FCA did not provide them with such vehicles. *See, e.g.*, Compl. ¶¶ 145, 196, 265. Courts in this District have dismissed unjust enrichment claims for failure to demonstrate a benefit conferred to defendant "where the plaintiff purchased a used car from a dealership with no affiliation to the defendant manufacturer." *Pereda v. Gen. Motors LLC*, No. 21-cv-06338-JST, 2022 WL 19975388, at *11 (N.D. Cal. Dec. 9, 2022). Here, all Plaintiffs purchased or leased new vehicles from FCA-affiliated dealerships. *See, e.g.*, Compl. ¶¶

---

[14] *See, e.g.*, *Harris Grp., Inc. v. Robinson*, 209 P.3d 1188, 1205–06 (Colo. App. 2009) (finding, on appeal of a jury verdict, that because the value of the benefits was included within the damages award for breach of contract claims, damages also functioned as restitution and jury award for unjust enrichment must be reversed); *Nesby* v. *Country Mut. Ins. Co.*, 805 N.E.2d 241, 243 (Ill. App. Ct. 2004) (dismissing unjust enrichment claim because of specific language in automobile insurance policy controlled relationship between the parties, not equitable considerations); *Duffie v. Mich. Grp., Inc.*, No. 14-cv-14148, 2016 WL 8259511, at *1 (E.D. Mich. 2016) (finding that plaintiff's unjust enrichment claim must be dismissed at summary judgment stage because failure to pursue a legal remedy before the expiration of a statute of limitations expired did not open the door to an equitable claim seeking similar relief); *Wheeler v. Subaru of Am., Inc.*, 451 F. Supp. 3d 1034, 1039 (D. Minn. 2020) (dismissing unjust enrichment claim for failure to comply with statutory pre-suit notice requirement).

**PLS.' OPP'N TO DEF. FCA US LLC'S MOT. TO DISMISS AM. CLASS ACTION COMPL.**

11, 17, 23. This is enough to show a conferral of a benefit upon FCA under the state laws where such a showing is required.

  **Standalone Cause of Action.** Under California law, "[w]hen a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution,'" and it is appropriately pleaded at this stage of litigation. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citation omitted). Under New Hampshire and Massachusetts law, unjust enrichment is also an independent cause of action. *Glenn*, 2016 WL 7507766, at *5 (citing *Animal Hosp. of Nashua, Inc. v. Antech Diagnostics*, No. 11-cv-448-SM, 2012 WL 1801742, at *6 (D.N.H. May 17, 2012)); *Fenerjian v. Nongshim Co.*, 72 F. Supp. 3d 1058, 1085 (N.D. Cal. 2014) (citing *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 57 (1st Cir. 2009)).

## G. Plaintiffs' Nationwide Class Allegations Survive FCA's Challenges.

  FCA's attempt to strike Plaintiffs' nationwide class allegations is unavailing, but it is also premature, and raises issues that courts have consistently held are more appropriately decided at the class certification stage. This court should deny this portion of the Motion in favor of considering arguments concerning the suitability of class certification when a motion under Rule 23 is before it, at which stage it will have the benefit of fulsome briefing on class certification issues.

  FCA has cited to no authority demonstrating that Plaintiffs must plead claims under all fifty states in order to also plead claims on behalf of a nationwide class. Courts in this District—and in others—have commonly permitted nationwide claims to proceed past the motion to dismiss stage even where plaintiffs do not also plead claims under the laws of all fifty states. *See, e.g.*, *Valencia v. Volkswagen Grp. of Am. Inc.*, No. 15-cv-00887-HSG, 2015 WL 4760707 (N.D. Cal. Aug. 11, 2015) (denying motion to strike nationwide class allegations in case with only California resident plaintiffs). Further, courts have consistently held that nationwide claims can survive a motion to dismiss even where variations in state law may ultimately preclude certification. *See, e.g.*, *Gitson v. Trader Joe's Co.*, 63 F. Supp. 3d 1114, 1116 (N.D. Cal. 2014) ("To be sure, at the class certification stage, the plaintiffs will 'bear[ ] the burden of demonstrating a suitable and realistic plan for trial of the class

PLS.' OPP'N TO DEF. FCA US
LLC'S MOT. TO DISMISS AM.
CLASS ACTION COMPL.

1  claims.' At this stage, however, it is sufficient that it is plausible that they could do so.") (alteration in
2  original) (citation omitted).

3       FCA also has not identified any authority supporting its argument that Plaintiffs lack standing
4  to bring nationwide claims. In any event, the issue of whether named plaintiffs have standing on behalf
5  of the putative nationwide class is an issue more appropriate for consideration at the class certification
6  stage. *See, e.g.*, *Sinatro v. Barilla Am., Inc.*, --- F. Supp. 3d ---, No. 22-cv-03460-DMR, 2022 WL
7  10128276, at *11 (N.D. Cal. Oct. 17, 2022) (concluding that determination of standing to represent a
8  nationwide class was more properly addressed at the class certification stage); *In re Toyota RAV4*, 534
9  F. Supp. 3d at 1125 ("The Court indicated that the outcome of a standing analysis might well depend,
10 for example, on the degree of variation among the state laws under which [p]laintiffs ultimately state
11 claims.").

12      Finally, FCA argues that this Court lacks personal jurisdiction over it with respect to the absent
13 putative class members. As courts in this District have held, it is premature to determine whether the
14 Court has jurisdiction over Defendant with respect to the claims of absent class members prior to class
15 certification. *See Bugarin v. All Nippon Airways Co.*, 513 F. Supp. 3d 1172, 1188 (N.D. Cal. 2021);
16 *Vallarta v. United Airlines, Inc.*, 497 F. Supp. 3d 790, 803 (N.D. Cal. 2020).

### IV.   CONCLUSION

18      For the reasons set forth herein, Defendant FCA US LLC's Motion to Dismiss Plaintiffs'
19 Amended Class Action Complaint should be denied.

**PLS.' OPP'N TO DEF. FCA US
LLC'S MOT. TO DISMISS AM.
CLASS ACTION COMPL.**

DATED this 22nd day of June, 2023.

KELLER ROHRBACK L.L.P.


By */s/ Matthew J. Preusch*
    Matthew J. Preusch (CSB No. 298144)
    KELLER ROHRBACK L.L.P.
    801 Garden Street, Suite 301
    Santa Barbara, CA 93101
    (805) 456-1496
    Fax (805) 456-1497
    mpreusch@kellerrohrback.com

    Gretchen Freeman Cappio (pro hac vice)
    Ryan McDevitt (pro hac vice)
    Emma Wright (pro hac vice)
    KELLER ROHRBACK L.L.P.
    1201 Third Avenue, Suite 3200
    Seattle, WA 98101-3052
    (206) 623-1900
    Fax (206) 623-3384
    gcappio@kellerrohrback.com
    rmcdevitt@kellerrohrback.com
    ewright@kellerrohrback.com

    E. Powell Miller (pro hac vice forthcoming)
    Sharon S. Almonrode (pro hac vice forthcoming)
    THE MILLER LAW FIRM, P.C.
    Miller Building
    950 West University Drive, Suite 300
    Rochester, MI 48307
    Telephone: (248) 841-2200
    Fax: (248) 652-2852
    epm@millerlawpc.com
    ssa@millerlawpc.com

    *Attorneys for Plaintiffs*

PLS.' OPP'N TO DEF. FCA US
LLC'S MOT. TO DISMISS AM.
CLASS ACTION COMPL.